Joseph E. Herman (SBN 58899)
**LAW OFFICES OF JOSEPH E. HERMAN**
114 S. Rossmore Avenue
Los Angeles, CA 90004
Telephone: (323) 937-1400
Facsimile: (323) 931-7369
jherm@ca.rr.com

Joseph C. Markowitz (SBN 146592)
**LAW OFFICES OF JOSEPH C. MARKOWITZ**
444 S. Flower Street, Suite 1750
Los Angeles, CA 90071
Telephone: (213) 437-1720
Facsimile: (213) 437-1721
jcmarkowitz@gmail.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| RAFAEL MUNOZ, LIDIA CRUZ, YANET HERNANDEZ, SANTOS R. VALENZUELA, TRINIDAD RUIZ, MARTA R. RINCON de DIAZ, RAMON CERVANTES PERALES and HUGO PEREZ RIOS on behalf of themselves, and all current and former employees, and on behalf of a class of similarly situated employees, <br><br> Plaintiffs, <br><br> vs. <br><br> GIUMARRA VINEYARDS CORPORATION, a California corporation, and DOES 1-20, <br><br> Defendant. | Case No. 1:09-cv-00703-AWI-JLT <br><br> **DEFENDANT'S SUPPLEMENTAL POST-<u>BRINKER</u> BRIEF IN OPPOSITION TO CLASS CERTIFICATION** |

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................................1

II. ARGUMENT ................................................................................................................................1

    A.  Brinker Does Not Support Certification of the Proposed Late Meal Class ........................1

    B.  No Meal Class In Brinker would be Certified in the Federal Courts ................................2

    C.  In Contrast with Brinker, Conflicts in the Evidence from Putative Class Members Preclude Certification of a Late Meal Break Class in this Action Under Rule 23 .............................................................................................................................4

        1.  Dissimilarities Within the Putative Class Impede Common Answers ........................4
        2.  Plaintiffs' Late Meal Class Cannot be Certified Under Rule 23(b)b(2) .....................13

    D.  Brinker Held that No Off the Clock Class Could Be Certified .........................................15

III. CONCLUSION..........................................................................................................................15

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Altieri v. Worley Catastrophe Response, LLC,*
2011 U.S.Dist. LEXIS 85696 at 44-45 (E.D.La. 2011) ……………………………………13

*Brady v. Deloitte & Touche, LLP,*
(N.D.Cal. March 27, 2012) 2012 U.S.Dist. LEXIS 42118……………………………………12

*Brown v. Federal Express Corporation,*
249 F.R.D. 580 (C.D.Cal. 2008) ……………………………………………………………12

*Garcia v. Sun Pacific Farming Corp.,*
2008 U.S. Dist. LEXIS 111969 (E.D.Cal.) …………………………………………………9, 10

*Gonzalez v. Millard Mall Services, Inc.,*
2012 U.S.Dist. LEXIS 28141 (S.D.Cal. 2012).......................................................................12

*Marlo v. United Parcel Service, Inc.*
251 F.R.D. 476 (C.D.Cal. 2008) ……………………………………………………………11

*Morales v. Stevco,*
2012 U.S. Dist. LEXIZ 68640 at p.9. (USDC E.D.Cal. May 16, 2012) ……………………………1

*Rojas v. Marko Zaninovich, Inc.,*
2012 U.S. Dist. LEXIS 51787 (E.D.Cal. 2012) ………………………………………………9

*Rosales v. El Rancho Farms,*
2011 U.S. Dist. LEXIS 11069 (E.D.Cal. 2012) ……………………………………………10, 11

*Stearns v. Ticketmaster Corp.,*
655 F.3d 1013, 1027 (9th Cir. 2011) ………………………………………………………10

*Walmart-Mart Stores, Inc. v. Dukes,*
564 U.S. __, 131 S.Ct. 2541 (2012) ……………………………………………1- 4, 11, 13

*Washington v. Joe's Crab Shack,*
271 F.R.D. 629 (N.D.Cal. 2010) ……………………………………………………………9

**STATE CASES**

*Brinker Restaurant Corp., v. Superior Court,*
165 Cal.App.4th 25, 37 (2008) ………………………………………………………………2, 4

*Brinker v. Superior Court,*
139 Cal.Rptr.3d 315 (2012) ................................................................................................passim

*Jaimez v. Daiohs USA, Inc.,*
181 Cal.App.4th 1286, 1303-1305 (2010) ……………………………………………………2, 4

*Stephen v. Enterprise Rental Car,*
235 Cal.App.App.3d 806, 814 (1991) ………………………………………………………3, 4

**OTHER**

Labor Code Section 512……………………………………………………………………2, 12

IWC Order No. 5 ................................................................................................................2

Fed R.Civ.P.23 ................................................................................................1, 3, 4, 9, 11, 13, 14

I.  **INTRODUCTION**

Defendant Giumarra Vineyards Corporation ("Giumarra") submits this supplemental brief to address the impact of the California Supreme Court's decision in Brinker v. Superior Court, 139 Cal.Rptr.3d 315 (2012) on plaintiffs' pending motion for class certification.

As this court noted recently in approving settlement of the Stevco case, Brinker makes certification of a class for missed meal breaks more difficult.[1]  In addition to clarifying the rules governing meal and rest breaks under California law, Brinker also provides guidance on the standards for class certification under California law.  Only the former, substantive issues are relevant to the pending motion.  Procedurally, class certification is governed by Rule 23, Wal-Mart Stores, Inc. v. Dukes, 564 U.S. __, 131 S. Ct. 2541 (2011), and the other federal cases cited in defendant's briefs.  Brinker does not ease plaintiffs' burden in seeking class certification. Brinker makes plaintiffs' burden more difficult because the substantive law holdings of the case narrow the potential claims for relief, while its procedural discussion is inapplicable to federal cases.

II.  **ARGUMENT**

A.  Brinker Does Not Support Certification of the Proposed Late Meal Class.

Brinker held that under the IWC Wage Orders and the California Labor Code, "an employer's obligation is to relieve its employee of all duty, with the employee thereafter at liberty to use the meal period for whatever purpose he or she desires, but the employer need not ensure that no work is done." 139 Cal.Rptr.3d at 324, 338.  Plaintiffs have not sought to certify a class of employees who worked during their breaks even though they have offered evidence that some employees did work through some of their breaks. Fn. 7, *infra*. Brinker now makes clear that this evidence is irrelevant, both because there is no Labor Code violation in allowing employees, if they choose, to work through their breaks, and because plaintiffs have failed to show a consistent,

---

[1] Stevco, like this case, was a late meal period case. Morales v. Stevco, 2012 U.S. Dist. LEXIS 68640 at p.9. (USDC E.D.Cal. May 16, 2012). In his declaration in support of the Stevco settlement, Mr. Mallison stated, "Here, plaintiffs' claims revolve largely around Defendants' provision of **'late'** meal periods." Doc. 63:10, lines 24-25 (emphasis added), Case 1:09-cv-00704-AWI-JLT.

company-wide practice of denying breaks. Moreover, neither Labor Code Section 512 nor IWC Order No. 5 are applicable to defendant.[2]

While <u>Brinker</u>'s ruling that a meal period must begin no later than the end of the first five hours of work (139 Cal.Rptr.3d at 343) allows consideration of late meal period claims, those claims are not amenable to class treatment in this case because plaintiffs have failed to show any consistent, company-wide policy of providing "late" meal periods, and because the evidence regarding late meal periods is inconsistent. Section C. *infra.*

### B. <u>No Meal Class In Brinker Would Be Certified in the Federal Courts.</u>

The <u>Brinker</u> Court remanded the case to the trial court to reconsider meal period subclass certification after clarifying that a meal period did not have to be provided for every five hours of work. The court's action came in the face of conflicting evidence submitted by the plaintiffs and defendant. See <u>Brinker Restaurant Corp., v. Superior Court</u>, 165 Cal.App.4th 25, 37 (2008). The court's action was in line with <u>Jaimez v. Daiohs USA, Inc.</u>, 181 Cal.App.4th 1286, 1303-1305 (2010), *rev. den.* 2010 Cal. LEXIS 4333 (2010) (favorably cited in <u>Brinker</u>, 139 Cal.Rptr.3d. at 337), where the court certified a meal period class despite the plaintiff having submitted nine declarations supporting his claim, while defendant submitted 25 declarations contradicting plaintiff's claims. The lower court in <u>Brinker</u> followed <u>Jaimez</u>, where plaintiffs submitted detailed declarations from 33 current and former employees, some of whom stated "they did not 'waive their 'breaks,' but instead were not relieved of work duties so they would take their breaks." <u>Brinker</u>, 165 Cal.App.4th at 37. In opposition, defendants submitted declarations from 336 employees stating that they were regularly provided 30-minute meal breaks." *Id*. at 39.

In federal court, certification would be denied on this record. The United States Supreme Court made clear in <u>Dukes</u>, *supra*, that: "Commonality requires the plaintiff to demonstrate that the

---

[2] As defendant has repeatedly observed, Labor Code Section 512 does not apply to Giumarra. See Labor Code Section 514. Both Wage Order No. 5 and Section 512(a) "require" employers to "provide" nonexempt employees a meal period. Neither Wage Order No. 14 nor Section 512(a) contains such a requirement and, accordingly, this part of the <u>Brinker</u> decision is irrelevant to the present case.

- 2 -

members 'have suffered the same injury' (citations omitted) . . . Their claims must depend upon a common contention." 131 S.Ct. 2551.  The Federal Rules preclude certifying the meal period subclass in Brinker, because conflicting evidence within the purported class would have made it impossible for the plaintiffs to prove that they suffered the same injury.

The California Supreme Court has made it clear that federal class action rules are subordinate to California state rules in determining whether certification will be granted in class actions brought in California state courts. "It is the only in the absence of relevant state precedent that [California] courts turn to federal law and Rule 23 for guidance." Stephen v. Enterprise Rent-a-Car, 235 Cal.App.3d 806, 814 (1991).

The class certification determination is much less rigorous under California law than under the Federal Rules--to the extent that highly regarded practice manuals advise that because class action procedure is more "restrictive" in federal court, state court is a more attractive option for plaintiffs.[3]  As one of the attorneys in Brinker said, the ruling "reaffirms that traditional standards under California law remain notwithstanding recent U.S. Supreme Court rulings curtailing class actions." The Recorder, law.com/jsp/ca/PubArticleCA.jsp?id=1202548842884 (April 12, 2012).

Justice Werdeger directly repudiates a central holding of Dukes ("Commonality requires the plaintiff to demonstrate that the members 'have suffered the same injury' . . . Their claims must depend upon a common contention." 131 S.Ct. at 2555). Concurring in Brinker, Werdeger opines that a "common contention" is not required for class certification under California law.

---

[3] "Class actions: This is one area in which the federal rules are much more restrictive than state rules (*see* ¶14.5), and as a result, filing in state court is often dictated."  Weil and Brown, CIVIL PROCEDURE BEFORE TRIAL 3:639. Another text  advises:

> One area in which the respective procedural rules differ widely, however, is in class actions . . . .  Because the federal rules are more restrictive than the California rules, a plaintiff's attorney who is considering filing a class action will often do better filing it in a California court, if possible, than a federal district court.

CEB CALIFORNIA PROCEDURE BEFORE TRIAL, Vol. I§13:24.

> [T]he opinion of the court does not endorse Brinker's argument, accepted by the Court of Appeal, that the question of why a meal period was missed renders meal period claims categorically uncertifiable. Nor could it, for such a per se bar would be inconsistent with the law governing reporting and **our historic endorsement of a variety of methods that render collective action judicially manageable.**

139 Cal.Rptr.3d at 353 (emphasis added).

Dukes clearly limited the "variety of methods" available for class certification in federal courts, which are preserved in California courts under Stephen and Brinker. Dukes was irrelevant to the class certification issues in the Brinker case because of the California courts' "historic endorsement" of methods--rejected by the Court in Dukes -- that do not require a "common contention."

For example, the "available tools" under California law include "representative testimony" and "statistical analysis." Brinker, 139 Cal.Rptr.3d at 354 (Justice Werdeger, concurring). These forms of evidence were rejected in Dukes as insufficient to demonstrate commonality. 131 S.Ct. at 2555-2556. In Jaimez, *supra*, the California court rejected the proposition that conflicting testimony by putative class members destroys commonality and typicality. But conflicting testimony by class members cannot support a finding of commonality under federal standards.

C. In Contrast with Brinker, Conflicts in the Evidence from Putative Class Members Preclude Certification of a Late Meal Break Class in this Action Under Rule 23.

1. Dissimilarities Within the Putative Class Impede Common Answers.

In the present case, irresolvable conflicts between the field worker testimony submitted by plaintiffs and defendant are fatal to plaintiffs' efforts to demonstrate commonality, typicality, and representative status under Rule 23. As the Dukes Court noted, "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." 131 S.Ct. 2551. As is described in Defendants' Opposition Brief (Doc. 77), the dissimilarities within the proposed classes here could hardly be greater.[4] None of the plaintiffs, nor any of the 77 fieldworker

---

[4] In Brinker, 165 Cal.App.4th 25, 37 (2008), the court noted that the Employer "used a centralized computer system that could generate reports showing class-wide meal and rest break violations." In the present case, no such computerized reports are possible, as Plaintiff's expert has testified. Declaration of Aaron Woolfson ¶¶ 16-18. Doc. 52.

declarants presented by plaintiffs, claim that their meal periods were "late" or not "authorized and permitted" every day of their employment with defendant Giumarra.

Citing the deposition testimony of plaintiff Ramon Munoz and six fieldworker declarants, plaintiffs contend that "Prior to 2006, Giumarra scheduled all fieldworker meal breaks for 12:00 p.m. regardless of [the starting time]." July 22, 2011 Memorandum, p.14:8-10, fn.61. Document 46, p. 20. Plaintiffs grossly misrepresent the testimony. Only two of the six declarants they cite at footnote 61 actually state that their meal breaks were taken at noon. In fact, Mireya Moreno and Maria Cruz are the only two of plaintiffs' 77 declarants who state that their meal periods always began at noon.[5]

Most of the fieldworkers whose declarations plaintiffs presented with their motion to certify worked for Giumarra prior to 2006. Even so, at least ten of the 77 are silent on the subject of meal periods, or make no claim that they worked during the meal period.[6] The more than 60 others who do address meal periods, do not state what times meal periods were taken, nor do they say that their

---

[5] **Cruz** limited her statement (**"During the seasons before the harvest, my lunch break was always at 12:00 p.m."** Doc. 50:14, ¶8), to the pre-harvest seasons, when the start time is 7:00 or 7:30 a.m. and a noon lunch complies with the five-hour rule.

**Moreno** destroys her own credibility with a categorical statement (**"During my employment my lunch was always at 12:00 p.m."** Doc. 53, p.73, ¶7, emphasis added) that cannot withstand scrutiny because it is in direct conflict with the testimony of six other members of her Crew No. 57, who state that lunch was at 11:30 a.m. Monica Flores Doc.72-5:101; Alberto Martinez Doc.72-9:62; Maria Martinez Doc.72-9:76; Maricela Mata Doc. 72-9:91; Maria Saavedra Doc.72-12:52; and Alicia Zepeda Doc.72-14:24 (at ¶6 of each declaration). Moreover, Moreno is still a Giumarra employee, so even by plaintiffs' telling, her meal periods were often at 11:30 a.m. after 2005.

The other four declarants cited at plaintiffs' footnote 61 all state, **"It was common practice during my employment that the employees, including myself, were forced to work at least five (5) hours without a meal break."**--not evidence of a violation of Wage Order 14's five-hour rule because they do not testify to a shift of at least six hours. Carmen Hernandez Doc. 50:112; Lidia Cruz Doc. 50:9; Eugenio Hernandez Doc. 53:10; Silvia Hernandez Cruz Doc. 53:24 (at ¶11 of each declaration). None of the four, nor any of plaintiffs' other 71 declarants, states when lunch periods were actually observed.

[6] Domingo Balderrama Doc.48:25; Alfredo Caldera Doc. 48:35; Mauricia S. Calvillo Doc. 48:48; Jesus Carrera Doc. 48:82; Dolores Gonzales Doc. 50:66; Israel Herrera Doc. 53:31; Miguel Perez Doc. 57:22; Refugio Hernandez Quiroz Doc. 57:27; Jose A. Ramos Doc. 57:54; Catalina Valladares 58:52.

meal periods were late. Rather, the others claim they sometimes worked or observed that co-workers worked through part or all of their meal periods.[7]

By contrast, all 229 fieldworker declarants presented by defendant confirm that throughout their employment with defendant, before and after 2006, when they start their workday at 6:30 a.m., their meal periods began at 11:30 a.m. Without exception, all defendant's fieldworker declarations (representing all 42 Giumarra fieldworker crews, but not including eight declarations

---

[7] Maria Hernandez Alvarez (**"Because of this pressure to work fast or risk getting sent home, we usually had to work through part or all of of our meal period"**) Doc 48:6; Maria De Lourdes Baez (same) Doc 48:18; Felipe Bautista (same) Doc. 48:30; Teresita Ortega Calisto (same) Doc. 48:41; Alfredo Cano (same) Doc. 48;55; Hector Luis Caquias (same) 48:62; Agustin Lopez Castelan (same) Doc.48:91; Manuel Mesa Escobar (same) Doc. 50:40; Samuel Gallardo (same) Doc. 50:52-53; Emilio Negrete Gutierrez (same) Doc. 50:87; Pastor Morales (same) Doc. 53:71; Rubi Angel Ramos (same) Doc. 57:49; Jose Antonio Rivera (same) Doc. 57:62; Maria Socorro Rivera (same) Doc. 57:69; Eudiel Encinas Robledo (same) Doc. 57:77; Orel Gonzalez Rodriguez (same) Doc. 57:83; Gabriela Sarabia (same) Doc. 58:29; Rosalba Silva (same) Doc. 58:37; Aurelio Anaya (**"Many of us were not able to take our meal or rest breaks because of the quota . . ."**) Doc.48:12; Abel Carbajal (**"I would sometimes work during part of my meal period"**) Doc. 48:70; Juana Carbajal (**"I was one of the faster workers . . . I frequently spent all or part of my meal period helping other fieldworkers catch up"**) Doc 48:78; Maria Cervantes (**"most of the packers pack grape through the ½ hour"**) Doc 48:98; Juan Carlos Fierro Ciriaco (**"I usually worked . . . 10 minutes of my lunch period"**) Doc. 48:106: Esther Corona (**"I usually work 15 minutes of my lunch period 3 of the 6 days of the workweek."**) Doc. 48:115; Maria Cruz (**"Many times I worked during my lunch period"**) Doc. 50:14; Victor Esteban Cruz (**"I would sometimes see other workers work 10 to 15 minutes of their "lunch period"**) Doc.50:25; Artemiza Martinez De Marin (**"I generally worked 15 minutes during my lunch period three days out of the 6 days of the workweek"**) Doc. 50:34; Lillian Galvan (**"we would work the whole 30 minutes"**) Doc. 50:59; Isaac Gonzales (**"every day I would work at least 10-15 minutes during the "lunch period"**) Doc. 50:72; Miguel Gutierrez (**"I generally have to work during my lunch period for 10 minutes so that I could complete the picking quota"**) Doc. 50:79; Esteban Gutierrez (**"During the harvest, . . . we work during our lunch breaks"**) Doc 50:90; Petra Gutierrez (**"Usually I would work 10-15 minutes of my "lunch period" so that I could finish"**) Doc. 50:101; Anayeli Hernandez (**"I have worked straight through without a meal break without having 30 complete minutes"**) Doc. 50:106; Gerardo Cruz (same) Doc.50:3; Juan Lopez (same) Doc. 53:43; Maria S.J. Lopez (same) 53:49; Victor Martinez (same) Doc. 53:55; Raquel Pacheco (same) Doc. 53:96; Dolores Paz (same) Doc. 53:109: Leonardo Ramirez (same) Doc. 57:39; Alfonso Rojas (same) Doc. 57:87; Jose Luis Sanchez (same) Doc. 57:108; Guillermina Sanchez (same) Doc 57:114; Benito Santiago (same) Doc. 58:2; Maria Santiago (same) Doc. 58:9; Tomas Santiago Gabriel (same) Doc. 58:21; Otaniel Valdominos (same) Doc. 58:41; Esther Hernandez (**"if I was behind the rest of my co-workers I would not take my 30 minute lunch break"**) Doc. 53:5; Julio Hernandez (**"I generally work through my rest periods two to three days out of the 6 days in the workweek"**) Doc.53:20; Angelica Lopez (**"during our lunch period we only eat for 15 minutes so we can finish our quotas"**) Doc.53:39; Adrian Miranda (**"would work up to 30 minutes of the lunch period"**) Doc. 53:64; Joaquin Negrete (**"observed some of my coworkers working during their lunch periods"**) Doc. 53:84; Ermelinda Ramirez (same) Doc. 57:35; Francisca Castro Ozuna (**"I usually have to work through part or all of my meal period at least 3 to 4 times per week"**) Doc. 53:91; Carlos Vicente Patricio (**"I usually have to continue picking grapes through part or all of our meal period"**) Doc. 53:105; Juana Pelayo (**"I normally worked 10-15 minutes or the entire 30 minutes of my lunch period 2-3 days per week"**) Doc. 57:6; Angelina Jimenez Perez (**"every day I would work at least 20 to 30 minutes during the lunch period"**) Doc. 57:16; Jose Luis Roque (**"I have seen that many workers in my crew work through part or all of a meal period"**) Doc. 57:96; Taurino Dias Valencia (same) Doc. 58:49 Angel Ruiz (**"Usually I would work 15 to 20 minutes of my lunch period"**) Doc. 57:104; Saturnino Rivera Santiago (**"we usually had to work through part or all of our meal period"**) Doc. 58:17.

1  from the packing shed crew) state that lunch periods were taken at 11:30 a.m.  All fieldworkers

2  interviewed by defendant's counsel gave consistent answers, and their declarations contain

3  paragraphs six and seven that are substantially identical with the following:[8]

> 6.    I have seen Wage Order No. 14, which my foreman keeps available in sealed packages along with other posting materials, many of which are available in both Spanish and English, by the portable toilets.  The materials in the package, including Order No. 14, are available to review at any time during the workday by me and any of the other workers.  During my workday, my foreman authorizes and permits all the workers in my crew to take three breaks.  Two of them, which occur at 9:00 a.m. and 2:00 p.m., are "rest breaks" and last ten (10) minutes each.  The third break, which lasts for thirty (30) minutes, is our "meal period."  During my two rest breaks, I will stop work, try and sit down in the shade, have something to eat and/or to drink and relax.  During the longer lunch period, which starts at 11:30 a.m., I eat food that I have brought from home, drink water or soda and usually talk with my co-workers.  My foreman gives us at least the full time (10 minutes for each rest break and 30 minutes for the meal period) for our breaks.  I occasionally check my watch or my cell phone to see how much time we have left and that we get "full time" for our breaks.  I always take the full breaks.  My foreman always makes it very clear that we have the right to take our breaks and he has never pressured us not to take our full breaks or prevented us from taking our breaks.  We are told at the "school" that we must take our breaks.  Neither my foreman, nor anyone else from Giumarra ever has interfered with our breaks.
>
> 7.    Never in my time working for Giumarra have I had to complain or heard of anyone else in my crew complaining that we did not have the opportunity to take the full time for any of our rest breaks or lunch periods.  It is also not true that anyone in my foreman's crew was ever not permitted to take a full thirty (30) minute lunch break.

Faced with this testimony, plaintiffs represented to the court and stipulated that they would

need to depose at least 8, up to 24 (10%) of defendant's declarants.  Order 12/08/11 Doc. 83:20.

They ended up deposing only three.[9]

---

[8] What is not reflected in the declarations presented by defendant is the fact that the fieldworkers' start time is changed periodically during the year as the sun rises earlier in the spring and summer months, later in fall and winter, and daily schedules vary with changes in the start time. The changing start time is reflected, however, in some of plaintiffs' fieldworker declarations.  *E.g*., Maria Cruz states, **"The pruning work began at 7:00-7:30 a.m."** and **"During the harvest, my official schedule [began at] 6:30 or 7:00 a.m."** (Doc 50:14); Esteban Gutierrez (same) Doc. 50:90. Similarly, Mireya Moreno states, **"During the harvest, my official schedule [began at] between 6:30 and 7:00 in the morning . . ."** (Doc 53:73).  Alfredo Caldera notes, **"Depending on the time of year, "start time" was normally around 6:00 a.m. or 7:00 a.m."** Doc. 48:35.  Mauricia S Calvillo states, **"Depending on the time of year, "start time" was normally either at 6:30 a.m. or 7:00 a.m."** Doc. 48:47, Maria Cervantes (same) Doc. 48:97. Victor Esteban Cruz (same) Doc.50:24.  Juan Carlos Fierro Ciriaco notes, **"For example, if our shift starts at 8:30 a.m."** Doc. 48:105. Esther Corona, **"For example, if we are going to start at 7:30 a.m."** Doc. 48:113. Obviously, this adds another significant variable to the determination whether a meal period was timely.

[9] All of whom appeared by agreement with defendant's counsel, after it was too late for plaintiffs to serve notice or subpoenas--of little moment, perhaps, but plaintiffs suggest that there was something nefarious about the

(Continued...)

In addition to the varying recollections of Giumarra's employees, management testimony demonstrates the impossibility of proving that Giumarra had a consistent, company-wide policy of authorizing late lunches. Plaintiffs attempt to paper over these differences by relying on sign-up sheets indicating that at one time, lunch was generally scheduled at noon, but those sign-up sheets were prepared on a de-centralized basis. Plaintiffs also rely on the testimony of Jeff Giumarra that the company's meal break policy appeared to have changed, but that testimony was not based on first-hand knowledge, only on an examination of the sign-up sheets themselves. Considerable doubt was cast on the reliability of the sign-up sheets for the purpose of showing a company-wide policy by Giumarra's superintendents' testimony. For example, Joe Giumarra testified at his deposition that lunch was always scheduled five hours after starting time (tr.30, 39), and that sign-up sheets indicating a later time might not be accurate. (tr.35, 42-43) Mr. Giumarra also explained why the sign-up sheets cannot be relied upon to show the starting time of lunch breaks. Recording the time at which lunches were taken was not their primary purpose: "I think back then it wasn't as important to fill these things out, the main thing we were making sure was to make sure the employees were there."  (tr.42:7-9)

This testimony was echoed by superintendent Kuntz, who testified at his deposition that Giumarra's policy of recording start and stop times of meal periods was only "loosely" followed. (tr. 52) Mr. Kuntz also did not know if practices with respect to recording start and stop times differed among the superintendents. (tr. 34-35)

These varying recollections were entirely consistent with statements in the superintendents' declarations that sign-up sheets "do not provide a reliable indicator of when, for example, the mid-day meal break was actually taken." Kuntz declaration (doc. 76) at ¶8. Plaintiffs cannot ask the court to disregard the testimony of hundreds of employees, as well as the recollections of management personnel, that lunch breaks did generally commence five hours after the start time,

---

(...Continued)

"nonappearance" of a fourth worker, Letitia Arredondo, whom defendant tried to produce but whom could not be reached when plaintiffs delayed until after the end of the harvest. Doc. 94-2:56-60

1  based on documents of uncertain reliability that were prepared for a different purpose, and that
2  themselves do not even show a consistent, company-wide policy of authorizing late lunches.

3  Plaintiffs simply ignore the vast differences and irresolvable conflicts among putative class
4  member declarations, management testimony, and the documents themselves. They seem to be
5  attempting to litigate the class action certification issues under the California rules. Plaintiffs also
6  ignore a well-established body of law under Rules 23(a)(2), 23(a)(3) and 23(b)(3), refusing to
7  certify classes where putative class members' testimony is in conflict and where plaintiffs' claims
8  are not typical of the claims of the proposed class, so that predominance and superiority are
9  lacking. Plaintiffs have made no attempt to distinguish these cases, which is particularly
10 noteworthy since plaintiffs' attorneys represented the plaintiffs in many of the cases.

11 In Garcia v. Sun Pacific Farming Corp., 2008 U.S. Dist. LEXIS 111969 (E.D.Cal.), *aff'd*,
12 2009 U.S. App. LEXIS 24999 (9th Cir 2009), the plaintiffs produced two depositions from the
13 plaintiffs and several declarations from a putative class of 10,000 members for whom the employer
14 had not provided meal and rest periods. The defendant produced 33 declarations stating that
15 workers did receive proper meal and rest periods. The court denied plaintiff's motion for
16 certification, ruling that the conflicting anecdotal evidence precluded the required commonality,
17 typicality, or predominance. The court rejected any contention that lawful written policies were
18 determinative of the commonality analysis, and ruled that what was controlling was "the actual
19 daily practices," not written policies. 2008 U.S. Dist. LEXIS 111969 at 13.

20 In Rojas v. Marko Zaninovich, Inc., 2012 U.S. Dist. LEXIS 51787 (E.D. Cal. 2012), Judge
21 Ishii affirmed the dismissal of a purported pre-shift work class based upon conflicting evidence
22 presented by the employees, endorsing the Magistrate Judge's observation that "[T]he evidence
23 provided by Plaintiffs and Defendant regarding pre-shift work appears to be directly in conflict ….
24 Conflicting testimony poses a significant concern for managing a class action (citations omitted)."
25 The evidence now before the Court is similar to the evidence presented in Garcia. *Id.* at *20.

26 Further, the Magistrate Judge found the parties' conflicting evidence defeated the typicality
27 requirement (citing Washington v. Joe's Crab Shack, 271 F.R.D. 629 (N.D. Cal. 2010)); Garcia,
28 2008 U.S. Dist. LEXIS 111969 at 36-37), and noted, "the harvest workers provide differing

1 accounts of what work was required by Sunview through the practices of its foremen." 2012 U.S.
2 Dist. LEXIS 51787 at 42. The Magistrate Judge concluded that plaintiffs did not have "the same or
3 similar injury as many of the putative class members who assert pre-shift, off-the-clock work as
4 neither required nor permitted." Plaintiffs did not have "the same or similar injury as many of the
5 putative class members who assert pre-shift, off-the-clock work as neither required nor permitted."
6 *Id*.  Finally, because plaintiffs were unable to meet the commonality and typicality requirements,
7 the Magistrate Judge determined plaintiffs would not be proper class representatives (citing <u>Stearns
8 v. Ticketmaster Corp</u>., 655 F.3d 1013,1027 (9th Cir. 2011))  (affirming a finding that the named
9 plaintiffs "are not proper class representatives" because their claims were "not typical of the class
10 members")."

11        Although they fail to cite <u>Rosales v. El Rancho Farms</u>, 2011 U.S. Dist. LEXIS 11069
12 (E.D.Cal. 2012), plaintiffs here rely on precisely the same arguments they urged on this court in <u>El
13 Rancho</u>.[10]  "Plaintiff relies on Defendant's sign-in sheets, which record shift start and stop times
14 and meal times and the admission of Defendant's PMK that Giumarra maintained a practice and
15 policy of providing meal periods at noon for all crews, resulting in late meal periods."  Plaintiffs'
16 Reply, (Doc. 89, p.15).

17        In <u>El Rancho,</u> this court rejected these arguments.  The <u>El Rancho</u> plaintiffs submitted the
18 declarations of an unclear number of putative class members that they were denied timely meal
19 breaks while defendant submitted declarations from 82 putative class members that they always
20 received timely meal periods.  The employer's declarations took the form of questions to be
21 answered by a simple "Yes" or "No," such as "Have you ever worked more than 5 hours without
22 receiving a 30-minute meal break?" 2011 U.S. Dist. LEXIS 11069 at 21. Judge Ishii ruled, as in the
23 present case, that "Plaintiffs failed to address this contradictory anecdotal evidence." *Id*.at 28.

---

26 [10] Plaintiffs' Reply Brief in <u>El Rancho</u>, E.D. Cal. Case No. 1:09-CV-00707-AWJ-JT (No. 43, p.1).
The Court may take judicial notice of court records. <u>El Rancho</u>, 2011 U.S. Dist. LEXIS 142779,
27 n.2, 2012 U.S. Dist. LEXIS 11069.

- 10 -

The conflict in the testimony of the purported class members makes impossible the required commonality. **Plaintiffs cannot satisfy their burden of proving commonality by introducing company statements or management records when there is substantial and widespread difference in the testimony of the purported class members, a large majority of whom reject Plaintiffs' claims. None of the supposed "common questions" Plaintiffs have proposed may be answered "true or false" on a class-wide basis, so that the questions "are incapable of resolving any of Plaintiffs' claims "in one stroke**," as required by Dukes (but not apparently by the California Supreme Court in Brinker). Where commonality is destroyed because of internal conflict between the purported class members, it cannot be created by other evidence. Accordingly, in El Rancho , Judge Ishii declined to certify the proposed late meal class as well as three other proposed classes on the grounds that they lacked commonality and typicality, and that the plaintiffs were not adequate class representatives.

In Marlo v. United Parcel Service, Inc., 251 F.R.D. 476 (C.D. Cal. 2008), *aff'd* 2011 U.S. App. LEXIS 8664 (2011), the Court of Appeals decertified a previously certified class of employees who were not paid overtime in accordance with the Company's highly-centralized "uniform classification policy" (2011 U.S. App. LEXIS 8664 at 17), which was based on the employees' duties. Plaintiffs submitted the declarations of employees showing that their work did not render them exempt, while defendants submitted contradictory declarations. In decertifying the case, the judge emphasized that the existence of a uniform company policy did not establish the predominance of common issues necessary for certification under Rule 23(b)(3). Rule 23(b)(3) requires common proof, and conflicting employee testimony rendered such proof impossible:

> The declarations and deposition testimony of FTS submitted by the parties suggest variations in job duties that appear to be a product of employees working at different facilities, under different managers, and with different customer bases. Without more than this individual testimony, the Court cannot conceive how the overtime exemption will be [**29] presented to the jury as a common issue for class-wide adjudication, as opposed to a number of individualized inquiries. **There is a significant risk that the trial would become an unmanageable set of mini-trials on the particular individuals presented as witnesses.**

(emphasis added)  Thus, conflicting employee evidence destroys the predominance of common evidence that is required for certification of a class under Rule 23(b)(3).

Written policies do not overcome conflicting putative class member testimony. In Gonzalez v. Millard Mall Services, Inc., 2012 U.S. Dist. LEXIS 28142 (S.D.Cal. 2012), the employer's written Handbook provided for a 30 minute meal break after six hours of work. Labor Code §512 and Wage Order 4-2001 also require a 30 minute meal break after five hours work per day. Plaintiffs provided 112 questionnaires from putative class members stating that they did not receive required meal breaks. Defendants provided declarations from over 200 putative class members disputing plaintiffs' claims. Despite the written policy that did not comply with Labor Code §512 and the applicable wage order, the court ruled:

> **The conflicting evidence [\*24] reveals that Millard did not have a uniform practice of denying employees** their meal breaks and/or rest breaks. Some employees stated that they missed meal and rest breaks while others stated they always received their meal and rest breaks and others provided contradictory statements. (Dkt. No. 56-2, Questionnaires; Dkt. Nos. 69-1, 69-2.) **Because of the varying declarations and conflicting facts of the putative class members, Plaintiffs have failed to show that Defendants had a common policy that "prevented" employees from taking meal breaks and/or failed to "permit and authorize" employees to take rest breaks.** Id. at (\*25).

(emphasis added)  See also Brady v. Deloitte & Touche LLP, (N.D.Cal., March 27, 2012) 2012 U.S. Dist. LEXIS 42118, where the court held that conflicts between the testimony of the purported class members required decertification of a class despite well-established company policies and accounting standards.

In the present case, Giumarra did not even have a written policy on meal breaks that was alleged to be unlawful. The number of employees claiming to have taken timely meal breaks far exceeded the number claiming to have taken untimely breaks. Accordingly, plaintiffs clearly cannot satisfy their burden of showing that defendant Giumarra had a common policy of failing to "authorize and permit" employees to take timely meal periods.

Nor do time sheets overcome conflicting putative class member testimony. In Brown v. Federal Express Corporation, 249 F.R.D. 580 (C.D.Cal. 2008), the court refused to certify a class of truck drivers based on their time sheets because the time sheets were found to be inaccurate based on the drivers' conflicting testimony.

Case 1:09-cv-00703-AWI-JLT Document 96 Filed 05/25/12 Page 17 of 19

As already noted, plaintiffs disregard completely the testimony of more than 200 putative class members who say that their meal periods were timely. They ignore the few putative class members who testified that their lunch periods were at 12:00 noon. Instead, plaintiffs rely exclusively on the signup sheets and the claimed unwritten practice of providing meal periods at noon. Plaintiffs' position has been rejected by every one of the above cases, which follow the Supreme Court's guidance in Dukes that commonality within a class requires proof that the class members "have suffered the same injury," which is impossible where there are dissimilarities within the class in the form of conflicting testimony.

2. Plaintiffs' Late Meal Class Cannot Be Certified Under Rule 23(b)b(2).

It is well-established that:

> The predominance requirement, although reminiscent of the commonality requirement of Rule 23(a) is far more demanding because it tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) requires district courts to consider how a trial on the merits would be conducted if a class were certified. This, in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials. . . . The district court abuses its discretion if it certifies a Rule 23(b)(3) class without having "meaningfully consider(ed) how Plaintiffs' claims would be tried.

Altieri v. Worley Catastrophe Response, LLC, 2011 U.S. Dist. LEXIS 85696 at 44-45 (E.D.La. 2011) (quotations and citations omitted).

In her concurring opinion in Brinker, Justice Werdeger opines that the California courts "have encouraged the use of a variety of methods to enable individual claims that might otherwise go unpursued to be vindicated . . . Representative testimony, surveys and statistical analysis all are available as tools to render manageable determination of the extent of liability." 139 Cal.Rptr.3d at 354. In view of the rejection of statistical analysis as a tool to support certification by Dukes and the other federal cases cited in defendant's Opposition Brief (Doc. 77:45-46), and the fact that plaintiffs' "expert" denies that he is an expert in statistical analysis, there is no way that statistical analysis is available as a tool to determine liability in this action.

- 13 -

Undoubtedly, in recognition of this point, plaintiffs offer the following approach to calculating damages for late meal periods on a class basis:

> The payroll contains the amount of wages paid (hourly and piece) **by pay period** for each employee. All that is left is a simple calculation consisting of dividing wages by the hours to arrive at a rate of pay (wages paid/hours worked). Damages calculation cannot defeat certification, and in any event, the calculations here would not be so difficult as to consider manageability issues.

Plaintiffs' Reply Brief (Doc 89:19, lines 5-9)(emphasis added).

Plaintiffs' proposed damage calculation suffers from two fundamental defects. First, Labor Code Section 226.7(b) requires a determination of the pay (part of which is incentive and varies each day) of each individual employee who was denied a meal period "for each work day" on which they were denied a meal period. Damages are based upon an individual's hourly pay for the day he was not "authorized and permitted" to take a meal break. Section 226.7(b) does not authorize averaging among employees for each "pay period." Thus, in order to determine the amount owing under Section 226.7(b), it would be necessary to determine each work day since 2001 that each employee had a late lunch and what his pay rate was for the prior day. Obviously, such an approach must be rejected under Rule 23(b)(3).

The second fundamental problem with plaintiffs' proposal is that the only way of determining an employee's daily pay rate is through her "field labor time card," which shows the daily and weekly hours and piece work units recorded for each and every employee." Declaration of Jeff Giumarra, Doc.71, p.3, ¶7, lines 16-17. The only way to determine the piece rate portion of an employee's pay for a particular day would be to multiply the number of units recorded on the field labor time card by the box bonus rate. There is no other way of determining a field worker's pay for a particular day.

Clearly, individualized issues predominate and a class action is not a superior method of adjudication. Accordingly, certification of a late meal period class must be denied under Rule 23(b)(3).

    D.  <u>Brinker Held that No Off The Clock Class Could be Certified.</u>

In <u>Brinker</u>, the Supreme Court declined to certify an "off the clock" class because the plaintiffs supplied no evidence of common policies or means of proof.  The only formal company policy expressly disallowed such work, and plaintiffs failed to present evidence of a systematic effort to pressure employees to work off the clock contrary to company policy.  This holding is instructive because it is based on facts similar to those in this case.  Giumarra's practices regarding schools, tray-washing, and other claimed off the clock work, changed over time and varied from field to field and superintendent to superintendent, as shown in detail in defendant's opposition brief.  Under the stricter standards applicable in federal court, such a class would be even less appropriate than the class denied in <u>Brinker</u>.

## III.   CONCLUSION

The <u>Brinker</u> case clarifies but does not fundamentally change the analysis presented in Giumarra's opposition to class certification.  For the reasons set forth therein, and in this supplemental brief, certification of all of the proposed classes should be denied.

Dated:  May 25, 2012           LAW OFFICES OF JOSEPH E. HERMAN

                                                           By:   */s/  Joseph E. Herman*
                                                                       Joseph E. Herman

Dated: May 25, 2012           LAW OFFICES OF JOSEPH C. MARKOWITZ

                                                           By:   */s/  Joseph C. Markowitz*
                                                                    Joseph C. Markowitz
                                                                    Attorneys for Defendant,
                                                                    Giumarra Vineyards Corporation