**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAFAEL MUNOZ, et al., | ) Case No.: 1:09-cv-00703 - AWI - JLT |
| Plaintiff, | ) ORDER DENYING PLAINTIFFS' MOTION TO STRIKE CLASS MEMBER DECLARATIONS SUBMITTED IN SUPPORT OF DEFENDANT'S OPPOSITION TO CLASS CERTIFICATION |
| v. | ) |
| GIUMARRA VINEYARDS CORPORATION, | ) (Doc. 94) |
| Defendant. | ) |

Plaintiffs Rafael Munoz, Santos R. Valenzuela, Trinidad Ruiz, Marta R. Rincon de Diaz, Ramon Perales, and Hugo Perez Rios (collectively, "Plaintiffs") seek to strike the class member declarations filed in support of the opposition to class certification filed by Giumarra Vineyards Corporation ("Giumarra" or "Defendant"). (Doc. 94). On June 18, 2012, Defendant filed an opposition to the motion (Doc. 103), to which Plaintiffs replied on June 25, 2012. (Doc. 106).

On July 2, 2012, the Court heard oral argument regarding the motion with the motion for class certification. For the following reasons, Plaintiffs' motion to strike is **DENIED**.

I.      **Factual and Procedural History**

Plaintiffs filed an Amended Complaint against Defendant on September 22, 2009. (Doc. 28). Plaintiffs alleged the following: violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, failure to pay wages, failure to pay reporting time wages, failure to reimburse required expenses,

1

failure to provide meal and rest periods, failure to pay wages of terminated or resigned employees, knowing and intentional failure to comply with itemized employee wage statement provisions and record keeping requirements, breach of contract, and violation of unfair competition law.  *Id.* at 1-2. Plaintiffs brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California."  *Id.* at 9.

On July 22, 2012, Plaintiffs filed a motion for class certification for the above violations. (Doc. 42).  Opposition certification, Defendant submitted declarations of over 250 putative class members.  (Docs. 72, 78).  Thereafter, Plaintiffs filed the motion now before the Court, seeking to strike the class declarations.  (Doc. 94).

## II.     Admissibility of Declarations

In conjunction with a motion for class certification, the Court may consider material evidence submitted by the parties to determine Rule 23 requirements are satisfied.  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).  Accordingly, declarations may be used to support or oppose a motion where presented in writing, subscribed as true under penalty of perjury, and dated.  28 U.S.C. § 1746.

## III.    Plaintiffs' Motion to Strike

Plaintiffs contend the declarations filed by Defendant with its opposition to class certification were gathered through a "patently deceptive," "inherently flawed and highly coercive" method.  (Doc. 94 at 7).  According to Plaintiffs, putative class members "were pulled from the job in the middle of the day by supervisors and taken to an area near or at the office or Alfredo Guimarra [sic], the company's owner, to prepare the declarations."  *Id.*  In addition, Plaintiffs allege the declarants "were never notified about the pending lawsuit, that their claims were at issue in this case, that their employer had antithetical interests to them, and that the declarations would be used in litigation."  *Id.* Finally, Plaintiffs assert the declarations filed by Defendant "do not contain an accurate recording of the information the employees provided and the employee declarations were not translated to the employees."  *Id.*

Plaintiffs argue the declarations must be stricken because the putative class members were not informed of the litigation or the consequences of signing.  (Doc. 94 at 8-12) (citing *Longcrier v. HL-A*

*Co., Inc.* 595 F.Supp.2d 1218, 1230 (S.D. Ala. 2008)).  In support of this assertion, Plaintiffs note Agustin Hernandez testified he was not informed of lawsuit or told the purpose of answering the questions posed by Defendant's counsel.  *Id.* at 11 (citing Hernandez Depo. at 13:7-13).  Also, Juan Ortiz Martinez reported he was not informed the declaration could be used against his interests, or that he may want to consult an attorney prior to signing the declaration.  *Id.* at 12 (citing Martinez Depo. at 12:24-25, 13:1-14).  Plaintiffs contend *Longcrier* is instructive because "the declarations here were obtained with similar improper and misleading means, including failing to inform employees of the existence of a collective action, and failing to explain the possible consequences of signing the declaration."  *Id.* at 11 (citing *Longcrier*, 595 F.Supp.2d at 1225-26).

In addition to the procedure used to gather the declarations, Plaintiffs object to the content of the declarations, and assert it is unreliable because declarations were not translated before the putative class members signed the documents.  (Doc. 94 at 15-16).  According to Plaintiffs, the declarations "do not contain accurate accounts of the information the workers provided to the Defendant's attorney."  *Id.* at 16.  For example, Plaintiffs present a conflicting declaration from Venedo Garcia, who reported in his prior declaration that pre-shift work as not permitted, and now testifies that the workers started before the official start time.  *Id.* at 16-17.  According to Mr. Garcia, he only signed the declaration because he believed the attorney represented the workers.[1]  *Id.* at 16.

According to Plaintiffs, Defendant "should not be allowed to manipulate workers to secure declarations that it will then use for the purpose of preventing the very workers it mislead from being able to litigate their rights."  (Doc. 94 at 18).  Therefore, Plaintiffs request "the Court strike all 251 declarations offered by Defendant," or in the alternative, "to give the declarations no weight" when considering Plaintiffs' motion for class certification.  *Id.* at 19.

## IV.    Defendant's Opposition[2]

---

[1] Plaintiffs offer no explanation, nor does Mr. Garcia, why he would sign a declaration under penalty of perjury that was not correct just because the workers' attorney asked him to do it.  This could raise the specter that his most recent declaration—signed at the behest of "the workers' attorney"—is accurate.

[2] Defendant appears to seek to use its opposition to the motion to strike as an opportunity to make a "sur-reply" to Plaintiffs' arguments regarding class certification in the reply brief.  (Doc. 103 at 3).  However, argument regarding the effect of the declarations on the motion for class certification—rather than the admissibility of the declarations—is improper in conjunction with this motion.

Defendants argue the declarations should not be stricken, and "plaintiffs' motion to strike is itself based on affirmative misrepresentations." (Doc. 103 at 3). Although Plaintiffs contend the declarants "were not told about the pending lawsuit," Defendant reports "each declarant affirmed under penalty of perjury that she or he had been told that the reason the Company wanted to interview her or him was 'to get information about the lawsuits.'" *Id.* at 4. Specifically, each of the declarations contained the following statement:

> I understand that the only reason the Company has asked to talk to me is to get information about lawsuits that have been filed against the Company. The Company has assured me that my talking to it about the lawsuits is completely voluntary, and I have not been threatened in any way or provided any benefit based on discussing the lawsuit with the Company. The Company has not asked me any questions about my Union activities or any sympathies.

*Id.* As further support of their contention that declarants were informed of the pending lawsuit, Defendant notes Juan Ortiz Martinez testified he was told the declaration was prepared in conjunction for a lawsuit. *Id.* (citing Martinez Depo., Doc. 94-2 at 21).

In addition, Defendant contends Giumarra did not use improper methods to gather the declarations of putative class members. According to Defendant, the interviews were conducted by Defendant's counsel, Bruce Carroll, with the assistance of a translator. (Doc. 103 at 5). Defendant notes "no member of Company management or supervision (or anyone else) was present during the interviews." *Id.* (citing Carroll Decl. ¶ 2). Defendant contends declarations were gathered over the course of three years, from August 4, 2008 to August 20, 2008; from May 3, 2010 to May 14, 2010; and August 9, 2010 to August 19, 2010. *Id.* Further, Defendant notes:

> Almost all of the interviews were conducted in a motorhome driven to locations at the vineyards where the crews were working. [Citation.] A few (approximately 3%) of the declarants were interviewed in a ranch office at the Company's Ducor shop, a few were interviewed in a ranch office at Wheeler Ridge, and a few more in the Company's main conference room at its Edison offices, because crews were working near those locations. [Citation.]

(Doc. 103) (citing Carroll Decl. ¶ 5). Mr. Carroll reports that he "always" identified himself as an attorney for Giumarra, and informed each worker that the lawsuit was the reason for the interview." (Carroll Decl. at ¶ 2). Mr. Carroll asserts, "Every declaration . . . was read aloud to the declarant in Spanish, and all requested corrections and changes were made, before the workers were ever offered

4

1   pens with which to sign the declarations." *Id.* The only exception to this procedure was made when a

2   worker was fluent in English, and a translation was not necessary. *Id.*

3         Defendant argues the above procedure does not "create the kind of coercive environment

4   which would justify striking any of the declarations, much less all of them." (Doc. 103 at 9). Thus,

5   Defendant concludes the motion to strike should be denied. *Id.* at 10.

6   **V.     Plaintiffs' Reply**

7         In reply, Plaintiffs contend "several declarants" testified they were not informed that "the

8   purpose of the meeting [was] 'to get information about the lawsuits that have been filed against the

9   Company." (Doc. 106 at 7). Plaintiffs assert, "Despite the boilerplate language in the declarations,

10  several of the actual declarants have affirmed that they were not informed about the nature of the

11  lawsuit nor what exactly their declarations would be used for." *Id.* In addition, Plaintiffs note the

12  declarants report "portions of their testimony was left out of the final declaration," and Juan Ortiz

13  Martinez testified "his declaration included references to orders and procedures that he had no

14  knowledge of at all." *Id.* at 7-8. Therefore, Plaintiffs conclude the "formulaic declarations are

15  permeated with instances of inaccurate accounts." *Id.* at 8.

16        Moreover, Plaintiff contends the motorhome location did not alleviate the coerciveness of the

17  interviews, and "employees had no reason to feel that, at this meeting, they were somehow outside of

18  the company's purview." (Doc. 106 at 8). According to Plaintiffs:

19        Workers were pulled out of the field by supervisors and directed to meet with the
          company's attorney. They were asked to give their opinion about their working
20        conditions. They were interviewed in a language that is not their own. They were asked
          to sign forms that they could not read for themselves. It is unreasonable to expect that
21        many of these employees drew a meaningful distinction between their employer, upon
          whom they are economically dependent, and the company's attorney.
22

23  *Id.* Again, Plaintiffs conclude the declarations "were taken under coercive and intimidating

24  conditions," and this "irredeemably damaged their reliability." *Id.* at 9.

25  **VI.    Discussion and Analysis**

26        **A.    Translations for Declarants**

27        As an initial matter, Plaintiffs contend declarants "were not provided with a translation of the

28  Defendant's declaration prior to signing." (Doc. 94 at 16). In support of this allegation, Plaintiffs note

Venedo Garcia reported, "The woman who was translating for the man did not read or interpret the English language document into Spanish to me, and "[n]o one translated the declaration with my signature dated August 14, 2008 from English to Spanish."  (Doc. 94 at 16) (quoting V. Garcia Decl. ¶¶ 16, 18,  Doc. 94-2 at 30-31).  Also, Plaintiffs contend: "Josefa Andrale [sic] and her co-worker also were not provided a translation of the document that they were asked to sign, until after they already signed it.  They asked for the document to be changed to accurately reflect their testimony, but it was not revised as they had requested."  *Id.* (citing Andrade Decl. ¶ 7, Doc. 94-2 at 23).  Plaintiffs report, "Agustin Hernandez also did not have the declaration read to him, nor was he told it was made under penalty of perjury."  *Id.* (citing A. Hernandez Depo. at 20:2-5, Doc. 94-2 at 13).

Significantly, Ms. Andrade did not report *she* asked for the document to be changed to reflect her testimony after it was translated, but rather that her co-worker, Gabriel Machuca, who was interviewed at the same time as Ms. Andrade, "told the woman to revise his [declaration] to reflect what he said."  (Andrade Decl. ¶ 7, Doc. 94-2 at 53).  In light of witnessing this exchange, clearly Ms. Andrade knew she could request changes to the testimony but she does not assert that she requested— or desired--changes to her declaration.  Further, she does not explain why the information provided in her new declaration varies from that contained in the declaration made in 2010.  In addition, given Agustin Hernandez' inability to remember signing his declaration, (A. Hernandez Depo. at 11:3-6, Doc. 94-2 at 6) his testimony regarding what happened *when he signed it,* lacks foundation.

On the other hand, Defendant contends translations were provided to the workers by three state-certified interpreters, including Amy Alcantara, Donette Lancaster and Monica Erdman.  (Doc. 103 at 4-5).  Each translator reports the declarations were read aloud to the declarants before they were given pens to sign the documents.  (Alacantara Decl. ¶ 2; Lancaster Decl. ¶ 2) Specifically, Ms. Lancaster reported, "[B]efore I handed [declarants] pens to sign, I read their declarations aloud to them in Spanish, and Mr. Carroll made all the corrections and other changes the workers asked for." (Lancaster Decl. ¶ 2) Likewise, Ms. Alacantar reported she read each declaration aloud to the workers prior to signing, and any changes requested were made.  (Alacantara Decl. ¶ 2).  Further, Ms. Erdman, who worked with Mr. Carroll for one day taking declarations, reported she translated the statement,

1    "reading it aloud in Spanish, before giving the worker *the choice whether to sign* the declaration."

2    (Erdman Decl. ¶ 4, emphasis added).

3           Given the statements of the translators and the affirmations under penalty of perjury that the

4    certified interpreters translated the documents from English to Spanish for the declarants, it seems

5    impractical to conclude declarations were not translated to workers on any wide-spread basis, if at all.

6    Although Mr. Garcia reports his declaration was not translated, the testimony of one individual that

7    the interpreters failed to translate his declaration is insufficient to warrant striking the declarations of

8    250 putative class members.

9           **B.      Procedures Utilized by Defendant's Counsel**

10          According to Plaintiffs, "Pre-certification communications with putative class members may

11   be misleading, coercive, or improper, particularly in an employer-employee relationship, where an

12   employee might feel a strong obligation to cooperate with her employer, or feel compelled to sign a

13   declaration in order to keep her job."  (Doc. 94 at 8) (citing *Mevorah v. Wells Fargo Home Mortg.*,

14   2005 U.S. Dist. LEXIS 28615, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005); *Kleiner v. First Nat'l*

15   *Bank of Atlanta*, 751 F.2d 1193, 1202-03 (11th Cir. 1985); *Belt v. Emcare Inc.*, 299 F.Supp.2d 664,

16   667 (E.D. Tex. 2003)).  Plaintiffs argue the "[d]eclarations obtained from an employee for use in

17   litigation without informing the employees of the existence of the class litigation or the possible

18   consequences of signing a declaration should be stricken."  (Doc. 94 at 9) (citing *Longcrier*, 595

19   F.Supp.2d at 1230).[3, 4]

20

21   [3] At the hearing, Plaintiffs' counsel indicated that the declarations constituted "releases" of the declarant's claims so that
     they should have been advised of their right to talk with an attorney before signing.  The Court rejects the characterization

22   of the declarations releases of liability.  A release implies the person actually had a justiciable claim at the signing.  In
     many pertinent respects, if not in all respects, the declarants assert that they have no such claim.  Nevertheless, despite the

23   presence of the third-party certified Spanish language interpreters, who saw no impropriety in the manner in which the
     declarations were gathered, Plaintiffs persist, seemingly, in the thinly veiled claim that Defendant fabricated the

24   declarations.
     [4] At the hearing, Plaintiffs' counsel argued that the Court should announce a procedure by which employer-defendants

25   obtain evidence from their employees.  First, potential declarants should be advised of the claims in the litigation and the
     law related to each claim.  Second, the declarants should be advised that their declaration "could be used against them,"

26   meaning that the declaration could be used to defeat the declarant's claim.  Finally, if the declarant's statement indicates
     that the declarant's evidence is favorable to the employer, the declarant should be advised that he has the right to consult an

27   attorney before signing.  Moreover, Plaintiffs contend that meetings between an employer-defendant's attorney and the
     declarant should occur on non-working hours, employees should not be paid for the time spent at the meeting[4] and

28   employees should be assured that do not have to attend the meeting or give a statement.

In *Kleiner*, the Eleventh Circuit considered whether the defendant's communications with putative class members was improper after the defendant "secretly solicit[ed] exclusion requests from potential members of a Rule 23(b)(3) plaintiff class." *Kleiner*, 751 F.2d at 1196. The court concluded the defendant's opt-out campaign violated protective and class notice orders in place, and the actions taken by the defendant were illegal. *Id.* at 1200. Because Plaintiffs do not argue Defendant violated a court order and the class has not been certified, this case is not instructive here.

In *Mevorah*, the court examined pre-certification communications by the defendant to potential class members. *Id.*, 2005 U.S. Dist. LEXIS 28615, at *10. The defendant, through counsel, contacted employees via telephone and informed them the phone call was related to the action, but mischaracterized the nature of the litigation while soliciting declarations. *Id.* at *12-14. The court noted this appeared to violate obligations of a corporation's attorney under California Rule of Professional Conduct 3-600 and observed, "The opportunity for mischief is compounded by the relationship between the employer and the employee and the coerciveness an employee may feel." *Id.* at *14-15, 17.

Likewise, when the district court struck declarations of putative class members in *Longcrier*, counsel for the defendant "engaged in conduct that would reasonably be expected to mislead and deceive the prospective plaintiffs concerning the nature, purpose and implications of their participation in the declaration process." *Longcrier*, 595 F.Supp.2d at 1228. Specifically, declarants were called into meetings with counsel, who informed them that the company "was conducting a survey," and "covertly concealed" the fact that the lawsuit was pending. *Id.* at 1227-28. The court observed:

> [T]he court file establishes a clear record of abusive communication by [the defendant] to prospective opt-in plaintiffs. Knowing that this lawsuit was pending and that it was styled as a § 216(b) opt-in proceeding, Defendant called each of its hourly workers into a one-on-one meeting during work hours with its attorney(s), creating an inherently coercive and intimidating environment for interviews and execution of paperwork concerning pay practices. Defendant's attorneys asked general questions about pay practices and placed a largely form document in front of each employee to be signed. **While that inherently coercive setting is not itself grounds for relief, Defendant's**

---

Because these proposed procedures are not supported by legal authorities and they unduly hamper the employer-defendant's right to prepare a defense and to investigate and correct problematic employment practices, the Court declines to hold that failure to follow these procedures results in coerced or inherently unreliable evidence.

**misleading statements to these potential plaintiffs about the reasons for the interview and the declaration process, and their suppression of the truth, were obviously designed to lull prospective plaintiffs into a false sense of security and to effectuate their complete cooperation with minimal resistance.** Such manipulation of unrepresented parties to secure [d]eclarations that [the defendant] now uses for the purpose of preventing the very people it mislead from being able to litigate their FLSA rights herein is improper.

*Id.* at 1229 (emphasis added). Plaintiffs contend the matter before the court is analogous because "as in *Longcrier*, the declarations . . . were obtained with similar improper and misleading means, including failing to inform employees of the existence of a collective action, and failing to explain the possible consequences of signing the declaration." (Doc. 94 at 11). Further, Plaintiffs assert: "Guimarra [sic] workers were not told about the pending lawsuit or the purpose or consequence of providing a declaration. Instead, workers were only told that they were going to be asked questions about Guimarra's [sic] work conditions, but with no explanation why – and certainly without any indication that the declarations would be used in the lawsuit in opposition of the workers' interests." *Id.* at 11.

Based upon the facts set forth by the parties and the testimony of declarants, the is little doubt the declarants knew a lawsuit was pending involving Giumarra, because each signed the declaration, after having been read its contents, affirming under penalty of perjury: "I understand that the only reason the Company has asked to talk to me is to get information about lawsuits that have been filed against the Company." However, it is not clear that the details of the lawsuit were disclosed to the declarants. For example, Agustin Hernandez testified he did not have knowledge about the lawsuit filed by workers against Giumarra for unpaid wages, or that the declaration would be used by Giumarra to oppose class certification. (Hernandez Depo., Doc. 94-2 at 5, 9-10). Similarly, Juan Ortiz Martinez testified he was unaware workers had filed a lawsuit against Giumarra, but when Mr. Martinez gave the declaration, he was told it would be used for a lawsuit. (J. Martinez Depo., Doc. 94-2 at 21).

Notably, *Longcrier* does not stand for the proposition that a party is required to provide notice of a lawsuit prior to communicating with potential class members—nor do the other cases Plaintiffs

cite. Rather, pre-certification contact by the defense to obtain declarations is "entirely permissible and appropriate." *Longcrier*, 595 F.Supp.2d at 1229. Plaintiffs have not cited any authority supporting their assertion that a defendant is required to explain the possible consequences of signing a declaration, or the purpose of the declaration. Rather, the authorities referenced by Plaintiff prohibit *misleading* declarants about the litigation or the purpose of the meetings to secure their cooperation.

Here, it does not appear the declarants were misled by representations of Defendant's counsel. Plaintiffs contend "Defendant's own attorney . . . chose to conceal from Defendant's declarants the existence of a class action lawsuit on behalf of workers and that their declarations could be used against their interest. The same attorney misrepresented the nature of the interviews leading workers to believe the interviews stemmed from a lawsuit a Giumarra supervisor had filed against the company." (Doc. 106 at 4-5) (citing Hernandez Depo., Doc. 94-2 at 4-14). However, review of the testimony does not support this assertion. For example, Agustin Hernandez testified that "*the foreman* told us that it was like a lawsuit that they were trying to make against Giumarra because of the superintendent that was very, very hard on people." (Doc. 94-2 at 10) (emphasis added). In addition, Mr. Hernandez added "*the foreman* told us, that the meeting with the attorney was because Giumarra had a lawsuit against Leroy." *Id.* (emphasis added). Thus, Mr. Hernandez' misconceptions about the details of the litigation did not come from counsel. Venedo Garcia reported he signed the declaration "because the man identified himself as a representative of Lay laboral, someone for the workers." (V. Garcia Decl. ¶ 16, Doc. 94-2 at 31).

On the other hand, the translators for the interviews support Defendant's assertion that each declarant was informed counsel represented Giumarra. (*See* Alacantra Decl. ¶3; Lancaster Decl. ¶ 3). Specifically, Amy Alacantra reported the routine employed by counsel was "consistent," and Mr. Carroll "always introduced himself as attorney, always said he was working for Giumarra, and always told the workers that a lawsuit brought by Giumarra workers with the same jobs they have was the reason for the interview." *Id.* Similarly, Donette Lancaster reported "Mr. Carroll followed a routine that hardly varied from the first interview," and he identified himself as attorney working for Giumarra." (Lancaster Decl. ¶ 3). Importantly, as noted above, each declarant admitted that

> I understand that the only reason the Company has asked to talk to me is to get information about lawsuits that have been filed against the Company. The Company has assured me that my talking to it about the lawsuits is completely voluntary, and I have not been threatened in any way or provided any benefit based on discussing the lawsuit with the Company. The Company has not asked me any questions about my Union activities or any sympathies.

(Doc. 103 at 4).

Construing the evidence before the Court, it appears Defendant's attorney met with employees of Giumarra to obtain declarations for use in Defendant's opposition to class certification. Defendant did not use a form document to obtain declarations[5], and declarants were informed the information being gathered would be used for lawsuits against Giumarra. Further, it does not appear Defendant engaged in a "misleading" communications with the putative class members, and neither *Mevorah* nor *Longcrier* are analogous to the facts currently before the Court.

Finally, Plaintiffs do not contend Defendant attempted to frighten potential class members or suggest the action could affect the employment of declarants. In *Belt*, the court examined communications made by the defendant in a representative action where the defendant unilaterally mailed a letter to absent class members before the court-approved class notice was sent. *Belt*, 299 F.Supp.2d at 666. The letter "misrepresented many issues in the action," such as equating the "wage claim with a malpractice suit" and "attempt[ed] to frighten class members from joining the action." *Id.* at 666, 668. Further, the court found the letter was coercive because the defendant "exploited [its employment] relationship by preying on fears and concerns . . . and by suggesting that this action could affect the potential class members' employment." *Id.* at 669. Here, as discussed, Defendant did not misrepresent issues in the action. Each declarant reported the declaration was given voluntarily and: "I have not been threatened in any way or provided any benefit based on discussing the lawsuit with the Company." Therefore, it does not appear declarations were obtained through a coercive or misleading procedure, and *Belt* is not instructive.

## VII.    Conclusion and Order

---

[5] On the other hand, the Court has no real difficulty with the parties using a form declaration that could be modified—as Plaintiffs have done—as long as modifications were made to reflect the specific statement of the declarant.

1      As discussed above, Plaintiffs have not shown the procedure Defendant used to gather

2 declarations was misleading or coercive.  Although Plaintiffs dispute the content of the declarations,

3 this goes to the weight to be given the evidence, rather than its admissibility.  *See Mazza v. Am. Honda*

4 *Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178

5 (1974) (describing a court's determination of class certification as based on "tentative findings, made

6 in the absence of established safeguards" and describing a class certification as "of necessity . . . not

7 accompanied by the traditional rules and procedures applicable to civil trials").  Thus, the declarations

8 of putative class members submitted in support of Defendant's opposition to class certification should

9 be admitted as evidence.

10      Based upon the foregoing, **IT IS HEREBY ORDERED**: Plaintiffs' motion to strike class

11 member declarations submitted in support of Defendant's opposition to class certification (Doc. 94) is

12 **DENIED**.

13

14

15 IT IS SO ORDERED.

16   Dated:   __July 3, 2012__               _____**/s/ Jennifer L. Thurston**

17                                UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28