1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**EASTERN DISTRICT OF CALIFORNIA**

9
10

| | |
|---|---|
| RAFAEL MUNOZ, et al., | ) Case No.: 1:09-cv-00703 - AWI - JLT |
|                Plaintiffs, | ) |
| | ) FINDINGS AND RECOMMENDATIONS |
| | ) GRANTING IN PART AND DENYING IN PART |
|      v. | ) PLAINTIFFS' MOTION FOR CLASS |
| | ) CERTIFICATION |
| GIUMARRA VINEYARDS | ) |
| CORPORATION, | ) (Doc. 42) |
| | ) |
|            Defendant. | ) ORDER DENYING AS MOOT MOTION TO |
| | ) STRIKE THE DECLARATION OF |
| | ) CHRISTOPHER PURDY |
| | ) |
| | ) (Doc. 98) |

11
12
13
14
15
16
17
18
19
20
21
22
23
24

     Plaintiffs Rafael Munoz, Santos R. Valenzuela, Trinidad Ruiz, Marta R. Rincon de Diaz, Ramon Perales, and Hugo Perez Rios seek class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  (Doc. 42).  On September 30, 2011, Defendant Giumarra Vineyards Corporation filed its opposition to the motion (Docs. 70-77), to which Plaintiffs filed a reply on December 29, 2011 (Doc. 89).

25
26
27

     The Court has read and considered the pleadings and supporting documents, and heard oral arguments by counsel on July 2, 2012.  For the reasons set forth below, the Court recommends Plaintiffs' motion for class certification be **GRANTED IN PART AND DENIED IN PART**.

28

///

1

## I.      PROCEDURAL HISTORY

On March 5, 2004, Arnaldo Lara, Mario Laveaga, Mirna Diaz, Paula Leon, and Raul Diaz, individually and acting for the interests of the general public, ("Lara Group") initiated an action in the Kern County Superior Court against Rogelio Casimiro, doing business as Golden Grain Farm Labor.[1] This action was removed to the Eastern District on December 21, 2005.

On November 9, 2005, Plaintiffs' counsel initiated an action against table grape growers based in Kern County, including Giumarra Vineyards Corporation; Marko Zaninovich, Inc.; Sunview Vineyards of California, Inc.; Castlerock; D.M. Camp & Sons; Sunview Vineyards of California; El Rancho Farms; Stevco, Inc; and FAL, Inc.[2]  (*See* Doc. 46 at 12, n.17); *see also Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008).  At the time the action was initiated, the plaintiffs were unnamed former and current employees of the defendants.  *Id.* at 1156.  The Court acknowledged the *Doe* matter was related to *Lara*, as well as several other cases initiated against grape growers.  *Id.*

On December 16, 2005, Santos R. Valenzuela, Trinidad Ruiz, Marta R. Ricon de Diaz, Ramon Cervantes Perales, and Hugo Perez Rios filed a complaint against Giumarra Vineyards, thereby initiating Case No. 1:05-cv-1600-AWI-SMS.  The plaintiffs alleged violations of the Migrant and Seasonal Agricultural Worker Protection Act, common law breach of contract, failure to pay wages and/or overtime, failure to reimburse expenses in violation of California Labor Code § 2802, failure to allow for meal and rest breaks pursuant to California Labor Code § 226.7, failure to keep accurate records, and violations of California Business and Professions Code § 17200.  (*Valenzuela*, Doc. 1 at 1-2).  Plaintiffs filed a notice of related action in *Doe* and moved to consolidate the actions.  (*Doe*, Docs. 23-25).  The Court denied the motion to consolidate on January 26, 2006.  (*Doe*, Doc. 57).

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).  The record of a state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records.  *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), *aff'd* 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236m 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980).  Therefore, judicial notice is taken of the original Complaint and the Second Amended Complaint in *Lara v. Casimiro*, Case No. S-1500-CV-252445-SPC.

[2] For the same reasons set forth in n.1, the Court may take judicial notice of its own records.  Therefore, judicial notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, Case No. 1:05-cv-01417-AWI-SMS, and *Valenzuela v. Giumarra Vineyards Corp.*, Case No. 1:05-cv-01600-AWI-SMS.

Defendants in *Doe* action, including Giumarra Vineyards, filed motions to dismiss the operative complaint.  The Court granted the motions to dismiss and to sever the action on March 31, 2008, and the plaintiffs were ordered to file amended pleadings against each defendant.  (*Doe*, Doc. 168).  On May 29, 2008, Rafael Munoz, Lidia Cruz, and Yanet Hernandez were identified as plaintiffs in the Third Amended Complaint against Giumarra Vineyards.  (*Doe*, Doc. 172).  On March 31, 2009, the Court ordered Plaintiffs to re-file their suit in a new action within twenty days to finalize the severance.  (*Doe*, Doc. 238).

On April 20, 2009, plaintiffs Rafael Munoz, Lidia Cruz, and Yanet Hernandez filed their complaint against Giumarra Vineyards.  (Doc. 1).  The plaintiffs filed a notice of related cases, including *Valenzuela*.  (Doc. 6).  The Court directed the parties to file briefs regarding consolidation (Doc. 8), and on August 20, 2009, the Court ordered the cases be consolidated.  (Doc. 26).

In compliance with the Court's order consolidating *Valenzuela* with *Munoz*, Plaintiffs filed an Amended Complaint against Giumarra on September 22, 2009.  (Doc. 28).  Plaintiffs alleged the following: violation of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, failure to pay wages, failure to pay reporting time wages, failure to reimburse required expenses, failure to provide meal and rest periods, failure to pay wages of terminated or resigned employees, knowing and intentional failure to comply with itemized employee wage statement provisions and record keeping requirements, breach of contract, and violation of unfair competition law.  *Id.* at 1-2.  Plaintiffs brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California."  *Id.* at 9.  On April 29, 2011, the parties filed a stipulation to amend the operative complaint, thereby "withdrawing Lidia Cruz and Yanet Hernandez as named plaintiffs and class representatives."  (Doc. 36).

Plaintiffs filed a motion for class certification on July 22, 2011.  (Docs. 42-63).  In support of the motion, Plaintiffs submitted 77 declarations of putative class members.  (Docs. 54-56).  Defendant filed its opposition to the motion for class certification on September 30, 2011.  (Doc. 77).  In addition, Defendant submitted 252 declarations of its employees, including putative class members, in support of its opposition.  (Docs. 70-76).

On November 18, 2011, the parties requested a stay in the action pending the resolution of *Brinker Restaurant Corp. v. Sup. Ct.*, 165 Cal. App. 4th 25 (2008). The parties noted, "At issue in *Brinker* is the standard for determining an employer's obligations with respect to California's rest and meal break laws." (Doc. 79 at 2). Because the amended complaint raised issues pending resolution in *Brinker*, the Court granted the parties' request to stay the action. (Doc. 80). However, the Court ordered Plaintiffs to file their reply brief prior to the entry of the stay. (*See* Doc. 69 at 2; Doc. 80 at 4). On December 7, 2011, the parties contacted the Court regarding a discovery dispute, and following a telephonic conference with the parties, the Court found both parties failed to comply with Rule 26. (Doc. 83). Therefore, the Court granted Plaintiffs an extension of time to file a reply to Defendant's opposition, which was filed on December 29, 2011. (Doc. 89).

On April 12, 2012, the California Supreme Court issued its decision in *Brinker*, and the parties submitted a joint status report on April 23, 2012. (Doc. 92). The parties agreed that the stay should be lifted and requested permission to file briefs regarding the decision in *Brinker* and its impact upon Plaintiffs' motion for class certification. *Id.* at 2. Accordingly, the Court lifted the stay and directed the parties to file supplemental briefs regarding *Brinker* (Doc. 93), which the parties filed on May 25, 2012. (Docs. 96-97).

Plaintiffs filed their motion to strike the class declarations filed with Defendant's opposition on May 16, 2012. (Doc. 94). In addition, Defendant filed a motion to strike the declaration of Christopher Purdy submitted with Plaintiffs' supplemental brief. (Doc. 98). The Court heard oral argument regarding the motions to strike with the motion for class certification on July 2, 2012.[3]

## II.   LEGAL STANDARDS FOR CLASS CERTIFICATION

Class certification is governed by the Federal Rules of Civil Procedure, which provide: "One or more members of a class may sue or be sued as representative parties on behalf of all." Fed. R. Civ. P. 23(a). A class action is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

---

[3] The Court rules on the motions to strike in a separate order issued concurrently with these Findings and Recommendations.

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Generally, these prerequisites are referred to as numerosity, commonality, typicality, and adequacy of representation, and "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 155-56 (1982) (citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980)). When an action satisfies the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b).  *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

### A.      Rule 23(a) Prerequisites

#### 1.      Numerosity

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This requires the Court to consider "specific facts of each case and imposes no absolute limitations."  *EEOC*, 446 U.S. at 330.  Although there is no specific numerical threshold, joining more than one hundred plaintiffs is impracticable.  *See Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in which courts certified classes with fewer than 100 members").

#### 2.      Commonality

Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "However, it is insufficient to merely allege any common question."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).  Commonality must be shown by a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores*, *Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

///

5

### 3.    Typicality

The typicality requirement demands the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim or defense is not required to be identical, but rather "reasonably co-extensive" with those of the absent class members. *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (typicality is satisfied when named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).

### 4.    Fair and Adequate Representation

Absentee class members must be adequately represented for judgment to be binding upon them. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940). Accordingly, this prerequisite is satisfied if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

## B.    Rule 23(b) Certification

 If an action meets the prerequisites of Rule 23(a), the party seeking class certification must show the action is appropriate under Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Under Rule 23(b)(1), a class is maintainable if there is a risk of inconsistent or varying adjudications from "prosecuting separate actions by or against individual class members." *Id*. In addition, a class may be certified if "adjudications with respect to individual class members . . . would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

A class is maintainable under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

6

1   corresponding declaratory relief is appropriate responding the class as a whole." *Id.* The Supreme

2   Court explained, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would

3   provide relief to each member of the class. . . [I]t does not authorize class certification when each

4   member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores*, 131 S.

5   Ct. at 2557.

6          Class certification under Rule 23(b)(3) is an "adventuresome innovation," and allows for class

7   certification in cases "in which class-action treatment is not clearly called for as it is in Rule 23(b)(1)

8   and (b)(2) situations." *Amchem Prods.*, 521 U.S. at 615.  Thus, a class is maintainable under Rule

9   23(b)(3) where "questions of law or fact common to the members of the class predominate over any

10  questions affecting only individual members," and where "a class action is superior to other available

11  methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Where the

12  issues of a case "require the separate adjudication of each class member's individual claim or defense,

13  a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

14  1189 (9th Cir. 2001).  Consequently, the Court must examine "whether the proposed classes are

15  sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.

16         **C.      Burden of Proof and Evidentiary Submissions**

17         Parties seeking class certification bear the burden of demonstrating that each element of Rule

18  23 is satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores*,

19  131 S. Ct. at 2551; *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  The

20  Court must conduct a "rigorous analysis," which may require the Court "to probe behind the pleadings

21  before coming to rest on the certification question." *Wal-Mart Stores*, 131 S. Ct. at 2551 (quoting

22  *Falcon*, 457 U.S. at 160-61).  The Court has an affirmative duty to consider the merits of an action "to

23  the extent that they overlap with class certification issues." *Ellis*, 675 F.3d at 981 ("a district court

24  *must* consider the merits if they overlap with the Rule 23(a) requirements") (citing *Wal-Mart Stores*,

25  131 S. Ct. at 2551-52).  As a result, the Court may consider material evidence to determine Rule 23

26  requirements are satisfied. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

27  ///

28  ///

7

### III.       PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs assert they and proposed class members "are seasonal agricultural workers in the grape industry who have performed pre-harvest and harvest work for Giumarra from November 5, 2001 to the present."  (Doc. 46 at 13).  Plaintiffs contend employees who were paid on a piece rate basis were not provided with adequate compensation.  (Doc 46 at 13).  Plaintiffs contend, "employees paid on a pure or modified piece rate are not properly compensated for overtime, as the piece/bonus portion of their pay is not taken into account in calculating overtime."  *Id.* at 20.  Also, Plaintiffs argue, "since employees are paid for units produced, unless they are separately compensated at an hourly rate of no less than the minimum wage for the time they spend taking rest breaks, any rest break they take is unpaid or underpaid."  *Id.* at 25 (citing *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 316-18 (2005)).

In addition, Plaintiffs assert Giumarra required workers to perform off-the-clock, uncompensated work before and after their shifts.  (Doc. 46 at 10, 14-17).  Plaintiffs contend harvest workers were required "to arrive before their shift to set-up materials and equipment and participate in mandatory work meetings called 'school' or 'escuela.'"  *Id.* at 10.  Daily preparation tasks took "between 15 and 30 minutes or longer" and included "setting up tables and arranging trays, pampers (box liners), bags, stickers and boxes."  *Id.* at 14-15.  Likewise, Plaintiffs allege pre-harvest workers were required to report to work "to attend school before the fixed start time."  *Id.* at 19.  Plaintiffs contend harvest workers performed uncompensated post-shift clean-up for "five to twenty minutes" in the field, which was "followed by washing of trays (or 'bandejas') at home."  *Id.* at 10, 16.

Plaintiffs allege Giumarra fieldworkers were "required to buy their own tools, including picking clippers/scissors, pruning shears, clipper sheaths, gloves, goggles, and various other items that are necessary to perform harvest work."  (Doc. 46 at 18).  Plaintiffs assert Giumarra "provided limited amounts of some of these tools, such as picking clippers or gloves," but contend "these items regularly break or wear out and are not replaced by Defendant, requiring Class members to purchase additional tools every season."  *Id.*

Finally, Plaintiffs contend Defendant utilized unlawful meal break policies.  According to Plaintiffs, "Prior to 2006, Giumarra scheduled all fieldworker meal breaks for 12:00 p.m. regardless of

8

whether such a break complied with California's requirement that employees be provided a meal within 5 hours of starting their shift." (Doc. 46 at 20).  In addition, Plaintiffs assert Giumarra required employees in their cold-storage department to sign an on-duty meal break agreement, which Plaintiffs argue was invalid.  *Id.* at 11, 27.

## A.    Proposed Classes

Based upon these factual allegations, Plaintiffs move to certify classes of table grape workers from Giumarra Vineyards, including "all employees whose claims accrued during the three-year limitations period for filing statutory claims under California law." (Doc. 46 at 7, n.1).  Specifically, Plaintiffs identified the following classes:

> The Unpaid Rest Break Class:  All fieldworkers employed by Giumarra who were paid a pure piece rate at any time between 11/9/2001 to the present.

> The Late Meal Break Class:  All fieldworkers employed by Giumarra from 11/9/2001 to the present.

> The Piece-Rate Overtime Class:  All fieldworkers employed by Giumarra who were paid a piece-rate from 11/9/2001 to the present.

> The Off-the-Clock Class:  All fieldworkers employed by Giumarra from 11/9/2001 to the present.

> The Tool Class:  All fieldworkers employed by Giumarra from 11/9/2001 to the present.

> The On-Duty Meal Break Class:  All fieldworkers employed by Giumarra from 11/9/2001 to the present to work in cold storage.

(Doc. 46 at 7-11).  Plaintiffs contend the requirements of Rule 23(a) and (b) are satisfied for each class of fieldworkers.  *Id.* at 22.

## B.    Rule 23(a) Requirements

### 1.    Numerosity

Plaintiffs assert an "[a]nalysis of Giumarra'[s] records evidences that there are nearly 10,698 potential class members." (Doc. 46 at 22).  Also, Plaintiffs assert that each of the classes proposed "contains hundreds or thousands of Class Members, but mostly the classes are in the thousands." *Id.* at 23.  Thus, Plaintiffs assert the numerosity requirement is satisfied because joinder of all class members is impracticable.  *Id.*

9

2.     Commonality

According to Plaintiffs, "The common-questions requirement of Rule 23(a)(2) is readily satisfied in this case, as there are common questions of both fact and law." (Doc. 46 at 24).  As examples, Plaintiffs identify the following common questions:

> (1) whether the time employees spent performing required or knowingly permitted pre and post-shift activities is compensable; (2) whether Giumarra's practice of not recording pre and post-shift work violates AWPA; [(3)] whether Giumarra bears the burden of proving that Class members did not perform pre and post-shift work because Giumarra failed to record such time; [(4)] whether Giumarra's piece-rate policy failed to provide properly paid rest breaks; [(5)] whether Giumarra's piece rate policy failed to provide piece-rate overtime pay; and [(6)] whether employees should be reimbursed for Giumarra's failure to provide required tools that Class members were forced to purchase because they were necessary for the job.

(Doc. 46 at 24).  Plaintiffs note this Court determined similar questions satisfied the commonality requirement in *Arrendondo v. Delano Farms Co.*, 2011 U.S. Dist. LEXIS 44134 (E.D. Cal. 2011), and such questions "have been found . . . common and predominating in the context of other AWPA class actions."  *Id.* at 24.

3.     Typicality

Plaintiffs contend the typicality requirement is satisfied because "Plaintiffs and the putative class members were all subject to the same practices of the Defendant."  (Doc. 46 at 32).  For example, Plaintiffs assert their claims for pre-shift work are typical of the class members because "Plaintiffs and the proposed class were required to arrive at the worksite before the fixed start-time to perform preparation tasks and/or attend school," which was not recorded by foremen or compensated by Defendant.  *Id.*  Likewise, Plaintiffs assert their "claims for failure to reimburse for tools are typical" because "Guimarra has a uniform policy of not reimbursing employees for tools that are necessary for the completion of essential job duties."  *Id.* at 33.  Further, Plaintiffs contend the meal breaks policy "applied to all fieldworkers, including class representatives."  *Id.*

4.     Adequacy of Representation

Plaintiffs contend they "have each declared that they wish to serve as class representatives and have no conflicts with the putative class members concerning the issues which are the subject of the

litigation." (Doc. 46 at 34). Plaintiffs assert they "cooperatively participated in the litigation, answering discovery and appearing for deposition." *Id.* Plaintiffs argue they will "vigorously" pursue damages for the class members, and "Giumarra [has] no basis for asserting any unique defenses against the named Plaintiffs that Defendant could not assert against any other class member." *Id.*

In addition, Plaintiffs argue, "Counsel representing Plaintiffs are competent and experienced in litigating large employment Class Actions, and in litigating Class Actions involving agricultural employees." (Doc. 46 at 34). Plaintiffs allege the proposed counsel "have experience in prosecuting wage and hour class actions, employment litigation generally, and class actions specifically dealing with the identical issues presented here." *Id.* Therefore, Plaintiffs contend the class representatives and proposed class counsel will adequately represent the classes. *Id.*

### C.     Rule 23(b) Requirements

Plaintiffs contend this class action meets the requirements of Rule 23(b)(2) and Rule 23(b)(3). (Doc. 46 at 35). First, Plaintiffs assert certification under Rule 23(b)(2) is proper because they requested injunctive relief in the complaint, and Plaintiffs "will request that Defendant be required to pay its employees in compliance with California Labor Code and Wage Orders." *Id.* at 36. Second, Plaintiffs argue certification under Rule 23(b)(3) is proper because three common questions predominate over individual questions in this action: "(1) whether Giumarra failed to properly compensate Class members for and record all hours worked; (2) whether Giumarra failed to reimburse employees for necessary tools; and (3) whether Piece-Rate Class members were paid properly for their working overtime and rest periods." *Id.* at 37. In addition, Plaintiffs class members are seasonal agricultural workers who would not likely have an interest in pursuing their own action given "their limited economic resources, lack of English language proficiency, and the severe difficulty of finding experienced counsel in rural areas." *Id.* at 38. Therefore Plaintiffs conclude class treatment is superior to other available methods of litigation. *Id.* at 38-39.

### IV.     DEFENDANT'S OPPOSITION TO CLASS CERTIFICATION

Defendant opposes certification for each of the proposed classes. According to Defendant, "Plaintiffs have no evidence sufficient to prove any violations on a class-wide basis as to any of their proposed classes. Individual issues clearly predominate over any class issues." (Doc. 77 at 4).

Further, Defendant asserts two of the proposed classes "rest upon theories that were not advanced in the consolidated class action complaint," and plaintiffs lack standing to bring certain claims. *Id.* Defendant concludes: "Plaintiffs cannot satisfy the requirements for class certification." *Id.* at 14.

### A.     Unpaid Rest Break

According to Defendant, "This claim is not contained in plaintiffs' complaint and certification should be denied on this basis alone." (Doc. 77 at 22) (citing *Brown v. American Airlines, Inc.*, 2011 U.S. Dist. LEXIS 99495, at *36 (C.D. Cal. Aug. 29, 2011). Even if the claim was properly pleaded, Defendant asserts Plaintiffs have not demonstrated requirements of Rule 23(a) are satisfied, because they "have not identified one piece rate worker who took a rest break and was not paid as they now claim he or she should have been," and there is no commonality of the claims. *Id.* at 25, 27. In addition, Defendant asserts Rule 23(b)(3) requirements cannot be satisfied because "[t]here is no written record as to whether rest periods are taken and, if so, when they were taken and for what length of time." *Id.* at 28. Therefore, Defendant contends individual inquiries would be required, and class certification is not a superior method of adjudication. *Id.*

### B.     Late Meal Class

Defendant contends this class fails to satisfy the commonality and typicality requirements of Rule 23(a). (Doc. 77 at 30). Defendant argues the company practice of scheduling meal breaks at noon fails to establish the commonality. *Id.* (citing *In re Wells Fargo Home Mortg.*, 571 F.3d 953, 959 (9th Cir. 2009). According to Defendant, the practice "was applied by superintendents and foremen on a flexible basis," and the time meal breaks occurred was "determined by when the 'lunch trucks' arrive." *Id.* at 31. Further, Defendant notes there is no evidence as to the time employees took a meal break, and "an independent factual inquiry would be needed with respect to how individual foremen scheduled employees' meal breaks every day and at each location." *Id.* at 35-36. As a result, Defendant concludes the class is not certifiable under Rule 23(b).

### C.     Off-the-Clock Class

Defendant contends there no records that "demonstrate the occurrence or extent of any off-the-clock-work." (Doc. 77 at 40). Rather, Defendant notes "[t]he sole evidence offered to support this claim [are] the statements of 77 workers selected by plaintiffs on a non-random basis." *Id.* In support

of its opposition to class certification, Defendant presents declarations contradicting the claims of

Plaintiffs' declarants.  *Id.* at 41.  Further, Defendant contends the evidence before the Court

demonstrates there is no commonality for the following reasons:

> a.     There is no evidence of any Company-wide illegal policies or Labor Code violations;
>
> b.     There are no written records of any off-the-clock work;
>
> c.     The only evidence supporting off-the-clock claims is the undocumented and wildly inconsistent testimony of a small group of putative class members representing less than one percent of the purported class; and
>
> d.     Their testimony is contradicted by the properly representative testimony of five times as many class members.

*Id.* at 43.  Given "[t]he substantial testimonial evidence" and "[c]onflicting anecdotal evidence,"

Defendant asserts Plaintiffs cannot satisfy the commonality and typicality requirements of Rule 23(a).

*Id.* at 44, 47.  However, even if the Court found Plaintiffs satisfied Rule 23(a), Defendant asserts

"individualized inquiries would be necessary to determine in each putative class member's case

whether the worker did any off-the-clock labor, and if so, when, how much, and why."  *Id.* at 41.

These individualized inquiries would defeat a finding that the class satisfies the Rule 23(b)(3)

requirement of predominance.  *Id.* at 47-48.

### D.  Piece-Rate Overtime Class

According to Defendant, this class cannot be certified because Plaintiffs have not demonstrated

the numerosity, commonality, or typicality requirements of Rule 23(a) are satisfied.  (Doc. 77 at 49-

50).  Defendant observes that no plaintiff "make[s] any claim for unpaid overtime," and only five of

the putative class members assert they worked overtime without compensation.  *Id.* at 49.  Thus,

Defendant argues Plaintiffs "clearly failed to satisfy the numerosity requirement."  *Id.* at 50.  Because

few employees who claimed to work uncompensated overtime, Defendant asserts the "plaintiffs

cannot satisfy the commonality or typicality requirements."  *Id.*

With regard to Rule 23(b)(3) requirements, Defendant contends individual inquiries would be

required to determine "whether individual piece-rate employees worked overtime, when and how

much." (Doc. 77 at 51).  Also, Defendant contends a class action would not be superior because "there is no way under plaintiffs' theory to determine how much, if anything is owed under [their] theory to any of the piece-rate employees." *Id.* (emphasis omitted).

### E.    Tool Class

Defendant asserts "Giumarra has spent over $300,000 during the class period on tools for employees," and the company did not have a "general policy or practice . . . of not providing required tools." (Doc. 77 at 52).  Defendant asserts its declarants "uniformly reject the claim that employees were required to purchase clippers or to reimburse the company for broken tools." *Id.*  Therefore, Defendant argues the commonality and typically requirements cannot be met.  *Id.*

Also, Defendant argues that "whether an employer was required to reimburse employees for necessary expenses involves an individualized inquiry."  (Doc. 77 at 52-53) (citing *Drake v. Morgan Stanley & Co., Inc.*, 2010 U.S. Dist. LEXIS 472627, at *23 (C.D. Cal. Apr. 30, 2010)).  Defendant asserts: "The Ninth Circuit has denied certifying claims under Labor Code § 2802 because the difficulty of establishing damages defeats predominance." *Id.* (citing *Harris v. Vector Marketing Corp.*, 753 F. Supp. 2d 996 (N.D. Cal. 2010)).  Because of the necessity of expenses would be an individualized inquiry, Defendant contends the tool class would be unmanageable.  *Id.* at 54.

### F.    On-Duty Meal Break Class

According to Defendant, "The claim that certain employees (those who worked in the cold storage areas) should have had scheduled meal breaks, instead of on-duty meals, also appears nowhere in the complaint, and applies only to a small number of employees, none of whom are among the named plaintiffs." (Doc. 77 at 4).  Defendant asserts the on-duty meal class cannot be certified because Plaintiffs lack standing.  *Id.* at 55.

### G.    Rule 23(b) Requirements

Defendant contends certification under Rule 23(b)(2) is inappropriate because Plaintiffs seek monetary relief that is not incidental to the claims for injunctive relief.  (Doc. 77 at 56).  Defendant argues that "injunctive relief would not provide relief to the members of the proposed putative classes who no longer work for Giumarra," and the "former employees cannot properly be a part of injunctive relief class." *Id.* (citing *Wal-mart Stores*, 131 S. Ct. at 2549).  In addition, given the individual issues

14

1   and questions identified above, Defendant argues the classes cannot be certified pursuant to Rule

2   23(b)(3).  *Id.* at 57.

3   **V.      PLAINTIFFS' REPLY**

4           Plaintiffs respond the proposed classes are suitable for class certification and satisfy the

5   requirements of Rule 23(a), as well as Rule 23(b)(2) and Rule 23(b)(3).  (Doc. 89 at 3).  According to

6   Plaintiffs, the commonality analysis set forth by the Supreme Court in *Wal-mart Stores v. Dukes* "does

7   not alter the certification analysis of the proposed classes before this Court."  *Id.* Plaintiffs contend:

8   "[T]his is not a case where there is an absence of announced policies such that significant proof of a

9   generalized practice is required, or where the answer to common questions require individualized

10  reasons.  Here the policies have been expressed by Giumarra and its managers and confirmed by

11  Giumarra's state and federally mandated time and payroll records."  *Id.* at 9.  Therefore, Plaintiffs

12  argue that "[c]ertification is clearly warranted."  *Id.*

13          **A.      Unpaid Rest Break Class**

14          According to Plaintiffs, the claim supporting this class "is well-grounded in law and set forth in

15  the complaint."  (Doc. 89 at 19).  Plaintiffs re-assert their argument that "employees are paid for units

16  produced and nothing more."  *Id.*  Plaintiffs contend Defendant fails to pay piece-rate employees for

17  rest breaks, "and the piece-rate policy thus fails to authorize and permit paid rest breaks."  *Id.* at 19-20.

18  Again, Plaintiffs assert the class satisfies the Rule 23(a) requirements, and that declarations and

19  deposition testimony demonstrate the numerosity requirement is satisfied.  *Id.* at 22.  In addition,

20  Plaintiffs assert common questions for the class are "whether Defendant maintained a policy that

21  failed to compensate piece-rate workers for their rest break as hours worked, and ultimately whether

22  this practice is contrary to law."  *Id.* at 24.

23          **B.      Late Meal Class**

24          Plaintiffs assert their claim that Defendant failed to provide a timely meal period is supported

25  by Labor Code § 512, which states: "An employer may not employ an employee for a work period of

26  more than five hours per day without providing the employee with a meal period."  (Doc. 89 at 9)

27  (quoting Cal. Labor Code § 512(a)).  Plaintiffs contend the numerosity requirement is satisfied,

28  because "the policy of scheduling the meal period at noon regardless of the start time applied to all

15

field workers from the start of the class period to approximately 2006," and "at the peak of the harvest there are approximately 3,000 workers." *Id.* at 11.  Plaintiffs argue there are several questions capable of class-wide resolution, and common evidence that are demonstrated by Giumarra's sign-in sheets, admissions from Defendant's person most knowledgeable, deposition testimony, and putative class member declarations. *Id.* at 12-13.

### C.   Off-the-Clock Class

 Based upon their contention that Defendant had a policy of requiring employees to arrive at work early and stay after work without compensation, Plaintiffs assert the class is comprised of "the total number of field laborers who have worked for the Defendant during the class period." (Doc. 89 at 28).  Therefore, Plaintiffs contend the class satisfies the numerosity, commonality, and typicality requirements. *Id.* at 28-29.

### D.   Piece-Rate Overtime Class

Plaintiffs argue Defendant does not adjust piece-rate pay for overtime "as required by law." (Doc. 89 at 24).  Plaintiffs assert the numerosity requirement is satisfied because "time cards show whether the members of crews were earning pure or combined piece rate, and the payroll shows whether the piece rate was adjusted for overtime." *Id.* at 25.  Also, Plaintiffs argue the "leading common question" is "whether Giumarra's policy of paying piece rate without adjusting it to account for overtime hours worked violates California laws and AWPA." *Id.*  Because this was a "company-wide policy," Plaintiffs conclude the commonality and typicality requirements of Rule 23(a) are satisfied. *Id.*

### E.   Tool Class

Again, Plaintiffs assert the tool class is certifiable because class members were required to purchase tools every season. (Doc. 89 at 31).  Plaintiffs contend the class is "comprised of all field workers employed by Giumarra from 11/9/2001 to the present," and as a result the numerosity requirement is satisfied. *Id.* at 28.  Plaintiffs contend common proof of such a policy exists given declarations of putative class members and "Defendant's failure to evidence tool receipts prior to 2006." *Id.* at 31.

///

16

### F.      On-Duty Meal Break Class

According to Plaintiffs, Defendant reported the number of employees who worked in cold storage ranged from 100-500, and this satisfies the numerosity requirement.  (Doc. 89 at 26) (citing Doc. 44, Giumarra Depo. at 131:17- 132:4).  Plaintiffs acknowledge the proposed class representatives did not work in cold storage, but assert "this does not mean they cannot represent the class." *Id.*

## VI.     SUPPLEMENTAL BRIEFING

On April 12, 2012, the California Supreme Court issued its decision in *Brinker* holding: An employer satisfies its obligation to provide a meal period to its employees "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Restaurant Corp.*, 53 Cal. 4th at 1040.   The court explained an employer "is not obligated to police meals and ensure no work thereafter is performed." *Id.*  With regard to timing, the court found the first meal period for employees "must start after no more than five hours" of work. *Id.* at 1041.

### A.      Plaintiffs' Supplemental Brief[4]

According to Plaintiffs, *Brinker* "bolsters [their] bid for class certification."  (Doc. 97 at 3). Plaintiffs contend that "Giumarra violated the law because it relieved employees of all duty for meal breaks after employees had worked more than 5 hours." *Id.*  Therefore, Plaintiffs contend the Court should certify their meal break claims, because Defendant admits the company policy, until 2006, "was to schedule meal breaks at noon regardless of the start time, which includes shifts that started at 6:30 a.m. and earlier." *Id.* at 3-4.  Further, Plaintiffs assert *Brinker* supports their contention that piece-rate pay fails to provide compensation for rest breaks because it "affirms an interpretation of the wage orders affording maximum protection to workers." *Id.* at 6.

Also, Plaintiffs contend *Brinker* "rejected the employer's argument that rest and meal break

---

[4] Plaintiffs submitted the declaration of Christopher Purdy with their reply brief.  The information therein does not relate to *Brinker* and its effect upon Plaintiffs' motion for class certification.  Significantly, the parties were instructed to file briefs "discussing **only** the decision in *Brinker* and its effect upon Plaintiffs' motion for class certification."  (Doc. 93 at 2) (emphasis in original).  Therefore, the declaration of Christopher Purdy is **DISREGARDED**, and Defendant's motion to strike the declaration (Doc. 98) is **DENIED AS MOOT**.

On the other hand, the Court is at a loss how Purdy's statements about what *he intends to do* in his planned data analysis efforts, has any impact here.

classes were inherently ill-suited to class treatment because the question as to 'why' the employee missed a break is highly individualized." (Doc. 97 at 7). Plaintiffs argue the court found the theory that "'a uniform policy, measured against wage order requirements, allegedly violates the law—is eminently suitable for class treatment.'" *Id.* (quoting *Brinker*, 53 Cal. 4th at 1033). T, Plaintiffs conclude certification is appropriate for the unpaid rest break and the late meal classes. *Id.* at 7-8.

### B.   Defendant's Supplemental Brief[5]

Defendant contends "*Brinker* makes certification of a class for missed meal breaks more difficult." (Doc. 96 at 5). Defendant acknowledges the court ruled "a meal period must begin no later than the end of the first five hours of work." *Id.* However, Defendant contends Plaintiffs' claim for late meal periods is "not amenable to class treatment . . . because plaintiffs have failed to show any consistent, company-wide policy of providing 'late' meal periods, and because the evidence regarding late meal periods is inconsistent." *Id.* Further, Defendant argues an off-the-clock class should not be certified because in *Brinker,* the California Supreme Court found "the plaintiffs supplied no evidence of common policies or means of proof," which Defendant asserts is similar to the action now pending before the Court. *Id.* at 15.

## VII.   EVIDENTIARY OBJECTIONS

In conjunction with a Rule 23 class certification motion, the Court may consider all material evidence submitted by the parties to determine Rule 23 requirements are satisfied. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Accordingly, declarations may be used to support or oppose a motion where presented in writing, subscribed as true under penalty of perjury, and dated. 28 U.S.C. § 1746. Plaintiffs object to the admission of several declarations on the basis that they are unsigned, missing pages, or translator statements are not included.[6] (Doc. 88 at 4).

Plaintiffs note the declaration of Fernando Garcia lacked a signature page. However, upon being made aware of this defect, Defendant re-submitted the declaration with the last page, including

---

[5] Much of Defendant's supplemental brief discusses the merits of Plaintiffs' claims for late meal breaks, which was beyond the scope permitted by the Court's order. Only argument related to *Brinker* directly is summarized, although the Court has read and considered the arguments of counsel which were properly raised in Defendant's Opposition.

[6] On this same basis, the declarations submitted by Plaintiffs from Lidia Cruz, Carmen Hernandez, Eugenio Hernandez and Silvia Hernandez are **STRICKEN** because they are not properly dated and the Court can determine only the year they were signed. 28 U.S.C. § 1746

18

the signature. (Doc. 99 at 5). Therefore, this objection is **OVERRULED**. However, Agustin Hinojsa "refused to sign" the declaration offered in 2008, as noted on the document, although he signed a declaration in 2010. Therefore Mr. Hinojoa's declaration from 2008 (Doc. 72-8 at 17-20) is **STRICKEN**.

Plaintiffs object to admission of the declaration of Maria L. Vargas Lua because the "name and declaration signature line do not match." (Doc. 88 at 4). The name "Maria L. Vargas Lua" appears at the beginning of the declaration, and on the bottom of each page although the name of another declarant (Miguel A. Baltazar- Godoy) appears below the signature line. Thus, this appears to be a typographical error. Because the declaration is subscribed as true by Maria Lua, and dated August 8, 2008, it satisfies the requirements of 28 U.S.C. § 1746. Therefore, Plaintiffs' objection regarding the admissibility of this declaration is **OVERRULED**.

In addition, Plaintiffs identify several declarations which were missing pages, including: Francisca Madera, Gabriel Martinez, and Esmeralda Pacheco. Significantly, however, this does not affect the fact the declarants affirmed, under penalty of perjury, that the information provided – regardless of missing pages – is true. In addition, the lack of evidence does not advance the claims of Defendant, or weigh against the claims of Plaintiffs.[7] Therefore, Plaintiffs' objections to these declarations are **OVERRULED**.

According to Plaintiffs, the declarations of Karla Ochoa, Efren Rivas, Maria Robles, and Victor Vela do not include translator statements, and each declaration lacks information that the "declarant reads and understands English." (Doc. 88 at 4). There is nothing to suggest these individuals are not fluent in the language. Though the declaration is silent as to Ms. Robles, Ms. Ochoa, Efren Rivas and Mr. Vela each attest, in the first paragraph of their declarations, that they are fluent in English. Therefore, the objections to these declarations are **OVERRULED**.

Finally, the declaration of Amparo Narvaez was identified as evidence by Defendant, but was not included with its opposition. (Doc. 88 at 4). Although Defendant attempted to cure this oversight by filing the declaration on June 4, 2012 (Doc. 99), this did not afford Plaintiffs an opportunity to

---

[7] Defendant filed the missing pages on June 4, 2012. However, given that this was well after the filing of the reply brief, the information included therein was not considered by the Court in its analysis.

19

1  inspect the evidence prior to the filing of their reply brief on December 29, 2011.  (Doc. 89).

2  Accordingly, the declaration of Amparo Narvaez (Doc. 99 at 17-19) is **STRICKEN**.

3  　　　　Significantly, "[o]n a motion for class certification, the court may consider evidence that may

4  not be admissible at trial."  *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) (citing

5  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (describing a court's determination of class

6  certification as based on "tentative findings, made in the absence of established safeguards" and

7  describing a class certification as "of necessity . . . not accompanied by the traditional rules and

8  procedures applicable to civil trials"); *see also Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 337

9  (N.D. Cal. 2010) ("On a motion for class certification, the Court may consider evidence that may not

10  be admissible at trial");*Williams v. Veolia Transp. Servs.*, 2009 U.S. Dist. LEXIS 123600 at *7 (C.D.

11  Cal. Mar. 20, 2009) ("Unlike evidence presented in a summary judgment motion, evidence presented

12  at the class certification stage need not be admissible at trial.").  Regardless, the Court has considered

13  only the evidence deemed admissible in its analysis.[8]

14  **VIII.   DISCUSSION AND ANALYSIS**

15  　　　**A.     Unpaid Rest Break Class**

16  　　　　According to Plaintiffs, Giumarra's piece-rate policy "results in failure to provide *paid* rest

17  breaks for pure piece-rate work."  (Doc. 46 at 7).  Plaintiffs argue: "Because California law requires

18  that workers receive paid rest breaks, a policy that does not provide compensation for non piece-rate

19  time—such as paid rest breaks or other uncompensated work time—runs afoul of the rest break laws."

20  *Id.* (citing Industrial Welfare Commission Wage Order 14, 8 Cal. Code Regs. § 11140).  Specifically,

21  Wage Order 14 provides:

22  　　　　Every employer shall authorize and permit all employees to take rest periods, which
23  　　　　insofar as practicable shall be in the middle of each work period.  The authorized rest
24  　　　　period time shall be based on the total hours worked daily at the rate of ten (10) minutes
25  　　　　net rest time per four (4) hours or major fraction thereof.  However, a rest period need
　　　　　　not be authorized for employees whose total daily work time is less than three and one-

26  ───────────────
　　　　　[8] To the extent that the evidentiary material submitted by either party is speculative or represents a legal
27  conclusion, as a matter of course, the Court will not factor that material into the analysis.  *See Burch v. Regents of the
University of California*, 433 F. Supp.2d 1110, 1119 (E.D. Cal. 2006) ("[S]tatements in declarations based on speculation
or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered . . .
28  Objections on any of these grounds are simply superfluous in this context.") (citation omitted, emphasis in original).

half (3 1/2) hours.  Authorized rest period time shall be counted, as hours worked for which there shall be no deduction from wages.

8 Cal. Code Regs. § 11140.  Plaintiffs contend the payroll data confirms "that rest breaks are not paid" and "premium rest-break wages are not provided for unpaid breaks." *Id.* at 8. Therefore, Plaintiffs seek to certify a class of "all field workers employed by Giumarra who were paid a pure piece rate at any time between 11/9/2001 to the present." *Id.* at 7.

Defendant asserts this claim was not properly plead in the operative complaint, "and certification should be denied on this basis alone." (Doc. 77 at 22) (citing *Brown*, 2011 U.S. Dist. LEXIS 99495).  In addition, Defendant contends there is no basis for such a claim that employees should have been provided separate compensation "at an hourly rate no less than the minimum wage for the time they spent taking rest breaks." *Id.* (quoting Doc. 46 at 19).  Further, Defendant asserts: Plaintiffs failed to identify piece rate workers "who took a rest break and was not paid as they now claim he or she should have been." *Id*. at 25.  According to Defendant, "Not one of the named plaintiffs has given any evidence that they were denied such pay and none of plaintiffs' declarants has testified that they were denied such pay." *Id*.  Therefore, Defendant argues that even if this claim was properly plead in the complaint, the class fails to satisfy numerosity requirement.  *Id.* at 25-26.

In response, Plaintiffs argue Defendant's claim that the rest break violation was not plead "has no merit."  (Doc. 89 at 21).  Plaintiffs assert:

> Plaintiffs made class allegations that Giumarra enforced practices or policies that failed to provide non-exempt employees rest periods of at least ten (10) minutes per four (4) hours worked or major fraction thereof and failing to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided. Plaintiffs also cite the relevant Wage Order and statutory remedy provision in the complaint, which clearly states that the requirement is to authorize and permit rest breaks that must be counted as "hours worked."

*Id.*  Therefore, Plaintiffs assert "reliance on *Brown v. American Airlines, Inc.* is misplaced." *Id.*  Plaintiffs note that in *Brown*, the plaintiff sought to certify a class for injunctive relief under Labor Code § 226(g), "despite the fact that nowhere in the complaint did she mention or cite this provision for injunctive relief."  Therefore, Plaintiffs contend *Brown* "is not even close to the present [matter],"

21

because "Defendant has been on notice that the allegation is that it violated the rest period requirement and that the remedy sought, among other derivative and related remedies, is the remedy in 226.7."  *Id.*

Review of the Amended Complaint reveals Plaintiffs' allege Defendants violated 29 U.S.C. § 1832(a), and Labor Code § 226.7 by failing to provide rest breaks.  (Doc. 28 at 23).  Under 29 U.S.C. § 1832(a), "Each farm labor contractor, agricultural employer, and agricultural association which employs any seasonal agricultural worker shall pay the wages owed to such a worker when due." Cal. Labor Code § 226.7 provides: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."  In support of their sixth cause of action that Giumarra violated these laws with its "failure to allow rest breaks," Plaintiffs alleged:

> Labor Code § 226.7 requires an employer to pay an additional hour (1) of compensation for each rest period the employer fails to provide.  Employees are entitled to a paid ten (10) minute rest break for every four (4) hours worked.  Plaintiffs and the class consistently worked over four (4) hours per shift with no rest breaks.
>
> Defendants failed to provide plaintiffs and others with rest breaks of not less than ten (10) minutes as required by the Labor Code during the Class Period.
>
> Pursuant to Labor Code § 226.7, plaintiffs are entitled to damages in an amount equal to one (1) hour of wages per missed rest break in a sum to be proven at trial.  Furthermore, defendants' failure to pay wages pursuant to Labor Code § 226.7 constitutes a violation of 29 U.S.C. § 1832(a) of AWPA.

(Doc. 28 at 23, ¶ 73-75).  Plaintiffs allege Defendant "require[d] that non- exempt employees . . . work through meal and rest periods without paying legal compensation for failure to provide rest or meal periods.  (*Id.* at 12).

Consistent with the allegations in the Amended Complaint, proposed class representatives testified they worked through rest breaks because they feared not meeting their quota.  Nevertheless, Plaintiff testified that breaks were provided.  For example, Rafael Munoz reported Giumarra provided two rest breaks during the day, including a breakfast break around 9:00 a.m. and another break at 2:00

or 2:30 p.m. [9]   (Munoz Depo. at 33:18-24).  Mr. Munoz testified foremen did not tell workers they were not allowed to take breaks, but "[w]hen it was piece rate, some people would not have breakfast and they would continue working."  (Id. at 35:6-8).  Santos Valenzuela testified "the work made you stay," even when the foremen "yelled at you that it was time [for a break]."  (Valenzuela Depo. at 54:4-5).  In addition, Hugo Perez Rios testified he worked through at least one break each day because he did not want to be stopped from working or sent home for being behind the quota.  (Rios Depo. at 29:3-10, 35:11-13).  Consequently, Plaintiffs do not allege Defendant failed to provide them with paid rest breaks.  Rather, the allegation is that Defendant failed "to allow rest breaks."  (Doc. 28 at 23).

Although Plaintiffs contend "Defendant has been on notice that the allegation is that that it violated the rest period requirement," the violation identified in the amended complaint was that Defendant "require[d] non-exempt employees to work without providing a minimum ten (10)-minute rest period every four (4) hours or major fraction thereof worked . . .", "fail[ed] to provide daily rest periods to non-exempt employees for every four hours or major fraction thereof worked . . ." and that rest periods were "unprovided." (See Doc. 28 at 10-11, 14, 15, 18, 23, 25, 32, 33, 82).  Indeed, the caption of the amended complaint reads, "6.  Failure to Provide Rest Periods."  Id. at 1. The amended complaint asserts further that in light of the failure to provide rest breaks, Defendant "fail[ed] to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that a rest period was provided."  Id. at 10-11, 14, 15, 18, 32, 33.[10]  Likewise, though the amended

---

[9] Similarly, plaintiffs Hugo Perez Rios and Trinidad Ruiz testified the company scheduled rest breaks in the morning at 9:00 a.m. and in the afternoon at 2:00 p.m.  (Rios Depo. at 31:10-12; Ruiz Depo. at 45: 2-4, 45:24- 46:1). Mr. Ruiz reported some continued to work through the rest period, although everyone was allowed to take a rest break. (Ruiz Depo. at 45: 9-13).

[10] The references to the amended complaint cited at the hearing in support of Plaintiffs' claim that the amended complaint placed Defendant on notice that they were alleging—not a failure to provide rest breaks but, instead, a failure to pay at least minimum wage to piece rate workers—paragraphs 22, 44(b), 44(e) and 73, simply don't do this.  Paragraph 22 refers to "unpaid rest and meal period *compensation*," when read in the context of the entire complaint refers to the one hour of pay and employer is obligated to pay when a break is not provided.  Paragraph 44(e) and 73 make clear that the Court's interpretation is correct in this regard.  Paragraph 44(b) alleges Defendant failed to pay at least minimum wage for hours worked.

complaint seeks compensation for work done "at hourly rates below minimum wage," Plaintiffs did not allege in any fashion that this occurred during rest breaks.[11]

Similarly, in the amended joint scheduling report, which included a "summary of the factual and legal contentions set forth in the pleadings," Plaintiffs alleged Defendants had an "unlawful practice[] . . . requiring non-exempt employees to work without a minimum ten (10) -minute rest period for every four (4) hours or major fraction thereof worked and failing to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that a rest period was not provided." (Doc. 32 at 5-6). Plaintiffs did not assert that Defendant's paid an unlawful rate of pay for the rest breaks that were provided. Finally, even the declarations submitted support that the claim pursued was the failure to provide rest breaks; not the failure to pay at least minimum wage for the breaks that were provided. (See Benito Santiago Declaration "It was common practice during my employment that the employees, including myself, did not take breaks of ten 910) minutes for every four (4) hours worked. In addition to not giving us the 10 minute breaks, they also failed to pay us one (1) hour's wage at the normal employee compensation rate for each day of work in which the rest break was not permitted." (Doc. 58 at 2, ¶ 10).) Notably, paragraph 10 of the fill-in-the blanks form declaration used by Plaintiffs' counsel and then completed by the declarants, indicated, in pertinent part, exactly the same information recited here for Mr. Santiago, *that the lost compensation was the penalty that should have been paid for the failure to provide rest breaks.*

Notably, as the district court explained in *Brown*, "[c]lass certification is not a time for asserting new legal theories that were not pleaded in the complaint." *Id.*, 2011 U.S. Dist. LEXIS 99495, at *36. Prior to seeking class certification, Plaintiffs alleged only that Defendant violated applicable rest break law by failing to provide or allow fieldworkers to take their rest breaks. (Doc. 28 at 23; Doc. 32 at 5-6). Indeed, the named plaintiffs testified that breaks <u>were</u> provided, but some worked through breaks to ensure they met their work quota. (*See, e.g.,* Munoz Depo. at 35:6-8; Valenzuela Depo. at 54:4-5; Rios Depo. at 29:3-10, 35:11-13). The claim that Defendant failed to

---

[11] To the contrary, such an allegation would had to have been plead in the alternative given that it would have directly contradicted the complaint's claim that reset breaks were not provided, rather than being provided at an unlawful rate of pay.

24

provide *paid* rest breaks does not appear in the Amended Complaint.  Of significant import, such a claim does not appear either in the testimony of the proposed class representatives.  Thus, the Court will not consider argument related to Defendant's failure to provide separate compensation for the rest breaks of pure piece rate employees.  *See Evans v. IAC/Interactive Corp.*, 2007 U.S. Dist. LEXIS 99284, at *7 (C.D. Cal. Mar. 14, 2007) (observing the plaintiffs reformulated their claims and alleged new misconduct by the defendant in their motion for class certification, and the court "could decline to consider any evidence or argument related to the [n]ew [t]heories because Plaintiffs failed properly to amend the pleadings").  Because the "Unpaid Rest Break Class" is based upon a claim not plead in the operative complaint, the Court recommends certification of the class be **DENIED**.

## B.     Late Meal class

Plaintiffs assert fieldworkers typically began their day at 6:00 or 6:30 a.m. and took meal breaks at 12:00 p.m., although California law "requires that meal periods be provided within 5 hours of work."  (Doc. 46 at 8-9) (citing Cal. Labor Code § 512; Industrial Welfare Commission Wage Order 14, 8 Cal. Code Regs. § 11140).  In relevant part, Wage Order 14 provides:

> Each employer shall authorize and permit all employees after a work period of not more than five (5) hours to take a meal period of not less than thirty (30) minutes, except that when a work period of not more than six (6) hours will complete the day's work, the meal period may be waived by mutual consent of employer and employee.  Unless the employee is relieved of all duty during a thirty (30) minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked.  An 'on duty' meal period shall be permitted only when the nature of the work prevents and employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal is agreed to.

8 Cal. Code Regs. § 11140.  According to Plaintiffs, "Giumarra admits that, prior to 2006, it had a meal break policy that scheduled class member lunches from 12:00 to 12:30 p.m. regardless of the time employees began their workday."  (Doc. 42 at 8) (citing Giumarra Depo. at 41:22- 42:6).  Indeed, Jeffrey Giumarra testified, "At one time we took lunch at typically noon.  And at some stage we changed it to be five hours after the start of the day."  (Doc. 44, Giumarra Depo. at 41:22- 42:4)  Mr. Giumarra clarified that the change occurred in 2006.  *Id.*

In addition, Plaintiffs contend "Giumarra's records show that even after the policy purportedly changed in 2006 employees often were scheduled to take late meal breaks from 2007 onward."  *Id.* at

9. Indeed, evidence submitted demonstrates that as late as 2010, foremen were documenting meal breaks that occurred more than five hours after the start time.  (*See* Doc. 62 at 17-37).

Therefore, Plaintiffs seek certification of the class encompassing "[a]ll fieldworkers employed by Giumarra from 11/9/2001 to the present."  *Id.* at 8.

### 1.    Numerosity

Plaintiffs note the evidence demonstrates that "at the peak of the harvest there are approximately 3,000 workers" and "a single crew can be comprised of 50 or 60 workers."  (Doc. 89 at 11) (citations omitted).  Plaintiffs contend this class "is comprised of hundreds if not thousands of fieldworkers."  (Doc. 89 at 11).  Because this class includes all fieldworkers employed by Giumarra during the class period, the Court finds the numerosity requirement is satisfied.

### 2.    Commonality

Plaintiffs submitted anecdotal evidence from the proposed class representatives and putative class members, as well as time sheets from Giumarra, in support of their assertion that Defendant has a custom or policy of providing late meal breaks to its employees.  Plaintiffs Ramon Perales, Trinidad Ruiz, and Santos Valenzuela testified they started work at 6:00 or 6:30 a.m., but the meal break was at 12:00 p.m.  (Perales Depo. at 12:18-24, 13:24-14:2; Ruiz Depo. at 41:5-12, 45:16-18; Valenzuela Depo. at 49:4-5, 99:12-14).  Similarly, putative class members reported they worked for five hours without a meal break.  (*See, e.g.,* C. Hernandez Decl. ¶ 11; S. Hernandez Decl. ¶ 1; M. Moreno Decl. ¶¶ 5, 7).  Further, the documentary evidence supports Plaintiffs' assertion that Giumarra gave its employees late meal breaks, because the time sheets show workers were not given a lunch break for more than five hours.  (*See* Docs. 61-62).[12]

In addition, the testimonial evidence identified by Defendant does not impugn a finding that Giumarra had a policy or practice of giving employees late meal breaks.  Notably, each of the declarations is written in the present tense. (*See, e.g,* Raul Contreras Decl. ¶ 6) ("During the longer lunch period, which starts at 11:30 a.m., I eat food that I have brought from home…").  Defendants

---

[12]Stunningly, although Defendant asserts the documentary evidence demonstrates the meal break was not always provided at noon, the very document Defendant cites indicating lunch breaks were taken at 11:30 a.m. shows the workers began their shift at 6:00 a.m., more than five hours earlier.  (*See* Doc. 61 at 2).

26

argue that the tense used, when considered in light of the other statements made, refers to past and present periods.  Though the Court agrees that it would be nonsensical to interpret these statements to refer only to the particular day the declarations were signed and it agrees, therefore that the statements refer to a period of time, exactly how far in the past the statement were intended to address, is not defined.  The Court notes also that when declarants intended their statements to encompass the entirety of their employment periods, the declarations used descriptive such as "always" or "never."  (*See, e.g.*, M. Gonzalez Decl. ¶¶ 3, 5) ("Never has a foreman or anyone else at Giumarra told or allowed me to come into the field before the start time . . ." and "I have always been paid. . .").  In contrast, these words are not used by declarants when asserting the lunch break "starts at 11:30 a.m."[13]  Therefore, these statements speak only to the practices in place at the time the declarations were gathered, from 2008 to 2010.

Likewise, the testimony of David Stanley, a crew supervisor, is in the present tense.  According to Mr. Stanley, "lunch is taken when the lunch truck arrives."  (Stanley Decl. ¶ 5).  Mr. Stanley admits that the company has "difficulty in trying to schedule lunch within the first five hours of work . . . on those days when we start at 6:30 a.m." because the lunch truck may not arrive at 11:30, but rather "15 or 30 minutes later."  *Id.*  Mr. Stanley does not explain over what period of time that this has been the practice at Giumarra.

Importantly, when Giumarra produced its Rule 30(b)(6) witness, Jeffrey Giumarra, it was required to provide a declarant who had the authority to bind the entity.  Indeed, a corporate designee need not have personal knowledge of the topics at issue but must be sufficiently prepared on the topics such to be able to provide knowledgeable and binding testimony.  *United States v. Taylor*, 166 F.R.D. 356, 361 *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996); *Great Am. Ins. Co. of New York v. Vegas Const. Co.,*

---

[13] Defendant seeks to impart meaning it wants into the declarants' words beyond what can be reasonably inferred: "'When I use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean—neither more nor less.'

'The question is,' said Alice, 'whether you *can* make words mean so many different things.'

*Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 428, n.5 (1997) (quoting Carroll, *The Annotated Alice: Alice's Adventures in Wonderland & Through the Looking Glass* (Gardner edit.1960) (original italics).

27

*Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008).  The fact that worker-declarants contradict the testimony given by Giumarra at its PMK deposition is not sufficient to relieve it of these admissions.  Coupled with the time-card evidence, documenting meal times as late as 2010 taken more than five hours after the start time, the Court cannot reasonably attribute to the declarations the meaning that Defendant urges.

Given the testimonial and documentary evidence provided, Plaintiffs have shown the Plaintiffs and the putative class members "have suffered the same injury" of receiving untimely meal breaks. *See Wal-mart Stores*, 131 S. Ct. at 2552; *see also Falcon*, 457 U.S. at 157.  Therefore, the Court finds the commonality requirement is satisfied.

### 3.   Typicality

Plaintiffs contend they were "subject to the same practices of the Defendant" as the putative class members, and the "non-compliant meal policy applied to all fieldworkers, including the class representatives." (Doc. 46 at 32-33).  As a result, Plaintiffs have a "same or similar injury" as putative class members. *See Hanon*, 976 F.2d at 508.  Accordingly, Plaintiffs have demonstrated that the typicality requirement is satisfied.

### 4.   Adequacy of Representation

Rule 23(a)(4) requires Plaintiffs to demonstrate that they will "fairly and adequately protect the interests of the class." Representation is "adequate" if the attorneys representing the class are qualified and competent, and class representatives have claims that are interrelated with interests of the class members. *Falcon*, 457 U.S. at 157-58; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

### a.    Proposed class representatives

Plaintiffs have each provided declarations asserting they do not have conflicts of interest with putative class members.  Further, "Plaintiffs are pursuing damages for the same violations of law that each putative class member suffered," and "have cooperatively participated in the litigation, answering discovery and appearing for deposition." (Doc. 46 at 34).  Accordingly, Rafael Munoz, Ramon Perales, Martha Ricon de Diaz, Hugo Rios, Trinidad Ruiz, and Santos Valenzuela have demonstrated they are adequate representatives for the putative class members.

b.      *Proposed class counsel*

Defendant has not argued the law firms of Mallison & Martinez and Kingsley & Kingsley are not qualified or competent counsel.  Review of the potential class counsels' declarations demonstrates counsel are experienced wage and hour attorneys with class action experience.  (*See* Doc. 43, Mallison Decl. ¶¶ 4-20; Doc. 63, Hernandez Decl. ¶¶ 2-3).  Accordingly, proposed class counsel will provide adequate representation.

**C.      Piece-Rate Overtime Class**

Plaintiffs contend Giumarra does not adjust the piece rate pay for overtime, and as a result, "any field worker who worked overtime while earning a piece rate was not properly compensated for overtime hours."  (Doc. 46 at 9).  Plaintiffs argue:

> The leading common question that predominates with respect to this class is whether Giumarra's policy of paying piece rate without adjusting it to account for overtime hours worked violates California laws and AWPA.  This question is subject to common proof consisting of Giumarra's own company-wide policies, records and payroll database.

*Id.*  Therefore, Plaintiffs seek to certify a class including: "[a]ll fieldworkers employed by Giumarra who were paid a piece-rate from 11/9/2011 to the present."  *Id.*

On the other hand, Defendant argues Plaintiffs fail to demonstrate numerosity because "[n]one of the named plaintiffs and only five of the . . . putative class declarants make any claim for unpaid overtime."  (Doc. 77 at 49).  Defendant assert Plaintiffs "have not identified one piece rate worker who worked overtime and was not paid as plaintiffs now claim he or she should have been."  *Id.* at 50.  Further, Defendant contends Giumarra does not permit pure piece rate employees to work overtime.  *Id.* (citing Giumarra Decl. ¶ 7; Kuntz Decl. ¶ 6).  Consequently, Defendant argues Plaintiffs cannot satisfy the numerosity requirement, and the class should not be certified.  *Id.*

1.      Class definition

As proposed by Plaintiffs, the class definition includes *all* workers who worked on a piece-rate basis, even if they did not work overtime and would not be entitled to overtime compensation.  Consequently, the proposed class definition is overbroad.  *See Mazur v. eBay, Inc.*, 247 F.R.D. 562, 567 (N.D. Cal. 2009) (rejecting a class definition as imprecise and overbroad where it included

individuals who were not harmed); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482-83 (N.D. Cal. 2011) (finding a class definition overbroad where the proposed class included persons who had already received a remedy and were not damaged).  However, the Court has the power to cure the defect of a class definition.  *See, e.g., Wolph*, 272 F.R.D. at 483; *see also Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definitions"); *In re Monumental Life Ins. Co.*, 356 F.3d 408, 414 (5th Cir. 2004) ("district courts are permitted to limit or modify class definitions to provide the necessary precision").

Here, Plaintiffs assert those who worked on a piece-rate basis and did not receive a pay adjustment for overtime hours were not properly compensated.  (Doc. 46 at 9).  Accordingly, to narrow the class to include only those who were harmed, the class definition is modified to include: all fieldworkers employed by Giumarra who were paid a piece-rate *and worked overtime shifts* from November 9, 2011 to the present.

### 2.   Plaintiffs' Standing

A named plaintiff must have a "personal stake in the outcome" and be a member of the class that he or she seeks to represent for the class to be certified.  *O'Shea v. Littleton*, 414 U.S 488, 494 (1974).  Although Defendant contends Plaintiffs do not make a claim for uncompensated overtime work, Plaintiffs do not respond to the assertion that the proposed class representatives lack standing to represent this class.

Notably, Hugo Perez Rios testified he worked more than ten hours in a day during the picking season, and was given "regular" pay rather than overtime pay.  (Perez Rios Depo. at 42:1-6; 54:21-23, 55:6-10, 21-25).  However, it is unclear whether he was paid on an hourly rate or an hourly plus piece-rate during the times he allegedly worked more than ten hours without overtime pay.  As a result, Plaintiffs have failed to establish they have standing to represent this class.

### 3.   Rule 23(a) requirements

Even if the Court found that Plaintiffs carried their burden to show a named plaintiff had standing to represent the class, Plaintiffs failed to demonstrate the requirements of Rule 23(a) are satisfied.  The Supreme Court explained, "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact*

1    sufficiently numerous parties . . ." *Wal-Mart Stores*, 131 S. Ct. at 2551(emphasis in original).

2    Plaintiffs contend overtime shifts can be ascertained from sign-in sheets, time cards and payroll

3    records, and "the numerosity requirement is easily met upon review of these documents."  (Doc. 89 at

4    25).  Nonetheless, Mr. Kuntz—a Field Superintendent for Defendant—testified that sign-in sheets or

5    time cards would, indeed, reveal those who worked overtime but testified also that piece rate workers

6    "never" worked overtime.  (Kuntz Depo. at 72:6-73:9)  On the other hand, if the sign-in sheets, the

7    time cards and the payroll records so easily and clearly demonstrate the number of putative class

8    members, it is inexplicable that Plaintiffs failed to bring this evidence forth.  It is not enough for

9    Plaintiffs to assert that they *could* prove this element; they actually have to do it.

10        Significantly, however, Plaintiffs do not identify any putative class members who assert they

11    received piece rate pay and worked overtime without proper pay, although over seventy declarations

12    of fieldworkers accompany Plaintiffs' motion for class certification.  While Plaintiffs observe over

13    10,000 fieldworkers who worked for Giumarra during the class period, there is no estimate of the

14    number of workers who performed overtime work during the class period.[14]  Therefore, Plaintiffs have

15    failed to meet their burden to demonstrate the numerosity requirement is satisfied.  *See Wal-mart*

16    *Stores*, 131 S. Ct. at 2551; *see also Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999)

17    ("Plaintiffs must show some evidence of or reasonably estimate the number of class members").

18        Furthermore, Plaintiffs failure to identify any putative class members, paid on a pure piece

19    rate, who worked overtime without compensation defeats the Rule 23(a) requirement for typicality.

20    *See* Fed. R. Civ. P. 23(a)(3) (requiring "the claims or defenses of the representative parties are typical

21    of the claims or defenses of the class"); *see also Hanon*, 976 F.2d at 508 ("The test of typicality is

22    whether other members have the same or similar injury" as the named plaintiffs).  Because Plaintiffs

23    have failed to demonstrate standing or that the Rule 23(a) requirements are satisfied, the Court

24    recommends certification of this class be **DENIED**.

25

26        [14] Although Plaintiffs seem to imply that *all* piece-rate fieldworkers were required to work overtime or more than
     ten hours without an increase in compensation, this is disputed by plaintiff Rafael Gonzalez Munoz, who reported he never
27    worked overtime, because he never worked more than ten hours from the time from his arrival at the worksite to the time
     he departed in the afternoon.  (Munoz Depo. at 65:22-24, 66:13-16); (*see also id.* at 57:2-3) ("if we worked six days, we
28    worked 48 hours in a week, Monday through Saturday").

31

### D.      Off-the-Clock Class

According to Plaintiffs, Giumarra employees "have to arrive before their shift to set-up materials and equipment and participate in mandatory work meetings called 'school' or 'escuela.'" (Doc. 46 at 10).  Plaintiffs contend their preparatory work and time in school, "often between 15 and 30 minutes or longer per shift, is uncompensated."  *Id*.  In addition, Plaintiffs allege: "Two or three times per month, employees are made to move their work locations (known as blocks), but do so before their official start time."  *Id*.  Plaintiffs assert further off-the-clock work occurs at the end of the day because "[w]orkers are required to perform uncompensated work consisting of wrap-up harvest activities (generally packing) and clean up, followed by the washing of trays (or 'bandejas') at home."  *Id*.  Thus, Plaintiffs seek to certify a class for off-the-clock work encompassing "[a]ll fieldworkers employed by Giumarra from 11/9/2001 to the present."  *Id.*

Because off-the-clock work would not be documented by time and payroll records, Plaintiffs submit anecdotal evidence from the proposed class representatives and putative class members to demonstrate the requirements of Rule 23 are satisfied.

#### 1.      Numerosity

Plaintiffs assert the number of class members "can be gleaned from the total number of field workers who have worked for the Defendant during the class period, Defendant's sign-in sheets listing workers in each crew, and transcripts from the recent depositions of Defendant's Superintendents who confirmed there are hundreds of field workers in the individual crews they supervise."  (Doc. 89 at 28) (internal citation and footnote omitted).  Specifically, Plaintiffs' expert has identified 10,698 fieldworkers employed by Giumarra during the class period.  (*Id.* at 28, n. 14) (citing Woolfson Decl. ¶ 12).  Consequently, the numerosity requirement is satisfied.

#### 2.      Commonality

According to Plaintiffs, issues that can be resolved on a classwide basis include: "(1) whether the burden of proof will shift to Giumarra for failing to record this pre and post-shift time; (2) whether pre and post-shift time, which is either required or knowingly permitted, is compensable; and (3) whether the failure to record pre and post-shift work violates AWPA."  (Doc. 46 at 10).  Plaintiffs contend "workers have provided sworn testimonial evidence that demonstrates a practice of requiring

or knowingly permitting pre and post-shift work," which Plaintiffs argue is common proof of the alleged violations.  *Id.*

                     a.       *Pre-shift work*

        Proposed class representatives report Giumarra required fieldworkers to arrive approximately fifteen minutes before the official start of the shift to perform uncompensated, preparatory tasks.  For example, Trinidad Ruiz testified that he was required to prepare "all of the materials that are needed to start working," including boxes, cushions, bags and hooks.  (T. Ruiz Depo. at 41:18-25).  Likewise, Hugo Perez Rios and Ramon Perales testified they prepared materials about 15 minutes prior to the official start of the day.  (*See* Perales Depo. at 16:15-22) ("Before starting . . . [w]e bring boxes and we get salt and . . . pampers, pads").  Mr. Rios testified he "had to start 15 to 20 minutes before" the official start[15] because he felt pressure to prepare his materials for work: "[I]f it was not ready the rest of the people would get ahead of us and then they would put more pressure on us."  (Rios Depo. at 27: 3-11).  Similarly, Santos Valenzuela testified he arrived "30 minutes or 20 minutes before the starting time because there was pressure there."  (Valenzuela Depo. at 49:3-5).  The named plaintiffs assert foreman required workers "to attend school before the fixed start time."  (Doc. 46 at 19).

        Plaintiffs' putative class member declarants echo the assertions that Giumarra foremen required workers to perform uncompensated pre-shift work, including the preparation of materials and attending school.  (*See, e.g.,* Monica Flores Decl. ¶5; M. Gutierrez Decl. ¶ 5; Mora Decl. ¶5; de Marin Decl. ¶2)[16].  For example, Mauricia Calvillo reported:

> On several occasions, I heard the forelady tell me and my coworkers in my crew that we had to arrive to work early – before the 'start time' – so that we could gather tools and materials and have our 'school.'  We were threatened with discipline if we did not arrive to work early and have our materials ready by the start time.

---

[15] Although Mr. Rios testified that he started work "15 to 20 minutes" before the shift, he later testified he "would lose between 20 and 30 minutes" of paid time because the work was off-the-clock. (Rios Depo. at 59:20-24).  Thus, it is not clear how much pre-shift time Mr. Rios believed he performed on a daily basis.  Nevertheless, his testimony supports Plaintiffs' contention that Giumarra either required or knowingly permitted the workers to perform uncompensated preparatory work prior to the "official" start of the day.

[16] Together, the parties filed more than three hundred declarations.  Due to the volume of evidence, the Court declines to identify all putative class members whose declarations support a claim, but rather cites representative samples.  However, the Court has read and considered each of the admissible declarations provided in support of and in opposition to the motion for class certification.

(Calvillo Decl. ¶ 2).  Similarly, Artemiza Martinez de Marin asserted she arrived "15-20 minutes before the scheduled 'start' time" because workers "were told by Joe Giumarra and our foreperson Inocencia Cardenas that we needed to have all of our tools and materials ready before the 'start time.'" (de Marin Decl. ¶ 2).  According to Emilio Negrete Gutierrez, workers were "required to sign-in and have all of our tools and materials set up before the start of 'escuelita' (school) for the day, including the trays, boxes, bags and other materials." (E. Gutierrez Decl. ¶ 2).

On the other hand, Defendant contends fieldworkers were not permitted to perform work prior to the beginning of the shift.  In addition, Defendant presents anecdotal evidence from fieldworkers who assert Giumarra did not permit workers to enter the field before the official start time to perform preparatory tasks or any other work.  (*See, e.g.,* R. De La Cruz Decl. ¶ 3; Hinojosa Decl. ¶ 3; Luna Decl. ¶ 3).  Silva Duran and Armando Velazquez, who also worked under foreperson, Inocencia Cardenas, reported that Ms. Cardenas did not allow workers on her crew to enter the field prior to the start time to prepare materials.  (S. Duran Decl. ¶ 3; A. Velazquez Decl. ¶ 3).  Guillermo Alamilla reported his foreman "never . . . allowed me to come into the field before the start time to gather tools or equipment or to start any other work." (Alamilla Decl. ¶ 3).  According to Mr. Alamilla, although he arrived "usually about 5-10 minutes early" to the field each day, he did not begin work, but rather would talk with co-workers and put on protective clothing.  *Id.*  Likewise, Marciela Gonzalez reported she arrived early but was not permitted to enter the field, so she would "wait in the car, listen to music on the radio, drink coffee, and relax." (M. Gonzalez Decl. ¶ 3).  In fact, several employees reported they spent the time after their early arrival to the field talking with co-workers, resting or sleeping, or finishing a cup of coffee.  (*See, e.g.,* I. Rios Decl. ¶ 3; Mora Decl. ¶ 3; Yanez Decl. ¶ 3; Prado Decl. ¶ 3; Luna Decl. ¶ 3).

Furthermore, Defendant's declarants report the time spent in school was compensated.  (*See, e.g.,* Beltran Decl. ¶ 5; Geranimo Decl. ¶ 5; S. Mendoza Decl. ¶ 5; Trejo Decl. ¶ 5).  Specifically, Ignacio Trejo, who has worked in Crew No. 24 for Giumarra since 1995, reported: "I have always been paid by Giumarra from the moment that my foreman tells us that it is time to work, including the

time spend in the 'school' . . ." (Trejo Decl. ¶ 5).[17]  Similarly, Domingo Balderrama Ignacio reported he was paid for "'preliminary' activities," including "attending school."  (Balderrama Decl. ¶ 5).

*b.*      *Changing locations or "blocks"*

Although Plaintiffs contend the time spent changing locations in the field is uncompensated (Doc. 46 at 10), this claim is not supported by their testimony.  Indeed, Plaintiff Rafael Munoz testified he only changed locations during the day when "it was nearby," and he was paid for the travel time.  (Munoz Depo. at 25: 1-6).  Similarly, Ramon Perales testified that he believed he was paid for the time he spent traveling from field to field because his forewoman said so, and he trusted her.  (Perales Depo. at 32:24-33:6).  The remaining named Plaintiffs did not discuss whether they were compensated for the time spent changing locations, although Plaintiffs' declarants assert the time was uncompensated.  (*See, e.g.,* Carbajal Decl. ¶ 5; A. Flores Decl. ¶ 4; Corona Decl. ¶ 3).

*c.*      *Post-shift work*

Plaintiffs contend Giumarra "requires employees to work beyond the time for which they are paid," and "[w]orkers are required to perform uncompensated work consisting of wrap-up harvest activities (generally packing) and clean-up, followed by washing of trays (or 'bandejas') at home."  (Doc. 46 at 10).  For example, Ramon Perales estimated he worked "[a]bout fifteen minutes" past the official end time each day because his team still had fruit to pack.  (Perales Depo. at 13:3-16).  Trinidad Ruiz testified he worked "10 or 15 minute extra in order to finish packing the grapes and to situate the cushions and boxes."  (Ruiz Depo. at 20:18-23).  In addition, Mr. Ruiz said he took trays home "twice a week to wash them," which took "[a]pproximately half an hour."  (*Id.* at 42:13-17).

*i.*      *Work in the fields*

In accordance with claims of the proposed class representatives, Plaintiffs' declarants report they were required to perform uncompensated post-shift work.  (*See, e.g.,* M. Cruz Decl. ¶ 9) ("Although we generally finished working after the final shift, I was only paid up to the hour when the official shift ended").  According to Angel Flores,

---

[17] Notably, Crew No. 24 is the same crew on which plaintiffs Ramon Perales and Hugo Perez Rios worked under foreperson Felicitas Rios.  (*See* Perales Depo. at 8:25-9:2; Rios Depo. at 21:1-6).

> From the 2005 harvest season and back we were given no notice before quitting time. Everyday of the work week, I had to do 10-15 minutes of work after the 'end time.' The foreman would announce quitting time right at the time the work clock stopped without giving us enough notice to finish packing the pick grapes, clean[] up our area or to do other necessary work. We regularly have to stay after the 'end time' to finish packing all the grapes that had already been picked, to clean up any trash. To finish all these necessary jobs, we would work 10-15 minutes after the 'end time.'

(A. Flores Decl. ¶ 3). Carlos Patricio reported he was "required to do 'off-the-clock' work at the end of the day" because the workers "have not been allowed to leave grapes unpacked." (Patricio Decl. ¶ 4). In addition, Juan Lopez testified: "[A]fter the time we would get off work, we were frequently required to work approximately 5 to 10 minutes, to finalize pending jobs, pack, put away our materials, clean the work area and/or finish the block to start another block the following day." (J. Lopez Decl. ¶ 6; *see also* G. Cruz Decl. ¶ 7 (same)). Likewise, other workers reported their foremen did not announce the end of the shift early enough, and as a result they stayed after the official end of the shift to finish packing grapes and clean the area without pay. (*See, e.g.,* Caquias Decl. ¶ 4; E. Gutierrez Decl. ¶ 4; P. Gutierrez Decl. ¶ 3; M. Lopez Decl. ¶ 6; Galvan Decl. ¶ 3; Gallardo Decl. ¶ 4).

### ii.     *Tray washing*

Notably, Plaintiffs do not agree on whether field workers were required to wash trays at home. Rafael Munoz testified that foremen did not tell workers they had to clean their trays at home each night, but workers were required to take trays home because "they would be stolen if left at work." (Munoz Depo. at 47:1-8; 49:21-25). According to Mr. Munoz, he washed his trays at home, which took 10 to 15 minutes, because "grapes would be mistreated or affected" if the trays were dirty. (*Id.* at 47:11-12; 48:5-8). Mr. Munoz reported that if someone brought dirty trays to work, he or she simply worked with dirty trays. (*Id.* at 48:2-4). Nonetheless, although there is a dispute regarding whether workers were *required* to wash trays at home, Plaintiffs agree they washed their trays at home without compensation from Giumarra.

In addition, Plaintiffs' putative class members report they washed their grape trays or bins at home. According to Esteban Gutierrez:

> [T]he foreman, Eliseo [Salazar] would demand that we take the trays home each night and we had to wash the trays at home. Every day I had to take approximately 2 trays

36

home and I had to wash these trays every day.  The foreman reviewed our trays each morning and if they were dirty we were not allowed to work.

(E. Gutierrez Decl. ¶ 9).  Similarly, Refugio Quiroz reported he heard supervisors tell workers that if they did not wash the trays "that they would be stopped for an hour" and not be permitted to work.  (Quiroz Decl. ¶ 3).  However, Angelina Perez explained that if a worker's trays were dirty, she would be "told to go wash her bins at the bathrooms with water," and would be permitted to pick again once the bins were washed.  (A. Perez Decl. ¶ 4).

On the other hand, Defendant presents declarations of fieldworkers who assert they have "always been paid for every minute of 'finishing up' the work" and do not perform work after the official end of the shift.  (*See, e.g.*, R. Aguilar Decl. ¶8; R. Garcia Decl. ¶ 8; J. Raya Decl. ¶ 8; Machuca Decl. ¶ 8).  According to Remedios Garcia, his foreman notified workers to finish work before the end of the work day, and he was not required to perform work after the shift.  (R. Garcia Decl. ¶ 8).  Likewise, Julio Cesar Marin asserted his team would start to finish tasks about "ten minutes before the end of the workday," and no one in his crew worked after the end time.  (J. Marin Decl. ¶ 8).  Thus, Defendant contends Giumarra did not require employees to perform off-the-clock work after the end of the day.

Plaintiffs asserted at the hearing that the failure of Defendant's declarants to specifically mention tray washing, leaves a gap in the evidence.  However, these declarations report consistently that,

> Neither I nor to my knowledge any of my co-workers was ever not paid for these "preliminary activities, whether attending "school," going to the assigned work area, setting up or packing tables, gathering boxes or bags, picking up tubs and other materials needed for work, or for retrieving or using wheelbarrows.  Anyone who says otherwise is wrong.  Also, **neither I nor any of my coworkers to my knowledge has ever been asked by anyone at Giumarra to do any of these activities** *or anything else* **"for free" and** *I have never worked any time for which I was not paid.***"

(*See* Doc. 72-2, emphasis added)  In addition, the declarations report,

> My foreman tells us when we should finish up what we're doing and get ready to go home.  When I hear from my foreman that it is time to finish up, I finish what I am doing, help put the equipment away and get ready to leave.  Neither I nor anyone else in my foreman's crew does any work after the "end time."  I have always been paid for every minute of "finishing up" the work that I need to do.  ***The Company has always paid me for every minute that I have worked.***

37

*Id.*, emphasis added.  Though the workers do not specifically state that they have not wash trays after hours, they state that they have never been asked to do work for free and have never done work for which they did not receive compensation.  Rather than specifically addressing tray-washing, the broad language of the declarations indicates that no work, no matter its type, was done by workers unless it was paid.  Finally, Defendant's superintendents, Joseph Giumarra and David Stanley attest that workers are tray-washing occurs on-the-clock, at the worksite.  (Doc. 75 at 3; Doc. 76 at 3)  Thus, variations in the evidence seems to be attributable to individual foremen and particular crew members.

### d.   Conflicting evidence

Importantly, the evidence provided by Plaintiffs and Defendant regarding pre-shift work appears to be directly in conflict.  Previously, this Court noted, "[C]onflicting testimony poses a significant concern for managing [a] class action."  *Garcia v. Sun Pacific Farming Coop.*, 2008 U.S. Dist. LEXIS 111969 (E.D. Cal. May 14, 2008), *aff'd* 359 Fed.Appx. 724 (9th Cir. Nov. 13, 2009).  In *Garcia*, the plaintiffs presented seven employee declarations in which they claimed the defendant instituted employment policies that required off-the-clock work, failed to permit meal and rest periods, and did not reimburse workers for tool expenses.  In opposition to the motion, the defendants presented 33 declarations from employees—some of whom were from the same crews as the plaintiffs' declarants —who reported they did not work off-the-clock, and that defendants provided meal and rest periods and provided necessary tools.  *Id.*, 2008 U.S. Dist. LEXIS 111969 at *28-32.  The Court observed:

> Based on the evidence before the Court, there is not consistent application of the wage and hour laws between and among the various Crews.  Some persons within a Crew are given meal and rest breaks, while others in the same Crew are not given meal and rest breaks.  Unlike the evidence in *Dukes*, there is no strong evidence of company wide policies and corporate structure.  The evidence before this Court demonstrates significant differences between the crews and individuals and no commonality.

*Id.* at *31-32.  Therefore, the Court concluded the plaintiff was unable to satisfy the commonality requirement.  *Id.* at *32.

Likewise, in *Arrendondo v. Delano Farms Co.*, 2011 U.S. Dist. LEXIS 44134 (E.D. Cal. Apr. 19, 2011), the Court observed that "conflicting evidence warrants denial of certification."  *Id.*, 2011 U.S. Dist. LEXIS 44134, at *25.  However, in *Arrendondo*, the Court found the evidence was not in

conflict, because the defendants' declarants did not identify their dates of employment, or the period of time to which the testimony applied. *Id.* at *8. Specifically, the Court observed:

> Each declarant is a current employee, but gives no evidence of the duration of their employment or the time period for which the testimony applies. The implication is that because the declarants are current employees, and the declarant's declarations are worded in the present tense, the testimony applies for the current employment practices. [Citation]. The declarants do not provide sufficient evidence of labor practices during any period other than the current time period.

*Id.* at *28-29 (citation to the record omitted). Further, the Court noted the plaintiffs presented evidence explaining that the defendants' labor practices changed in 2010 and that these new practices differed from the old ones. *Id.* at *29-30. As a result, the Court found the plaintiffs "offered a reasonable explanation of why, what appears to be conflicting declarant testimony, is not conflicting at all." *Id.* at *30.

Though Defendant's declarants appear to be current employees of Giumarra, unlike the declarants in *Arrendondo*, each declarant provided information regarding to which crew he or she was assigned and how long the declarant had been employed by Giumarra. The evidence now before the Court is similar to the evidence presented in *Garcia*. Though Plaintiffs' declarants assert they were required to perform off-the-clock work without compensation, Defendant presents declarations from individuals *in the same crews and with the same foremen*,[18] who assert pre-shift work was prohibited and Giumarra paid them for "every minute" worked. For example, Carlos Patricio and Julio Marin worked in Crew No. 46 and had Steve Elizalde as a foreman during the same time period. (Patricio Decl. ¶ 1; Marin Decl. ¶ 1). Mr. Marin reported the foreman "[n]ever . . . told or allowed me to come into the field before the start time to gather tools or equipment or to start any other work," while Mr. Patricio asserted he was required "to arriv[e] to work at least 10-15 minutes before the scheduled 'start' time" to gather materials and tools. (*Compare* Marin Decl. ¶ 3 *with* Patricio Decl. ¶ 2). Similarly, Mr. Marin and Mr. Patricio disagree about the crew was required to perform off-the-clock work at the end of the day. (*Compare* Marin Decl. ¶ 8 *with* Patricio Decl. ¶ 4).

---

[18] Also, Defendants presents evidence from all 43 work crews that no off-the clock work occurred. (Doc. 72 at 5) Plaintiffs fail to present any evidence from 23 of these work crews.

39

Given the dissimilarities and conflicting testimony of putative class members, the Court is unable to find a contention that is "capable of classwide resolution." *See Wal-Mart Stores*, 131 S. Ct. at 2551.  Consequently, Plaintiffs failed to demonstrate the commonality requirement is satisfied.[19]

### 3.     Typicality

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.14.  Typicality inquires whether proposed class representatives "have the same or similar injury" and "have been injured by the same course of conduct" as putative class members.  *Hanon*, 976 F.2d at 508.

In *Washington v. Joe's Crab Shack*, 271 F.R.D. 629 (N.D. Cal. 2010), the plaintiff alleged wage and hour violations, including untimely meal and rest breaks, and provided declarations of six putative class members.  *Id.* at 633-34.  These declarations were contradicted by declarations provided by the defendant.  *Id.*  For example, 19 of the defendant's declarants reported the defendant "made meal and rest breaks available, but that they sometimes (or always) chose not to take them."  *Id.* at 634.  In addition, most of the declarants reported "they have never been asked to work off-the-clock." *Id.*  Although the court found the plaintiff' established a common question—whether the defendant's practices constitute violations of California law—the plaintiff failed to demonstrate typicality due to the conflicting evidence.  The court observed:

> [P]laintiff's claims appear to be reasonably co-extensive with those of some of the absent class members, or at least with those class members who signed declarations in support of plaintiff's motion.  On the other hand, plaintiff's claims are not co-extensive with those of the class members who submitted declarations in support of [the defendant's] opposition to the present motion.

*Id.* at 637.  Likewise, in *Garcia*, the Court noted the conflicting evidence defeated a finding that the plaintiff had satisfied the typicality requirement.  *Garcia*, 2008 U.S. Dist. LEXIS 111969, at *36-37.  The Court observed the proposed class representatives' claims were "typical of some of the proposed class members but atypical of other of the proposed class members."  *Id.* at *36.

---

[19] Moreover, the conflicting evidence demonstrates the Court would be required to conduct individual inquiries to determine which workers in the same crew were required to perform off-the-clock work without compensation, while others in the same crew were not, and why.  In addition, the Court would have to determine which fieldworkers were compensated for the time spent in "school," and which were not.

Although Plaintiffs and putative class members were employed by Defendant and should have been subject to the same policies and procedures, declarants provide differing accounts of what *actually* was required by the differing practices of its foremen.  Plaintiffs do not appear "to have the same or similar injury" as many of the putative class members who assert off-the-clock work was neither required nor permitted by Defendant.  Therefore, Plaintiffs are unable to demonstrate typicality of claims with members of the proposed class.

### 4.  Adequacy of Representation

Because Plaintiffs have not satisfied the prerequisites of commonality and typicality under Rule 23(a), Plaintiffs would not be proper representatives of the class.  *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1027 (9th Cir. 2011) (affirming a finding that the named plaintiffs "are not proper class representatives" because their claims were "not typical of the class members").  Consequently, because Plaintiffs failed to demonstrate the requirements of Rule 23(a) are satisfied by this class, the Court recommends certification of the "Off-the-Clock Class" be **DENIED**.

### E.  Tool Class

Plaintiffs assert fieldworkers "are required to purchase, without reimbursement, tools and equipment necessary to perform their jobs."  (Doc. 46 at 11).  Under California law, "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."  *Id.* at 26 (quoting Cal. Labor Code § 2802(a)).  According to Plaintiffs, "Testimonial evidence from workers demonstrates the practice of failing to provide needed tools and equipment or to reimburse employees who had to purchase tools."  *Id.* at 11.

### 1.  Numerosity

Plaintiffs assert the numerosity requirement is satisfied by the Tool Class, because the class is "comprised of all field workers employed by Giumarra from 11/9/2001 to the present."  (Doc. 89 at 28).  Plaintiffs note that their expert, Mr. Woolfson, has identified 10,698 fieldworkers employed by Giumarra during the class period.  (*Id.* at 28, n. 14) (citing Woolfson Decl. ¶ 12).  Consequently, the numerosity requirement is satisfied.

///

41

2.    Commonality

Plaintiffs contend the declarations submitted in support of class certification demonstrate commonality because "99 percent of the[] declarants, including Plaintiffs, state workers in their crews incurred out-of-pocket costs for tools required for work, but were never reimbursed by Giumarra." (Doc. 46 at 27).

According to plaintiff Rafael Munoz, Giumarra provided tools to the fieldworkers, including trays and clippers for pruning. (Munoz Depo. at 42:16-21). However, Mr. Munoz believed the clippers "were in bad condition" and required sharpening, so "pretty much the majority of the workers . . . carried [their] own filing stone." (*Id.* at 37:4-7, 44:16-21). On the other hand, Mr. Munoz testified that the foreman would sharpen the workers' clippers. (Munoz Depo. at 44: 16-19).

Other plaintiffs testified the company did not provide any tools, and the workers were required to purchase everything needed for work, including picking trays. (*See, e.g.,* H. Rios Depo. at 50:11-51:12 (reporting he bought trays at a store, picking clippers, "sheers to prune, gloves, and a file to sharpen the sheers"); Ruiz Depo. at 35:18-23 (stating he purchased gloves, clippers, and trays)). Thus, there is conflicting evidence among the named plaintiffs as to whether Giumarra provided the necessary tools to its fieldworkers.

A majority of Plaintiffs' declarants report Giumarra did not provide any tools for the fieldworkers, and they were required to purchase picking trays and bins, pruning scissors, picking clippers, holsters, goggles, gloves, and pillows. (*See, e.g.*, Baez Decl. ¶ 9; Cervantes Decl. ¶ 7; V. Cruz Decl. ¶ 11; Caldera Decl. ¶ 5, E. Hernandez Decl. ¶ 11; A. Perez Decl. ¶ 10; R. Ramos Decl. ¶9). However, a number of Plaintiffs' declarants also reported the company provided tools to workers,[20] but they may not last for the season, and workers purchased replacements. For example, Israel Herrera reported:

----

[20] Plaintiffs' declarants provide conflicting testimony about when Giumarra began to provide tools to its fieldworkers. According to Angelina Perez and Taurino Valencia, tools were not provided until after 2005. (A. Perez Decl. ¶ 13; T. Valencia Decl. ¶ 8). According to Jose Roque, Giumarra provided clippers prior to 2005 but the cost was deducted from paychecks; between 2005 and 2008 employees were required to buy clippers from a store; and in 2008, the company began to provide the clippers. (Roque Decl. ¶ 9). Likewise, Rosalba Silva and Carolos Patricio reported Giumarra began to provide tools in 2008. (Silva Decl. ¶ 8; Patricio Decl. ¶ 8). However, Gabriela Sarabia testified Giumarra did not provide clippers until 2010. (Sarabia Decl. ¶ 18). Thus, Plaintiffs' declarants appear to agree that tools were not provided for the entire class period, but disagree as to when tools began to be provided.

42

> The Company gave one pair of picking scissors to each worker in the tipping season, but these had to last through the end of the 'harvest' season. The picking scissors from the Company usually only lasted 3-4 weeks so in general, I had to buy about 3 pairs of picking scissors each year for about $7 each.

(Herrera Decl. ¶ 7). Likewise, Orel Rodriguez reported, "Giumarra provided one pair of picking scissors during the 'harvest' but they did not work, and we had to buy our own." (O. Rodriguez Decl. ¶ 7). Others asserted some tools were provided by Giumarra, but if they were lost, the workers had to pay for replacements. (See, e.g., E. Gutierrez Decl. ¶ 10; Corona ¶ 9; A. Perez Decl. ¶ 13). Specifically, Esteban Gutierrez reported: "During my employment with Giumarra, the company only gave me one pair of scissors a year. When I lost the scissors, I had to buy a replacement pair." (E. Gutierrez Decl. ¶ 10). Thus, there is also some dispute among Plaintiffs' declarants regarding whether tools were provided, and for what reasons workers were required to pay for replacement tools.

Notably, this is consistent with the testimony of David Stanley and Leroy Kuntz, who reported Giumarra used to require a deposit for tools, which was only refunded at the end of the season upon return of the tools. (Doc. 76 ¶ 7; Doc. 74 ¶ 7). Thus, workers were forced to pay for the tools, and received a refund only if the tools were returned. In addition, Defendant's PMK, Jeffrey Giumarra, testified deductions may be made for lost tools. (Giumarra Depo. at 120:3-4). Joseph Giumarra testified that before 2005, workers had to pay to replace lost tools. (Doc. 75) Even now, Joseph Giumarra reported employees would be docked for lost tools "depending on whether or not [the company] deemed the employee at fault for losing the tools." (Doc. 75 ¶ 5). Similarly, David Stanley reported "we still generally do not provide replacements for lost tools for my crews." (Doc. 74 ¶ 7). Thus, it appears Defendant may have provided tools to workers, but required workers to replace those which were lost.

Given the testimonial evidence provided, Plaintiffs have shown the putative class members "have suffered the same injury" of being required to purchase necessary tools. See Wal-mart Stores, 131 S. Ct. at 2552; see also Falcon, 457 U.S. at 157. Therefore, the Court finds the commonality requirement is satisfied by this class.

### 3.    Typicality

Because the class representatives were subject to the policies that either required workers to

43

1    pay a deposit for tools or replace any which were lost, their claims are typical of the putative class

2    members.  Therefore, the tool class satisfies the typicality requirement.

3                    4.       Adequacy of Representation

4            As addressed above, Defendant has not shown either Plaintiffs or proposed class counsel are

5    inadequate.  Plaintiffs have demonstrated they are adequate representatives without conflicts with the

6    putative class members, and counsel are qualified and competent.  Accordingly, Plaintiffs have

7    satisfied the requirement of Rule 23(a) that the class be "fairly and adequately" represented.

8            Therefore, the Court recommends certification of this class be **GRANTED**.

9        **F.    On-Duty Meal Class**

10           Plaintiffs allege that "Giumarra required every hourly employee in the Cold-Storage

11   Department to sign its on duty meal break agreement."  (Doc. 46 at 11).  According to Plaintiffs,

12   employees working in the department "are required to take their meal breaks on duty, because the

13   nature of the work prevents the employee from being relieved of all duty."  *Id.* at 27.  Plaintiffs

14   identify the following common question for the class: "[w]hether the on-duty meal-break policy is

15   lawful is amenable to class treatment."  *Id.* at 11.  Therefore, Plaintiffs seek to certify a class of

16   "fieldworkers employed by Giumarra from 11/9/2011 to the present to work in cold storage."  *Id.*

17           On the other hand, Defendant argues the on-duty meal breaks in cold storage were necessary

18   "[b]ecause the flow of work in this area varies depending on the volume and timing of trucks bringing

19   fruit from the fields, and because the two shifts of workers in this area overlap for only a few hours

20   during the day."  (Doc. 77 at 13-14).  Defendant contends the cold storage employees were not able to

21   predict when work would slow enough to allow breaks and they "agreed to take one of their meal

22   breaks as an 'on-duty' break."  *Id.* at 14.  Further, Defendant argues class certification is not

23   appropriate because "[n]ot a single one of the named plaintiffs has worked in the cold storage areas."

24   *Id.* at 55.

25           As discussed above, standing is a prerequisite for an individual to be appointed as a class

26   representative.  *See O'Shea*, 414 U.S. at 494.  "[A] class representative must be a part of the class and

27   possess the same interest and suffer the same injury as the class members."  *Falcon*, 457 U.S. at 156;

28   *see also Pence v. Andrus*, 586 F.2d 733, 737 (9th Cir. 1978) (named representatives "must allege and

                                          44

show" personal injury).  The Supreme Court explained: "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (internal quotation marks and citation omitted).  Moreover, when a class is divided into subclasses, it is "[o]f particular importance  . . . that the court be certain that each subclass is adequately represented."  *Betts*, 659 F.2d at 1005.  If Plaintiffs were not employed in cold storage, they lack standing to raise a claim regarding the legality of the agreement to take on-duty meal breaks.

Significantly, Plaintiffs admit that "none of the Plaintiffs worked in cold storage."  (Doc. 89 at 26).  Nonetheless, Plaintiffs assert "this does not mean that they cannot represent the class."  *Id*. However, because Plaintiffs did not sign the on-duty meal break agreement they assert was illegal, they cannot represent this class of workers.  *See Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) ("A named plaintiff cannot represent a class alleging . . . claims that the named plaintiff does not have standing to raise").  They fail to address completely though, the fact that none of the named Plaintiffs were required to take an on-duty meal break. They do not allege that any were ever asked to sign the agreement, that any ever worked in the cold storage or that any ever wanted to work in the cold storage area.  There is simply no basis upon which the Court could conclude that Plaintiffs have standing to represent this potential class.[21]  Thus, Plaintiffs lack standing to represent this class of Giumarra employees.

On the other hand, Plaintiffs argue that the Court should substitute in a plaintiff who *does* have standing.  They do not suggest who this new plaintiff would be and provide no evidence—or even assertion—that there is a person willing to act in this role.  Moreover, the cases cited by Plaintiffs, for the proposition that the Court should certify a class even though there is no adequate class

---

[21] The case cited by Plaintiffs, *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1270 (4th Cir. 1981), does not assist their cause.  At most, the case demonstrates only an example of the degree of factual difference that may exist between the class and the class representative and still not preclude class certification. Unlike in *Int'l Woodworkers*, where all of the class members suffered discrimination, though it varied in the manner of discrimination and its degree, here the difference in the claims is significant.  Though the named Plaintiffs contend that they were not provided a timely meal break, the cold storage workers make no such claim. Instead, they assert that, though they were granted timely meal breaks, they were not relieved of their duties during the meal period.  Thus, though both complain about their meal breaks, their complaints are quite different.

representative or a named plaintiff with standing, upon the mere suggestion that there may be such a person willing to act for the class.  Likewise, the cited legal authority does not support the claim that the Court is obligated to appoint a new class representative sua sponte, if it determines that the proposed representative is insufficient.

Likewise the cases cited do not support Plaintiff's claim that "the proper remedy is to allow Plaintiffs to add an additional class representative capable of meeting Rule 23 requirements and representing the interests of the "On-Duty Meal" class."  (Doc. 89 at 27)  For example, in *Davis v. Thornburgh*, 903 F.3d 212, 217-218 (3rd Cir. 1990), the trial court denied the motion for class certification.  On appeal, the Court affirmed the determination that the plaintiff lacked standing from the inception of the case as to her individual claims because the injury she alleged was not redressable. *Id.* at 220, 221-222.  Moreover, the Court affirmed the denial of the class certification motion.  In doing so, the Court held that the plaintiff did not present a live controversy and, therefore, was not a proper class representative.  *Id*. at 222.  The Court held, "'In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot.'"  *Id.*

Similarly, the *Hanzly* case simply does not support Plaintiffs' position.  In that case, the representative plaintiffs filed a motion to decertify the class ostensibly because 37 of the 89 potential class members had opted out. *Hanzly v. Blue Cross of W. New York, Inc.,* 1989 WL 39427 at *1 (W.D.N.Y. Apr. 3, 1989).  However, it was clear to the court that the plaintiffs wanted to decertify the class in order to obtain the benefit of settlement agreements that had been made.  *Id.*  The court observed a key portion of the settlement agreements "does not protect the interests of the entire class in this litigation. Having initially requested and then obtained certification of a class, the named plaintiffs were duty-bound to represent the common interests of all the class members. See Fed.R.Civ.P. Rule 23(a)(4). The three named plaintiffs have abrogated their obligations and can no longer be considered adequate representatives of the class at large. See 3B Moore's Federal Practice, ¶ 23.07[1] ("adequacy of representation may be evaluated retrospectively")."  *Id.*  Thus, the Court was placed in the untenable situation of having to determine whether to decertify the class because the

class representatives were no longer adequate—despite that this was *exactly* what the self-interested

representatives wanted—or deny the motion and require the plaintiffs' to remain as class

representatives until others could come forward.  *Id*. at 2.  Notably, the Court did not appoint other

representatives sua sponte.

Moreover, far from instructing the Court that it should appoint new a class representative at

this stage as Plaintiffs assert, in *Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 617-618

(5th Cir. 1983), the Court held,

> At this stage of the proceedings-where the class claim has been determined on the
> merits after the class was properly certified-the appropriate remedy is not
> decertification on appeal. The district court may reevaluate the class and the adequacy
> of representation in light of evidence adduced at trial. *See Guerine v. J & W Investment
> Company,* 544 F.2d 863, 864 (5th Cir.1977).  *See generally* C. Wright & A. Miller,
> Federal Practice and Procedure § 1785, at 137 (1972).  **However, if after the class has
> been certified and its claims heard and the representatives are found to be
> inadequate for some reason during the course of the class claims or during a
> bifurcated hearing with respect to individual claims, the appropriate step is
> appointment of new representatives from the existing class, not decertification**. *See
> Satterwhite v. City of Greenville,* 634 F.2d 231 (5th Cir.1980) (en banc).

Emphasis added.  Thus, *Carpenter* does not require, encourage or condone the Court from ignoring the

Rule 23 requirements when determining a motion for class certification.  Likewise, *Davis v.

Bethlehem Steel Corp.*, 600 F. Supp. 1312, 1323 (D. Md. 1985) *aff'd*, 769 F.2d 210 (4th Cir. 1985),

stands for the unremarkable proposition that once the class has been certified if it is determined that

there is no class representative with a non-barred claim, "'a proper plaintiff may be substituted to

represent the class.' *Dameron v. Sinai Hospital of Baltimore,* 595 F.Supp. 1404 (D.Md.1984) *citing

International Woodworkers v. Chesapeake Bay Plywood,* 659 F.2d 1259, 1270 (4th Cir.1981)."

Notably, *Dameron* concerned a class *that had already been certified.*  Indeed, *Davis* reiterated that a

"'class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the

prerequisites of Rule 23(a) have been satisfied.' *General Telephone Co. of Southwest v. Falcon,* 457

U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)."  *Id*. at 1325.  Finally,

Because Plaintiffs failed to demonstrate they have standing to pursue this claim, further

analysis of the Rule 23 is unneeded.  Plaintiffs' failure to show personal injury defeats Rule 23

requirements.  *See* Fed. R. Civ. P. 23(a)(3) (requiring "the claims or defenses of the representative

parties are typical of the claims or defenses of the class"); *see also Hanon*, 976 F.2d at 508 ("The test

1  of typicality is whether other members have the same or similar injury" as the named plaintiffs).

2  Consequently, the Court recommends the request to certify this class be **DENIED**.

3       **G.**     **Rule 23(b) Certification**[22]

4       Once a class satisfies the prerequisites of Rule 23(a), the party seeking certification must

5  demonstrate the action is appropriate also under Rule 23(b). *Amchem Prods*, 521 U.S. at 614. Here,

6  Plaintiffs contend this class action meets the requirements of Rule 23(b)(2) and Rule 23(b)(3). (Doc.

7  46 at 35; Doc. 89 at 3).

8       1.     Rule 23(b)(2)

9       Under Rule 23(b)(2), certification is appropriate where the defendant "has acted or refused to

10 act on grounds that apply generally to the class, so that final injunctive relief or corresponding

11 declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Because

12 the requested relief must be applicable to the class as a whole, the Supreme Court explained:

13      Rule 23(b)(2) applies only when a single injunction or declaratory relief to each
   member of the class. It does not authorize class certification when each individual class
14 member would be entitled to a different injunction or declaratory judgment against the
   defendant. Similarly, it does not authorize class certification when each class member
15 would be entitled to an individualized award of monetary damages.

16

17 *Wal-Mart Stores*, 131 S. Ct. at 2557. In this case, Plaintiffs seek certification of a class that includes

18 those who no longer work for Giumarra, and as a result would not benefit from injunctive relief. *See*

19 *Wal-Mart Stores*, 131 S. Ct. at 2560 (observing former employees had "no claim for injunctive or

20 declaratory relief at all"). Therefore, any future injunctive and declaratory relief is not appropriate for

21 the class as a whole, and certification under Rule 23(b)(2) is not appropriate.

22      2.     Rule 23(b)(3)

23      Federal Rule of Civil Procedure 23(b)(3) requires a finding that (1) "the questions of law or

24 fact common to class members predominate over any questions affecting only individual members,"

25

26      [22] The Court only reaches the requirements of Rule 23(b) when a party seeking class certification demonstrates the proposed classes satisfy the prerequisites of Rule 23(a). *See Amchem Prods.*, 521 U.S. at 614. As discussed above,
27 Plaintiffs failed to demonstrate the Unpaid Rest Break Class, the Piece-Rate Overtime Class, and the Off-the-Clock Class satisfied the requirements of Rule 23(a). Further, Plaintiffs failed to demonstrate standing for the On-Duty Meal Break
28 Class. Therefore, the Court declines to address whether these classes satisfy the requirements of Rule 23(b).

and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  These requirements are generally called the "predominance" and "superiority" requirements.  *See Hanlon*, 150 F.3d at 1022-23; *see also Wal-Mart Stores*, 131 S. Ct. at 2559 ("(b)(3) requires the judge to make findings about predominance and superiority before allowing the class").

### a.    Predominance

Plaintiffs must show more than the mere existence of a single common question of law or fact required by Rule 23(a)(2)—a common question must predominate.  *Wal-Mart Stores*, 131 S. Ct. at 2556.  The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623).  The Ninth Circuit explained, "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'"  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser*, 253 F.3d at 1189).

According to Defendant, Plaintiff cannot satisfy the requirements of Rule 23(b)(3) because individual questions predominate over Plaintiffs' claims.  (Doc. 77 at 37).  Defendant notes Plaintiffs seek relief under Labor Code § 226.7(b), which provides an employee shall be compensated an additional hour of pay for each meal period that is not provided in compliance with an order of the Industrial Welfare Commission.  *Id.* (citing Cal. Labor Code § 226.7).  According to Defendant, "The one hour payment is tied to the particular work day that the meal or rest period is not provided," and "if an employee's regular rate of pay varies from day-to-day, the amount of the one hour payment would be different for each day a meal or rest period is not provided."  *Id.*  Defendant contends the putative class members do not have a regular rate of compensation, because the amount paid depends "on the variety of grapes being picked, weather, field conditions, and the effort put forth by the employees."  *Id.*  Therefore, Defendant contends the Court would be required to conduct "individualized damage determination[s]."  *Id.* at 38.

On the other hand, Plaintiffs contend "the overall policies and practices of Giumarra predominate over any issues regarding potentially individualized damages."  (Doc. 89 at 18).  Notably, the Ninth Circuit explained, "[D]amages calculations alone cannot defeat certification."  *Yokoyama v.*

*Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").  Because the only individualized questions identified go to potential damages for putative class members, and Plaintiffs have demonstrated commonality regarding Defendant's policies that resulted in workers purchasing necessary tools and receiving late meal breaks, the proposed classes are "sufficiently cohesive to warrant adjudication by representation."  *See Amchem Prods.*, 521 U.S. at 623; *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("because there are no individualized issues sufficient to render class certification under Rule 23, class issues predominate"). Therefore, Plaintiffs have shown common questions predominate over the class claims.

### b.   Superiority

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023 (citation omitted). This tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Pursuant to Rule 23(b)(3), the Court should consider four non-exclusive factors to determine whether a class is a superior method of adjudication, including (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4) difficulties with the management of the class action.

#### i.   *Class members' interest in individual litigation*

Plaintiffs contend, "Class members are seasonal agricultural workers and their limited economic resources, lack of English language proficiency, and the severe difficulty of finding experienced counsel in rural areas to handle individual cases would deprive most class members of the practical opportunity to pursue their claims if a class action is not certified."  (Doc. 46 at 38).  Here, there is no evidence the putative class members would have an interest in individually pursuing or controlling their own cases.  Therefore, this factor weighs in favor of class certification.

#### ii.   *Other pending litigation*

1    Plaintiffs assert, "No other litigation concerning this controversy has been commenced by or

2    against class members, even though the claims of Plaintiffs and the Class date back to November

3    2001." (Doc. 46 at 38-39).  Though there are related actions pending, the parties have not identified

4    any other actions involving the parties in this case.  Accordingly, this factor does not weigh against

5    class certification.

6                        *iii.*        *Desirability of concentrating litigation in one forum*

7    Because common issues predominate on Plaintiffs' class claims, "presentation of the evidence

8    in one consolidated action will reduce unnecessarily duplicative litigation and promote judicial

9    economy." *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *37 (C.D. Cal. Oct. 25, 2011).

10   Moreover, because putative class members were employed within the Eastern District, their claims

11   arose within the same forum.  Thus, class-wide determination of the claims in one forum appears

12   desirable.

13                       *iv.*        *Difficulties in managing a class action*

14   Because the individualized issues relate only to damages, this does not weigh against

15   management of a class action.  Plaintiffs contend, "Conducting this case as a class action would be far

16   less burdensome than prosecuting numerous separate actions, which would entail risks of duplicative

17   discovery procedures, disputes among counsel, repeated adjudication of similar controversies, and

18   excessive time and costs." (Doc. 46 at 39).  Based upon the evidence before the Court, any difficulties

19   in managing the class action appear to be outweighed by the other factors.

20   **IX.    FINDINGS AND RECOMMENDATIONS**

21   As set forth above, Plaintiffs failed to properly plead a claim for unpaid rest breaks, and their

22   testimonial evidence is consistent with the claims in the amended complaint.  Plaintiffs failed to

23   demonstrate they had standing to state a claim on behalf of the On-Duty Meal Break Class and Piece-

24   Rate Overtime Class.  In addition, Plaintiffs failed to demonstrate the Rule 23(a) prerequisites were

25   satisfied by the Piece-Rate Overtime Class, and the Off-the-Clock Class.  However Plaintiffs

26   demonstrated class certification was proper for the Late Meal Break Class and the Tool Class, because

27   the classes satisfy the requirements of Rule 23(a) and Rule 23(b)(3).

28

Accordingly, **IT IS HEREBY RECOMMENDED** that Plaintiffs' motion for class certification be **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Plaintiffs' request to certify the Unpaid Rest Break Class be **DENIED**;

2.      Plaintiffs' request to certify the Late Meal Class, comprised of "all fieldworkers employed by Giumarra from 11/9/2001 to the present" be **GRANTED**;

3.      Plaintiffs' request to certify the Piece-Rate Overtime Class be **DENIED**;

4.      Plaintiffs' request to certify the Off-the-Clock Class be **DENIED**;

5.      Plaintiffs' request to certify the Tool Class, comprised of "all fieldworkers employed by Giumarra from 11/9/2001 to the present" be **GRANTED**; and

6.      Plaintiffs' request to certify the On-Duty Meal Break Class be **DENIED**; and

7.      Within 14 of the District Court's order adopting these recommendations, Plaintiffs be **ORDERED** to file a proposed notice for the Court's approval.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file and serve written objections with the Court.  A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the Objections shall be filed and served within fourteen days of the date of service of the objections.

IT IS SO ORDERED.

Dated:   __July 5, 2012__                        _____/s/ Jennifer L. Thurston__
                                                    UNITED STATES MAGISTRATE JUDGE

52