UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAFAEL MUNOZ, et al., | ) | CIV-F-09-0703 AWI SMS |
| Plaintiffs, | ) ) | ORDER ADOPTING FINDINGS AND RECOMMENDATIONS |
| v. | ) ) | |
| GIUMARRA VINEYARDS CORPORATION, and DOES 1 to 20 inclusive, | ) ) ) ) | |
| Defendant. | ) ) | |

## I. History

Defendant Giumarra Vineyards Corporation ("Giumarra") is a commercial table grape grower based in Kern County. Plaintiffs Rafael Munoz, Santos R. Valenzuela, Trinidad Rui, Marta T. Tincon de Diaz, Ramon Perales, and Hugo Perez Rios ("Plaintiffs") are current and former employees of Giumarra seeking to represent a class of Giumarra workers. This case has a complex procedural history and is related to a state court case that dates back to 2004. In the operative complaint, Plaintiffs allege Giumarra violated a variety of labor laws by failing to properly pay wages by forcing employees to work off the clock, forcing employees to purchase tools out of pocket, failing to pay minimum required wages, failing to provide meal and rest periods, failing to provide accurate itemized wage statements, and failing to maintain time records.

Plaintiffs made a motion for class certification seeking to have six classes established:

unpaid rest break class, late meal break class, piece-rate overtime class, off the clock class, tool class, and on-duty meal break class. Doc. 42.  Giumarra opposed the motion. Doc. 77. Magistrate Judge Jennifer Thurston considered the arguments and issued findings and recommendations ("F&R"); she recommends certifying the late meal break class and the tool class while denying all other potential classes. Doc. 109.  Plaintiffs object to the F&R, arguing that the unpaid rest break class and a redefined off the clock class should be certified. Doc. 115. Giumarra objects to the F&R, arguing that both the meal period class and the tool class lack commonality and predominance of common over individual issues. Doc. 114.

## II. Legal Standards

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

## III. Discussion

**A. Plaintiffs Objections**

**1. Unpaid Rest Break Class**

Plaintiffs seek certification of a class consisting of "All fieldworkers employed by Giumarra who were paid a pure piece rate at any time between 11/9/2001 to the present."  They argue that "Under California law, workers are entitled to receive paid rest breaks....It follows that under a piece rate system, since employees are paid for units produced, unless they are separately compensated at an hourly rate of no less than the minimum wage for the time they sped taking rest breaks, any rest break they take is unpaid or underpaid." Doc. 46, Class Certification Brief, 19:1-13.  Plaintiffs do not argue that workers were not permitted to take a rest break, but rather the pure piece rate system of payment per se violates California labor law.  Judge Thurston recommended denying class certification "[b]ecause the 'Unpaid Rest Break Class' is based upon a claim not plead in the operative complaint." Doc. 109, F&R, 25:8-9.  Plaintiffs object, arguing

that their theory of the claim was part of the complaint.

In the complaint, Plaintiffs describe the cause of action as:

> Sixth Claim For Relief
> Failure to Allow Rest Breaks Pursuant to 29 U.S.C. § 1832(a), and Labor Code § 226.7
> 72. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.
> 73. Labor Code § 226.7 requires an employer to pay an additional hour (1) of compensation for each rest period the employer fails to provide. Employees are entitled to a paid ten (10) minute rest break for every four (4) hours worked. Plaintiffs and the class consistently worked over four (4) hours per shift with no rest breaks.
> 74. Defendants failed to provide plaintiffs and others with rest breaks of not less than ten (10) minutes as required by the Labor Code during the Class Period.
> 75. Pursuant to Labor Code § 226.7, plaintiffs are entitled to damages in an amount equal to one (1) hour of wages per missed rest break in a sum to be proven at trial. Furthermore, defendants' failure to pay wages pursuant to Labor Code § 226.7, constitutes a violation of 29 U.S.C. § 1832(a) of AWPA.

Doc. 28, Complaint, 23:14-26.  Plaintiffs' theory of liability is not encompassed in this language. Notably, Cal. Labor Code § 226.7 discusses the penalty that is to be paid should an employer fail to provide a rest or meal period; it does not directly require that validly taken rest periods be paid.  Industrial Welfare Commission Order 14 ("IWC Order 14") which covers agricultural workers, is the regulation that requires, "Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." Cal. Code Regs. Tit. 8 § 11140, subsection 12 (2013).

Instead, Plaintiffs point to a phrase used in the general factual allegations in which Plaintiffs sought, among other requests for relief, "unpaid rest and meal period compensation." Doc. 28, Complaint, 11:17.  Plaintiffs argue that this phrase indicates that the complaint included the theory that a separate wage had to be paid for validly taken rest periods.  This argument is unconvincing.  This phrase is contained in numbered paragraph 23; directly preceding that, in numbered paragraph 22, Plaintiffs list out the acts Giumarra is accused of, including: "(j) requiring non-exempt employees to work without providing a minimum ten (10) - minute rest period for every four (4) hours or major fraction thereof worked and failing to pay such employees one (1) hour of pay at the employee's regular rate of compensation for each workday that a rest period was not provided; (k) requiring non-exempt employees to work at least five (5) hours without a meal period and failing to pay such employees one (1) hour of pay at the

employee's regular rate of compensation for each workday that a meal period is not provided." Doc. 28, Complaint, 10:25-11:5. Thus, the "compensation" referenced in the phrase is the penalty Giumarra had to pay for forcing workers to skip a rest or meal period. This interpretation is further supported by language in numbered paragraph 26 describing Giumarra's relevant labor violation as forcing workers to "work through meal and rest periods without paying legal compensation for failure to provide rest or meal periods." Doc. 28, Complaint, 12:8-9. At base, the complaint does not include the presently advanced claim that paying workers on a purely piece rate basis violates California labor law regardless of whether rest periods are actually taken.

Plaintiffs make a number of arguments concerning surprise (or the lack thereof) but ultimately concede that "a plaintiff cannot seek to certify a claim that she did not plead in the complaint." Doc. 115, Plaintiffs Objections, 3:17-18. Plaintiffs also argue "in the event that [the] Court maintains the position that the unpaid rest break theory was under-pleaded, the proper remedy is [to] grant leave to amend." Doc. 115, Plaintiffs Objections, 7:27-8:1. If Plaintiffs wish to amend their complaint, they must make the appropriate motion before Judge Thurston. Further, Plaintiffs do not seek certification of a narrower class of only those workers who were not provided appropriate rest periods (a theory consistent with Plaintiffs' complaint) as they declare, "Ultimately, it is immaterial whether the Plaintiffs who worked piece-rate testified that they received rest periods." Doc. 115, Plaintiffs Objections, 8:8-9.

Certification of an unpaid rest period class is denied.

**2. Tray-Washing Class**

In the underlying motion, Plaintiffs sought to certify an off-the-clock class consisting of "All fieldworkers employed by Giumarra from 11/9/2001 to the present." Doc. 46, Plaintiffs' Brief, 4:3-4. Plaintiffs alleged that workers were required to do a number of tasks, including wash trays at home, off the clock without pay. Judge Thurston recommended denying certification, finding that "Plaintiffs failed to demonstrate the commonality requirement is satisfied." Doc. 109, F&R, 40:3. Now Plaintiffs seek to "certify a more narrow tray-washing class from 2001 to 2006." Doc. 115, Plaintiffs Objections, 2:24.

**4**

Of note, Giumarra's policies with regards to several work practices changed in or around 2006. It appears that Giumarra put new policies in place that directly responded to the specific requirements of California labor law. Though no specific date for these changes can be identified, the evidence suggests that they took place around 2006. With regards to tray washing, Plaintiffs argue that after 2006, Giumarra established a formal policy of requiring workers to wash their trays at work, on the clock. Before the change, Giumarra did not have a formal policy on the issue. The California Supreme Court set out the standard as "liability is contingent on proof [the employer] knew or should have known off-the-clock work was occurring." Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1051 (Cal. 2012).

Plaintiffs first argue that "numerous of Plaintiffs' declarants attest that they were required to wash trays until approximately 2006 (plus or minus one year)." Doc. 115, Plaintiffs Objections, 9:3-4. Plaintiffs cite generally to Docs. 45, 48, 50, 53, 57, and 58 without pointing to specific declarations. Doc. 115, Plaintiffs Objections, 8:21-23. The docketed entries are all declarations of workers provided by Plaintiffs. The court's review of the evidence shows the declarations to be pointedly mixed.

Several declarations support Plaintiffs contentions. Maria Hernandez Alvarez, who worked July 2001 to October 2007, stated "We were also required to perform work at home, for which we were not paid. During the time that I worked for Giumarra, each worker was assigned two or three picking trays at the start of 'harvest' and each worker was required to take the trays home each night and to wash them at home." Doc. 48, 4:20-24 (page 5 of 117). Maria de Lourdes Baez, who worked June 2005 to November 2007, stated "We either had to take the trays home and wash them at home or wash them in the fields after the end of the shift. Each time the foreman saw dirty trays, he scolded the worker and sent them to the bathrooms to clean their trays before they could enter to work for the day." Doc. 48, 4:6-11 (page 18 of 117). Other workers specified that they were required to wash their trays in the fields, at the end of the shift: "Almost every day, we have [to] stay at least 10 minutes after the official end of our shift to finish cleaning up garbage like label papers, bags and other things. This includes cleaning the trays, which is also required." Doc. 48, Agustin Lopez Castelan Declaration, 4:4-7 (page 89 of

117). Some declarations provided by Plaintiffs of fieldworkers who were employed sometime between 2001-2006 make no mention of washing trays at home though they include discussion of other off-the-clock work. See, e.g., Doc. 48, Aurelio Anaya Declaration, (pages 9-13 of 117); Domingo Balderrama Declaration, (pages 22-27 of 117).

Plaintiffs have not provided an official formulation of their proposed narrowed class. The closest statement is the request for certification of "the narrowed trays class for all Giumarra field workers who washed trays at home from 2001 to 2006." Doc. 115, Plaintiffs Objections, 10:27-28. Plaintiffs repeatedly refer to "wash[ing] trays at home," "trays home [] and washed them," "trays home to wash them," or "trays home to clean them" as the key characteristic of the class. See Doc. 115, Plaintiffs Objections, 8:22, 8:26-27, 9:1-2, 9:12, 9:25-26, 10:7-8, 10:9, 10:13, 10:18, and 10:20. The court must respect Plaintiffs' formulation of the class. Given this description, washing the trays in the field (even if it was done off-the-clock) must be considered different than washing the trays at home. As a practical matter, the two practices may be distinct as the evidence necessary to establish the claims are different; a worker washing a tray in the fields has to establish that the act took place off-the-clock whereas there would be a strong presumption that a worker washing the tray at home was doing so off-the-clock.

The court has looked at a random sample of Plaintiffs' declarations. There are 17 declaration in docket entry 48, which covers workers named Alvarez through Corona. Of those, 10 support Plaintiffs' assertion that Giumarra required workers to wash trays at home. Doc. 48, Declarations of Maria Hernandez Alvarez, Maria de Lourdes Baez, Felipe Bautista, Mauricia Calvillo, Hector Luis Caquias, Abel Carbajal, Juana Carbajal, Maria Cervantes, Juan Carlos Fierro Ciriaco, and Esther Corona. The remaining 7 declarations do not mention washing trays or discuss washing trays in the fields. Doc. 48, Declarations of Aurelio Anaya, Domingo Balderrama, Alfredo Caldera, Teresita Ortega Calisto, Alfred Cano, Jesus Carrera, and Agustin Lopez Castelan.

Giumarra has also submitted declarations from workers. These declarations do not discuss tray washing. However, several of the workers state generally that they have never been asked to do any work off-the clock. For example, one declarant states "neither I nor any of my

6

co-workers to my knowledge has ever been asked by anyone at Giumarra to do any of these activities or anything else 'for free' and I have never worked any time for which I was not paid....Neither I nor anyone else in my foreman's crew does any work after the 'end time.' I have always been paid for every minute of 'finishing up' the work that I needed to do. The Company has always paid me for every minute that I have worked." Doc. 72, Part 2, Rafael Ramirez Aguilar Declaration, 2:23-25 and 3:24-27 (pages 3-4 of 100). Some declarants specifically state "I have never been asked to do any work at home." Doc. 72, Part 2, Miriam Alejo Declaration, 2:24-26 (page 32 of 100). Again, the court has looked at a random sample of declarations. There are 20 declaration in docket entry 72, part 2, which covers workers named Aguilar through Astorga. Two declarants, Maria Teresa Aincivuru and Rosa Maria Araujo did not work as grape pickers in the years 2001-2006. Of the remaining 18 declarants, 6 specifically say that they were not asked to do any work at home. Doc. 72, Part 2, Declarations of Miriam Alejo, Maria Alvarado, Mario Alvarez, Josefa Andrade, Diego Astorga, and Juana Astorga. The other 12 declarants state generally that they never did any work off-the-clock. Doc. 72, Part 2, Declarations of Rafael Ramirez Aguilar, Guillermo Alamilla, Guadalupe Soto Alcala, Guadalupe Aldana, Abel Alejo, Jesus Zavala Alvarez, Luz Maria Ambriz, Antonio Angeles, Jorge Arias, Leticia Arredondo, Araceli Astorga, and Ignacia Robledo Astorga.

The worker declarations provided by both Plaintiffs and Giumarra are filled with boilerplate language. Though the majority of the declarations Giumarra provide are silent as to tray washing and work at home, there is strong indication that their general statements of no off-the-clock work included tray washing. These workers' declarations were prepared by Bruce Carroll; in the process, he interviewed the declarants. He states that, relevant to the issue of tray washing,

> A large majority of the witnesses who worked as packers stated that they do take packing trays home with them whenever they finish a block and will be starting a new block the next workday. Most of the packers who took trays home with them said that they did not wash them at home, and except for a very few, they said that they were not asked to wash the trays at home. Virtually all explained that they were expected to wash the trays at the field, and they were given time to do so just before the end of the day, that the foremen gave the workers about 10-15 minutes before the 'end time' to finish up the boxes they are working on, to wash their trays and tables and to put their equipment away—time for which they were paid. While some workers said that they do wash their trays at home,

7

>they also said that their doing so was strictly voluntary, as they are given time to do this at the field, at the end of the day.

Doc. 72, Bruce Carroll Declaration, 11:9-22.  These statements by Bruce Carroll concerning what the workers said is hearsay.  However, evidentiary standards are loosened in the class certification context. See Faulk v. Sears Roebuck & Co., 2013 U.S. Dist. LEXIS 57430, *18-19 n.5 (N.D. Cal. Apr. 19, 2013) (relying upon hearsay in class certification).  The court will consider Bruce Carroll's statement to the extent that it confirms the issue of tray washing had been discussed with the workers whose declarations Giumarra has submitted.  His explanation is used to provide fuller detail to the basic boilerplate statements contained in the workers' declarations.  While he admits that a few workers were asked to wash the trays at home, most were not.

Taken as a whole, the declaration of the workers do not show commonality with respect to washing trays at home.  Their statements are pointedly mixed and the court can not conclude that even a majority of the declarations support Plaintiffs' assertion regarding home tray washing. Plaintiffs then argue that notwithstanding the conflicting declarations, "Defendant's superintendent testimony suggests a common classwide policy prior to 2006 of Giumarra knowingly permitting fieldworkers to wash trays at home. When a common policy can be established, individual variations will not always defeat class certification. Cf. Delagarza v. Tesoro Ref. & Mktg. Co., 2011 U.S. Dist. LEXIS 101127, *19-22 (N.D. Cal. September 8, 2011)." Doc. 115, Plaintiffs Objections, 9:11-15.  Giumarra disagrees, saying "The evidence showed that different crews and different workers managed these tasks differently, but there was also no dispute that every worker could and did clean trays in the field." Doc. 117, Giumarra's Response, 7:7-9.

Plaintiffs refer to the depositions of the superintendants who were in the fields and in overall charge of grape harvesting crews.  Giumarra used four or five superintendants who each supervised a different set of harvesting crews.  Of the practices before the change, Superintendant David Stanley states that "We used to not clean them - or I didn't instruct them to clean them. They may have cleaned them on their own....If I saw one that was dirty, I probably would [have]

instructed them to clean them." Doc. 85, Part 2, Stanley Deposition, 38:12-14 and 39:12-13.  Of the practices before the change, Superintendant Joseph Giumarra states "I don't recall they took them home to wash them. I recall they took them home when they finished a ranch and they were moving to another ranch....They washed them in the fields because that was a lot cheaper for them, and everybody to leave them at work - leave them on the job site rather than lugging them and taking them home." Doc. 85, Part 3, Joseph Giumarra Deposition, 70:16-25.  The parties also provide the deposition of Superintendant Leroy Kuntz, but it did not include any questioning on tray washing. See Doc. 85, Part 1, Kuntz Deposition.  No deposition of Superintendant Corby Robinson was provided.  This evidence does not support Plaintiffs' contention of a classwide policy of knowingly permitting workers to wash trays at home.  David Stanley's statement is ambiguous.  While it does not state that workers took the trays home to wash, it is consistent with possibility.  Joseph Giumarra's statement contradicts Plaintiffs' assertion.  He claims that even before the change, the workers washed trays in the fields and not at home.  Plaintiffs have not provided enough evidence of a common policy sufficient to excuse individual variation in worker declarations.

    Certification of a tray washing class is denied.

**B. Giumarra Objections**

**1. Late Meal Break Class**

    Judge Thurston recommends certification of a class consisting of "All fieldworkers employed by Giumarra from 11/9/2001 to the present" who were not provided a timely meal period. Under California law as embodied in IWC Order 14, a 30 minute meal break must be provided within 5 hours of the start time. Cal. Code Regs. Tit. 8 § 11140, subsection 11 (2013). Giumarra argues that there is a lack of commonality and a predominance of individual issues over common ones.

    There is varying evidence to show that meals were taken at 11:30 AM or 12:00 PM.  It appears to be acknowledged that the start time was variable, but generally 6:30 AM or earlier. Thus, a 6:30 AM start time and a meal period at 11:30 AM would comply with the labor

regulations, but either an earlier start time or a later lunch would result in a violation. In critical part, Plaintiffs point to the deposition of Jeffrey Giumarra, Giumarra's Fed. Rule Civ. Proc. 30(b)(6) designee. Regarding meal periods, he explains:

> Q. Can you describe the company policy? I know that the policy is to take lunches, is there a time when the company requires that they be taken by?
> A. We're taking lunch no later than five hours after the start of work.
> Q. And has that been the case the whole time period in question so going back to end of 2001?
> A. I don't know.
> Q. Do you know if there's been a change in that policy during the time you've worked there?
> A. Yes.
> Q. And what was that change?
> A. At one time we took lunch at typically noon. And at some stage we changed it to be five hours after the start of the day.
> Q. Do you know when that happened?
> A. No.
> Q. You don't have any general idea of when that was?
> A. 2006.

Doc. 44, Jeffrey Giumarra Deposition, 41:10-42:4. A witness designated under Fed. Rule Civ. Proc. 30(b)(6) provides "complete, knowledgeable and binding answers on behalf of the corporation." Giufu Li v. A Perfect Day Franchise, Inc., 2011 WL 3895118, *2 (N.D. Cal. Aug. 29, 2011), quoting Marker v. Union Fidelity Life Insurance Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989). Jeffrey Giumarra's statement is strong evidence that the meal took place at noon before the change in 2006. As stated above, a meal break taking place at 12:00 PM would constitute a violation as workers started their shift by 6:30 AM. Further, Jeffrey Giumarra's answers affirm that Giumarra has always had company-wide policies with regards to meal times, both before and after the change.

Regarding the meal period timing after 2006, Plaintiffs have provided a number of time sheets from various days in March through September of 2007 to 2011. Docs. 61 and 62. These records show that start times were either 6:00 AM or 6:30 AM (with the occasional 6:15, 6:45, or 7:00 AM) and the meals were at 11:30 AM or 12:00 PM. About half of the start times were at 6:00 AM. On those days, a meal break was not provided until 5½ to 6 hours after the start of the shift in violation of the IWC Order 14. Cal. Code Regs. Tit. 8 § 11140, subsection 11 (2013). Further, on several days when the start time was at 6:30 AM, the meal was not taken until 12:00

PM, which also constitutes a violation. Superintendant David Stanley explains that the meal time was dependent upon when a truck delivering food arrived: "Sometimes the lunch truck does not arrive at 11:30 as needed, so we cannot take lunch until the truck arrives, which might not be until 15 of 30 minutes later. So the only consistent thing I can say about lunch is that lunch is taken when the lunch truck arrives." Doc. 74 David Stanley Declaration, 3:11-14.

  Giumarra argues that there was never any violation of the meal period regulations by proffering the declarations of workers who state that they started work at 6:30 AM and took lunch at 11:30 AM. Specifically, the declarations all uniformly state that "During the harvest season, our usual starting time is 6:30 a.m. and we usually finish at 4:00 p.m." and "the longer lunch period, which starts at 11:30 a.m." Doc. 72, Part 2, Rafael Ramirez Aguilar Declaration, 1:20 and 3:6 (pages 2 and 4 of 100); see also Docs. 72, Parts 2-14. Again, the court relies on Bruce Carroll's declaration to provide further detail on the workers' boilerplate statements. He explains that the workers told him they started at 6:30 AM in "the early months of the table grape harvest." Doc. 72, Bruce Carroll Declaration, 9:13. Giumarra's workers do not say that they always started at 6:30 AM; neither does Bruce Carroll. The time records provided by Plaintiffs show that the start time was earlier during much of the summer, which would necessarily cause a violation as the meal period was not taken until 11:30 AM at the earliest. Of note, in all of the worker declarations provided by Giumarra, the workers uniformly claim that the meal period "starts at 11:30 a.m." without any mention of the fact that meal periods would sometimes be taken later, as shown by the time records and David Stanley's declaration. Bruce Carroll does not give any detail as to what the workers said regarding the timing of the meal period. The declarations provided by Giumarra do not demonstrate that workers were provided a meal within 5 hours of the start of shift throughout the harvest season.

  Giumarra claims that individual issues predominate as "with 237 employees saying they took timely meal breaks and others saying they did not, there is no way to avoid an individualized inquiry of each employee as to whether their right to break under IWC Order No. 14 was violated, and if so, for which days." Doc. 114, Giumarra Objections, 19:12-16. As discussed above, upon closer examination, Giumarra has not provided worker declarations that

11

state the meal period regulations were consistently followed.  As to individual examination of damages, Giumarra's timekeeping records should solve that problem easily.  "[T]he Ninth Circuit has suggested that a relevant factor in the predominance analysis is whether damages calculations would be straightforward." Harris v. Vector Mktg. Corp., 753 F. Supp. 2d 996, 1022 (N.D. Cal. 2010), citing Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001).  In this circumstance, the common issues clearly predominate.

Certification of a late meal period class is granted.

**2. Tool Class**

Judge Thurston recommends certification of a class consisting of "All fieldworkers employed by Giumarra from 11/9/2001 to the present" who were "required to purchase necessary tools." Doc. 109, F&R, 43:24.  Cal. Labor Code § 2802(a) states "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."  Giumarra claims it "provides tools for its employees, and has done so throughout the relevant period." Doc. 114, Giumarra Objections, 20:4-5.  Giumarra argues that there is a lack of commonality and a predominance of individual issues over common ones.

Again, the court examined a random sampling of the worker declarations provided by the parties.  From Plaintiffs, there are 17 declaration in docket entry 48, which covers workers named Alvarez through Corona.  Six workers stated that "Giumarra required me to purchase my own tools in order to perform my job duties" with a statement as to the specific tools they had to purchase. Doc. 48, Aurelio Anaya Declaration, 4:21-23 (page 12 of 117); see also Declarations of Felipe Bautista, Teresita Ortega Calisto, Abel Carbajal, Jesus Carrera, and Augustin Lopez Castelan.  Nine other workers stated that Giumarra forced them to buy their own tools and "Also if any of the tools that the company provided (such as the trays and the hooks) were lost, broken or stolen, the company deducted the cost from our checks." Doc. 48, Maria Hernandez Alvarez Declaration, 5:21-6:2 (pages 6-7 of 117); see also Declarations of Maria de Lourdes Baez,

Alfredo Caldera, Mauricia S. Calvillo, Alfredo Cano, Hector Luis Caquias, Juana Carbajal, Maria Cervantes, and Esther Corona.  Two workers did not make any statement about tools. Doc. 48, Declarations of Domingo Balderrama and Juan Carlos Fierro Ciriaco.  In the 17 declarations, 15 workers say that Giumarra makes them pay for tools in one way or another.

From Giumarra, there are 20 declaration in docket entry 72, part 2, which covers workers named Aguilar through Astorga.  One worker, Maria Teresa Aincivuru, worked solely as a packer and makes no representations as to tools; her job appears to be sufficiently different than that of the other declarants to warrant exclusion from the sample for the purpose of analyzing tools.  Eight of the workers state that they have never paid for any tools and that Giumarra replaces tools free of charge: "Giumarra pays for all the tools and equipment, such as clippers, tubs, tables, scales and carts, that we need to get our jobs done. The Company provides us with everything we need for work in any season, and if we lose or break tools or equipment, the Company replaces them with no charge." Doc. 72, Part 2, Guillermo Alamilla Declaration, 4:9-12 (page 14 of 100); see also Declarations of Abel Alejo, Jesus Zavala Alvarez, Luz Maria B. Ambriz, Rosa Maria Araujo, Jorge Arias, Araceli Astorga, and Ignacio Robledo Astorga.  Ten workers say only that they have never paid for any tools while they are silent as to replacing tools provided by Giumarra: "Giumarra pays for all the tools and equipment, such as clippers, tubs, tables, scales and carts, that we need to get our jobs done. The Company provides us with everything we need for work in any season, and I have never been required to pay for any tools or equipment that I have used at Giumarra." Doc. 72, Part 2, Rafael Ramirez Aguilar Declaration, 4:7-10 (page 5 of 100); see also Declarations of Guadalupe Soto Alcala, Guadalupe Aldana, Miriam Alejo, Maria Alvarado, Mario Alvarez, Josefa Andrade, Leticia Arredondo, Diego Astorga, and Juana Astorga.  One worker, Antonio Angeles, provides more detail and states "Giumarra pays for all the tools and equipment, such as clippers, tubs, tables, scales and carts, that we need to get our jobs done. The Company provides us with everything we need for work in any season, and if we lose or break tools or equipment, the Company replaces them with no charge. We have sometimes been told that we might have to pay for tools or equipment that we lose or break, but I have never been required to pay anything for tools or equipment." Doc. 72,

13

Part 2, Antonio Angeles Declaration, 4:9-14 (page 64 of 100).

  Antonio Angeles's declaration is consistent with the explanation given by Bruce Carroll: "A fairly large number of workers who said that they had never been required to pay for any of the tools or equipment they have used were under the impression that workers are required to pay for tools or equipment they lose or break....Apparently, some foremen and/or supervisors still tell their workers that they will be required to pay for lost or broken tools." Doc. 72, Bruce Carroll Declaration, 12:6-14.  Thus, the declarations that are silent with regards to the cost of replacing Giumarra-provided tools must be interpreted to mean that the workers believed they were expected to pay for any replacement tools.  Of the 19 relevant declarations, 10 workers support Plaintiffs' claim that workers had to pay for replacement tools.

  While the declarations do present a mixed picture, the vast majority of Plaintiffs-provided declarations and a majority of Giumarra-provided declarations support the assertion that workers were expected to pay for replacements tools.  The declarations are more uniform on this issue than the issue of washing trays at home, discussed above.  Critically, Plaintiffs also provide strong evidence of a company policy that either forces workers to buy their own tools or to pay for any replacement tools.  Jeffrey Giumarra, Giumarra's person most knowledgeable, admitted that workers' pay was deducted if they lost tools. Doc. 44, Jeffrey Giumarra Deposition, 120:3-4 (page 23 of 50).  This is consistent with the statements of the superintendants.  Superintendant Joseph Giumarra said that workers would sometimes be docked pay for lost tools before the change. Doc. 75, Joseph Giumarra Declaration, 3:6-8.  Superintendant Leroy Kuntz mentioned that Giumarra used to require workers to pay a deposit to use company tools. Doc. 76, Leroy Kuntz Declaration, 3:17-18.  Superintendent David Stanley says that even after the change, workers under his supervision have to purchase their own equipment as "we still generally do not provide replacements for lost tools for my crews." Doc. 74, David Stanley Declaration, 3:20-21.  The statements of the Giumarra supervisors are generally consistent with each other and demonstrate that Giumarra has a policy that results in workers being subjected to circumstances in which they have to pay for their own tools.  As a company policy can be established, some individual variation will not defeat class certification. Cf. <u>Delagarza v. Tesoro Ref. & Mktg. Co.</u>,

**14**

2011 U.S. Dist LEXIS 101127, *19-22 (N.D. Cal. 2011) ("that some workers can leave the premises with permission does not negate Plaintiffs' assertion that there is a general default policy against leaving the premises").  Plaintiffs have presented sufficient evidence to demonstrate commonality.

As to whether common issues predominate over individual issues, Giumarra argues that each worker's individual damage calculation would defeat predominance.  However, the cases cited for that proposition can all be distinguished as they involved truly diverse and varying expenses.  In one case, the court said, "Plaintiff has not shown that expenses were in the same ballpark across the class." Ruiz v. Affinity Logistics Corp., 2009 U.S. Dist. LEXIS 130728, *24 (S.D. Cal. Jan. 28, 2009).  In another case, involving sales representatives, the court noted that the kinds of expenses were widely varying and indeterminate, potentially including the costs of using a car, riding a bus, walking, using a cell phone plan, or purchasing clothing; the inability to classify expenditures into "common types of expenses" was a complication that defeated predominance. Harris v. Vector Mktg. Corp., 753 F. Supp. 2d 996, 1022 (N.D. Cal. 2010).  This point was echoed by one court which stated, "If there were a single expense, or a set of discrete expenses, common to the entire putative class, and that class members were required to cover themselves, the Court would see the merits in class treatment." Norris-Wilson v. Delta-T Group, Inc., 270 F.R.D. 596, 610 (S.D. Cal. 2010).  The expense in this case is simply the purchase of a limited set of tools.  Each category of tool would have to be analyzed to determine if that category is "necessary" under the meaning of Cal. Labor Code § 2802. See Takacs v. A.G. Edwards & Sons, Inc., 444 F. Supp. 2d 1100, 1125 (S.D. Cal. 2006).  Indeed, in another case, the court certified a similar class, stating simply, "Plaintiffs assert that Labor Ready charged day laborers for the use of necessary work-related equipment or required them to purchase such equipment. Defendant argues that it provided all necessary work related equipment (except gloves, which it asserts it was required to sell because they are not returnable under California health standards). The Court finds that common issues of law and fact regarding claims by day laborers for unreimbursed work related expenses predominate over individual issues." Ramirez v. Labor Ready, 2002 WL 1997037, * 4 (Cal. Sup. Ct. July 22, 2002).

Certification of a tool class is granted.

### IV. Order

The Findings and Recommendation, filed July 5, 2012 (Doc. 109) is ADOPTED in full:

1. Plaintiffs' request to certify the Unpaid Rest Break Class is DENIED.

2. Plaintiffs' request to certify the Late Meal Break Class, comprised of "all fieldworkers employed by Giumarra from 11/9/2001 to the present" is GRANTED.

3. Plaintiffs' request to certify the Piece-Rate Overtime Class is DENIED.

4. Plaintiffs' request to certify the Off the Clock Class is DENIED.

5. Plaintiffs' request to certify the Tool Class, comprised of "all fieldworkers employed by Giumarra from 11/9/2001 to the present" is GRANTED.

6. Plaintiffs' request to certify the On-Duty Meal Break Class is DENIED.

7. Plaintiffs are ordered to file a proposed notice within twenty-one (21) days of the filing of this order for the court's approval.

IT IS SO ORDERED.

Dated:   May 31, 2013

SENIOR DISTRICT JUDGE