1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**EASTERN DISTRICT OF CALIFORNIA**

7
8
9
10
11
12
13

**RAFAEL MUNOZ, LIDIA CRUZ, YANET HERNANDEZ, SANTOS R. VALENZUELA, TRINIDAD RUIZ, MARTA A. RINCON de DIAZ, RAMON CERVANTES PERALES, and HUGO PEREZ RIOS, on behalf of themselves, and all current and former employees, and on behalf of a class of similarly situated employees,**

**CASE NO. 1:09-CV-0703 AWI JLT**

**ORDER RE: PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

**(Doc. 147)**

14

**Plaintiffs**

15

**v.**

16
17

**GIUMARRA VINEYARDS CORPORATION; and DOES 1-20**

**Defendant**

18
19

**I. Background**

20

This case has a complex history but traces back to a suit filed by the Plaintiffs on behalf of

21

themselves and a class of others similarly situated against Defendant Giumarra Vineyards

22

Corporation on December 16, 2005.  Plaintiffs allege that Defendant has violated a number of

23

federal and California laws governing employee wages and working conditions.  Ultimately, class

24

certification was granted for two classes of employees who were allegedly provided late meal

25

breaks and required to purchase their own tools.

26

Plaintiffs have filed a motion for partial summary adjudication. Doc. 147.  Defendant

27

opposes the motion. Doc. 152.  The matter was taken under submission without oral argument.

28

## II. Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party can not "'rest upon the mere

allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated ...by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003). If the non-moving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1103 (9th Cir. 2000).

### III. Discussion

Regarding their late meal break period claim, Plaintiffs seek to have a series of facts summarily adjudicated to be true: (1) Defendant's sign-in sheets show the identity of workers who

worked more than six hours and did not receive meal period within five hours of their recorded start time, (2) the sign-in sheets are the best evidence of worker start and stop times, (3) the sign-in sheets are the best evidence of worker meal period times, (4) prior to 2006, Defendant maintained a 12:00 noon meal period policy, (5) Plaintiffs' summary of the sign-in sheets show the number of late meal periods for the class prior to 2006, (6) Plaintiffs' summary shows the number of late meal periods for the class from 2006 to present, (7) Plaintiffs' summary shows the number of unrecorded meal periods from 2006 to present, and (8) Defendant did not provide premiums for late or missed meal periods. See Doc. 147-2.   Plaintiffs rely largely on a summary of the evidence "which provides a description of the relevant contents of Giumarra's entire timekeeping system from 2001-2012." Doc. 147-2, 2:4-5.


**A. Cognizability of Late Meal Period Claim**

Defendant disputes that "delaying the meal break after five hours amounts to the same thing as failing to 'provide' meal periods such as would allow a penalty under Labor Code § 226.7.  Plaintiffs cite no authority for the proposition that a late lunch break is the same as no lunch break." Doc. 152, 12:28-13:3.  Defendant states "The court would be acting well within its discretion to dismiss the late meal period claim altogether on the grounds that (1) Giumarra substantially complied with an ambiguous statutory scheme, and (2) to the extent crews may have commenced meal breaks more than five hours after the start of work, such violations were de minimis under the circumstances." Doc. 179, 8:1-5.

Though there is not abundant authority on the issue, the statutory language and case law do not support Defendant's position.  "If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission...the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c).  "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except

that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee." Cal. Lab. Code § 512(a). The applicable Industrial Welfare Commission wage order similarly states "Every employer shall authorize and permit all employees after a work period of not more than five (5) hours to take a meal period of not less than thirty (30) minutes, except that when a work period of not more than six (6) hours will complete the day's work, the meal period may be waived by mutual consent of employer and employee." Cal. Code Regs. Tit. 8 § 11140 subsection 11.  "The IWC's wage orders are to be accorded the same dignity as statutes. They are 'presumptively valid' legislative regulations of the employment relationship." Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1027 (Cal. 2012).  In that case, dealing with Section 512, the California Supreme Court stated "This provision could be interpreted as requiring employers either to provide a meal break after no more than five hours of work in a day, absent waiver, or simply to provide a meal break at any point in scheduled shifts that exceed five hours.  The first interpretation is the correct one: the statute requires a first meal period no later than the start of an employee's sixth hour of work." Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1041 (Cal. 2012).  Thus, the timing of meal periods is most definitely incorporated in California law.  Other courts have recognized that a late meal period is a valid theory underlying a meal period claim. See Larios v. Nike Retail Servs., 2013 U.S. Dist. LEXIS 112761*14 (S.D. Cal. Aug. 9, 2013) (leave to amend granted as late meal period theory not futile).  Section 226.7 provides for a penalty if the meal period is not provided in accordance with the requirements of the IWC wage order.  The applicable wage order specifically mandates that employees be provided with a meal period within five hours (unless the shift is only six hours long).  Thus, a late meal period is not provided within the meaning of Section 226.7, giving rise to the penalty.

Defendant argues, "As an equitable matter, it is not appropriate to apply the same remedy for a missed meal break as for a late meal break." Doc. 152, 13:4-5.  Depending on the precise facts, these two situations give rise to different employer obligations.  For a missed meal break, an employer is obligated to pay for the underlying time worked, any overtime implications for the additional time worked, and the Section 226.7 penalty.  For a late meal break, an employer is only

1    obligated to pay the Section 226.7 penalty.  This result does not seem to be inequitable.

2

3    **B. Jeffrey Giumarra's Rule 30(b)(6) Testimony**

4          Plaintiffs asked Defendants for a person most knowledgeable under Fed. R. Civ. Proc.

5    30(b)(6) on "Giumarra's employment, labor, and wage and hour policies and practices (including

6    without limitation the topics of hours worked, payment for hours worked, rest and meal periods,

7    reimbursements, cleaning of bandejas, pre and post-shift duties)....Giumarra's timekeeping

8    procedures, policies or practices (including without limitation the recording procedures set forth in

9    Wage Order 14 for start and stop of work periods and meal periods)." Doc. 147-4, 3:9-18.

10   Defendant produced Jeffrey Giumarra for deposition. See Doc. 44.  Resolution of Plaintiffs'

11   motion is partially dependent upon the weight Jeffrey Giumarra's deposition testimony should be

12   given as a matter of law.  One Eastern District opinion surveyed the extant case law and set out the

13   three positions taken by various courts:

14          There is a marked divide in the caselaw. Some courts suggest that an agency is
            bound by the testimony of its Rule 30(b)(6) designee.  Other courts hold that
15          'testimony given at a Rule 30(b)(6) deposition is evidence which, like any other
            deposition testimony, can be contradicted and used for impeachment purposes,' and
16          that such testimony does not 'bind' the designating entity 'in the sense of [a]
            judicial admission.'  This treats the testimony as that of any witness, making it
17          subject to correction and/or impeachment.  Other courts adopt a middle ground and
            hold that a party cannot rebut the testimony of its Rule 30(b)(6) witness when, as
18          here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no
            adequate explanation for the rebuttal.
19

20   Coalition v. McCamman, 725 F. Supp. 2d 1162, 1172 (E.D. Cal. 2010), citations omitted.  The

21   Ninth Circuit has not yet ruled on this issue.  Though the opinion in Coalition formally states "It is

22   not necessary to resolve the competing lines of authority on the binding effect of testimony..." the

23   court appears to prescribe the third position for future developments in the case, advising that "The

24   Gingras [Rule 30(b)(6)] testimony may be amplified or explained, so long as a material change or

25   retraction is not made without a reasonable basis." Coalition v. McCamman, 725 F. Supp. 2d

26   1162, 1173 (E.D. Cal. 2010).  This court similarly adopts the third position, that Rule 30(b)(6)

27   testimony can only be rebutted when there is an explanation for why the earlier testimony is

28   mistaken.  In finding a deposition notice improper, an Eastern District opinion explained the

                                                    6

1   importance of this procedure: "Rule 30(b)(6) is a powerful and important discovery tool. A Rule

2   30(b)(6) deposition notice serves a unique function: it is the sworn corporate admission that is

3   binding on the corporation." Hardin v. Wal-Mart Stores, Inc., 2011 WL 11563217, *2 (E.D. Cal.

4   Dec. 2, 2011).  To effectuate the purpose of Rule 30(b)(6), the weight of the resulting testimony is

5   not to be lightly disregarded.  As one court explained, "Unless it can prove that the information

6   was not known or was inaccessible, a corporation cannot later proffer new or different allegations

7   that could have been made at the time of the 30(b)(6) deposition." Rainey v. American Forest &

8   Paper Ass'n, 26 F. Supp. 2d 82, 94 (D.D.C. 1998).  "[C]ourts have allowed a contradictory or

9   inconsistent affidavit to nonetheless be admitted if it is accompanied by a reasonable explanation.

10  Stanley argues that the contradiction is understandable or reasonable because Hreha's analysis is

11  more extensive.  This type of explanation is unacceptable and ignores Stanley's duties under Rule

12  30(b)(6).  Stanley has not alleged that it did not have access to material facts prior to the 30(b)(6)

13  corporate deposition, that the expert report was based on newly discovered evidence, or that

14  Powell [person most knowledgeable] was somehow confused or made an honest mistake." Hyde

15  v. Stanley Tools, 107 F. Supp. 2d 992, 993 (E.D. La. 2000).

16       In the summary judgment context, the Ninth Circuit rule is that a party can not create a

17  dispute of facts by submitting an affidavit which contradicts earlier deposition testimony. Kennedy

18  v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991).  The purpose of the rule is to prevent a

19  party who has been deposed from presenting an issue of fact during summary judgement by

20  simply submitting an affidavit contradicting prior testimony. Yeager v. Bowlin, 693 F.3d 1076,

21  1080 (9th Cir. 2012).  For this motion, Defendant can not create a dispute by presenting evidence

22  that contradicts Jeffrey Giumarra's deposition testimony without an adequate explanation for the

23  discrepancy.

24

25  **C. Admissibility of Plaintiffs' Summary of the Evidence**

26       Defendant has provided Plaintiffs a large volume of worker sign in sheets (approximately

27  45,000 pages). Doc. 147-3, Stan Mallison Declaration, ¶ 3.  On these sheets, the forepersons fill in

28  the information of hours worked in a day and then the employee signs in acknowledgment. Doc.

7

44, Jeffrey Giumarra Deposition, 35:3-20.  The parties agree that these worker sign in sheets are the only documents Defendant uses to record start and stop times and meal periods. Doc. 153, Defendant Statement of Genuine Issues, 2:16-19.  Plaintiffs have created a one page summary of that evidence. Doc. 147-3, Stan Mallison Declaration, ¶ 6.  The summary lists out the number of shifts that appear to set out late meal periods (broken down into a few categories based on date of occurrence) and shifts in which no meal period was recorded. Doc. 147-6.

Federal Rule of Evidence 1006 allows evidence to be summarized when the volume of the documents makes them impractical or impossible. United States v. Johnson, 594 F.2d 1253, 1255 (9th Cir. 1979).  Summaries are admissible under Rule 1006 if (1) the underlying documents forming the basis of the summary are admissible and (2) the opposing party was able to inspect the underlying documents prior to their introduction. United States v. Crisp, 190 F.R.D. 546, 553 (E.D. Cal. 1999).  Business records are admissible as pursuant to Federal Rule of Evidence 803(6) when the records are "(1) made or based on information transmitted by a person with knowledge at or near the time of the transaction; (2) made in the ordinary course of business; and (3) trustworthy, with neither the source of information nor method nor circumstances of preparation indicating a lack of trustworthiness." United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988). A business record does not have to be accurate to be admissible since generally, allegations that an exhibit is inaccurate goes to the weight of the evidence, not its admissibility. United States v. Scholl, 166 F.3d 964, 978 (9th Cir. 1999).  A business record is not trustworthy when it is prepared for purposes of litigation. Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1259 (9th Cir. 1984).  Whether a business record meets the standard of trustworthiness is up to the discretion of the district court. Chrysler v. City of W. Covina, 165 F.3d 915 (9th Cir. 1998).  In addition, a summary "must 'fairly represent' the underlying documents." Davis & Cox v. Summa Corp., 751 F.2d 1507, 1516 (9th Cir. 1985).  A summary need not be absolutely perfect to represent the underlying documents fairly. United States v. Turner, 528 F.2d 143, 157 (9th Cir. 1975) ("Apart from minor variations, this summary fairly represents the percentages of conversations of different varieties and actions by the monitoring agents as revealed in the interception logs for each of the four telephone numbers actually tapped").

Defendant agrees the sign-in sheets, which are the underlying documents, are business records. Doc. 152, 7:1-2.  However, Defendant argues the records are not trustworthy because Giumarra did not attach great importance to recording the meal breaks with a high degree of accuracy and Aaron Woolfson, Plaintiffs' own expert, has testified that the underlying data is unreliable. Doc, 152, 8:8-12:20.  Separately, Defendant also claims the summary does not accurately reflect the business records. Doc. 152, 7:4-5.

**1. Reliability of the Business Records**

Defendant now asserts that "Giumarra attached no great importance to recording the time of meal breaks with a high degree of accuracy," arguing that prior to the California Supreme Court's ruling in <u>Brinker Restaurant Corp. v. Superior Court</u>, 53 Cal. 4th 1004 (Cal. 2012), "it was unclear whether employers had a duty to commence the meal period no later than the end of the first five hours of work....Since the employer's obligation with respect to the timing of meal breaks is unclear, even more so prior to <u>Brinker</u>, that may account for the lack of attention to recording this information precisely." Doc. 152, 8:9-9:1.  In support of this assertion, Defendant provides declarations from various superintendents who were in charge of supervisors and crew forepersons who emphasize that these worker sign in sheets were not used to calculate wages. See Doc. 74, David Stanley Declaration, ¶ 9 ("We use sign-in sheets in the fields mainly for the purpose of cross-checking the names of the workers who show up for work each day....The sign-in sheets are not used for the purpose of recording hours or determining pay.  That is what the time cards are for.  Therefore, the sign-in sheets are not a reliable indicator of when, for example, lunch might actually be taken"); Doc. 75, Joseph Giumarra Declaration, ¶ 6 ("I should also note that the main purpose of the sign-up sheets is simply to record the names of employees who reported for work.  These sign-up sheets are not used as a means of calculating hours worked, or computing wages.  That is done by time cards"); Doc. 76, Leroy Kuntz Declaration, ¶ 8 ("we use sign-in sheets in the fields mainly for the purpose of cross-checking the names of the workers who show up for work each day.  We also record starting, stopping, and lunch times on those sign-in sheets, but the sheets are not used for the purpose of recording hours or determining pay.  That is what the

1   time cards are for.  Therefore, the sign-in sheets do not provide a reliable indicator of when, for

2   example, the mid-day meal break was actually taken").

3         The applicable IWC wage order requires employers to keep "Time records showing when

4   the employee begins and ends each work period. Meal periods, split shift intervals and total daily

5   hours worked shall also be recorded. Meal periods during which, operations cease and authorized

6   rest periods need not be recorded." Cal. Code Regs. Tit. 8 § 11140 subsection 7(A)(3).  One of the

7   superintendents, Joseph Giumarra, stated that forepersons were told to record information about

8   meal periods on the worker sign in sheets. Doc. 83-5, Joseph Giumarra Deposition, 22:15-23 and

9   26:13-27:8.  Joseph Giumarra affirmed that forepersons were told to record this information

10  accurately but states "I'm not saying they couldn't have made a mistake." Doc. 83-5, Joseph

11  Giumarra Deposition, 35:12-15.  Jeffrey Giumarra, Defendant's person most knowledgeable on

12  timekeeping procedures, similarly agreed that forepersons tried to record the meal times

13  accurately. Doc. 44, Jeffrey Giumarra Deposition, 108:9-16.  Of note, Defendant's declarations are

14  from superintendents, who do not themselves fill in worker sign in sheets.

15        Defendant also points out that Plaintiffs' expert witness had previously stated

16  "Giumarra data is clearly deficient for almost all purposes of analyzing wage and hour violations

17  and to the extent to which it fails to include original employee punch data and only reflects

18  manager edited data does not reflect the actual contemporaneous, original evidence in this case."

19  Doc. 52, Aaron Woolfson Declaration, ¶ 17.  However, that earlier statement was made in

20  reference to three excel files from Defendant's payroll system. Doc. 52, Aaron Woolfson

21  Declaration, ¶ 11.  The worker sign in sheets are a different dataset altogether.  Aaron Woolfson's

22  declaration has no bearing on the trustworthiness of the documents at issue.

23        The evidence presented tends to indicate that the information on the worker sign in sheets

24  is generally reliable but may not be completely accurate due to mistakes.  Anything comprising

25  45,000 pages will probably contain mistakes.  Arguments about the accuracy of a document go to

26  its weight, not its admissibility; these types of concerns may be explored in testimony and cross-

27  examination at trial. United States v. Catabran, 836 F.2d 453, 458 (9th Cir. 1988).  The underlying

28  business records, the worker sign in sheets, are admissible business records.

**2. Accuracy of the Summary**

Defendant argues the summary does not fairly represent the underlying documents because, (1) the summary includes employees who do not belong to the class of fieldworkers, (2) Plaintiffs failed to accurately count the number of allegedly late lunches, and (3) the summary includes nearly 50,000 alleged late meal periods where the sign-in sheets do not have a meal period recorded. Doc. 152, 7:7-26.  Plaintiffs respond that, (1) the definition of the fieldworker class is broad enough to include workers besides grape pickers, (2) Defendant misinterpreted the coding sheet which does not include the data from the sign in sheets and the actual summary accurately counts the number of alleged late lunches, and (3) Plaintiffs have revised their summary to exclude unrecorded meal periods. Doc. 174, 2:6-6:6.

**a. Definition of Fieldworker**

The late meal period certified class is defined as "all fieldworkers employed by Giumarra from 11/9/2001 to the present." Doc. 121, 16:6-7.  Defendant objects that "plaintiffs have included [in the summary] numerous crews who do not belong to the class of fieldworkers that has been defined by the court.  These include tractor drivers, irrigators, and similar kinds of workers who work more autonomously and do not always take breaks at fixed times.  Plaintiffs have also included foremen in the class, even though foremen should not be included as fieldworkers either." Doc. 152, 7:7-11.  Defendant explains that "different evidentiary consideration apply to the scheduling of meal breaks for these employees.  In the case of foremen, they are often the people calling the mid-day break.  In the case of irrigators and tractor drivers, they may be taking breaks at their own convenience instead of as a group." Doc. 179, 4:11-15.  Plaintiff asserts "the class definition is broad enough to include these workers" and that "these workers, just like the grape pickers and packers, are represented in Defendant's sign-in sheets and the same common proof of violations apply to these workers." Doc. 174, 5:11-18.

When considering Plaintiffs' motion for class certification, Magistrate Judge Thurston found commonality in part because the documentary evidence demonstrated that "Giumarra gave

1    its employees late meal breaks." Doc. 109, 26:19-20.   In the motion for class certification,

2    Plaintiffs and Defendant provided declarations from workers holding a variety of position.   These

3    workers described themselves as pickers, pruners, counters, packers, benchboys, and general

4    laborers among other terms. See e.g. Docs. 48 and 72-3.   However, these employees appear to

5    uniformly state they worked under the supervision of a foreperson (or as a member of a person's

6    crew which the court presumes to mean the same thing). See e.g. Docs. 48 and 72-3.   This was the

7    context in which class certification was considered.   The court assumed that the class members

8    were told each day by supervisors or forepersons when they could have their meal periods.

9    Insofar as these other positions (forepersons, tractor drivers, irrigators, etc.) had individual

10   discretion to determine when they could take their meal break, Defendant may have a different set

11   of legal defenses with respect to these employees that destroy commonality for Fed. R. Civ. Proc.

12   23 purposes.   Insofar as these other employees did work under a supervisor or foreperson that

13   determined when they were to take their meal period, they are part of the class.   Plaintiff's

14   summary must be modified.

15

16   **b. Failure to Accurately Count the Number of Late Lunches**

17           Defendant argues Plaintiffs wrongfully assumed the employees who reported to work on a

18   given day also worked every single remaining day of that week and that workers reported to and

19   left work at the same times each day. Doc. 152, 7:13-20.   Jeffrey Giumarra declared that of the

20   153 sign-up sheets reviewed by Giumarra not one was accurately counted. Doc. 155, Jeffrey

21   Giumarra Declaration, ¶ 14.   Plaintiffs claim their summary is accurate and that Defendant's

22   arguments are based on the coding sheet template which does not include data. Doc. 174, 2:8-11.

23   Plaintiffs argue the summary does not assume workers worked every day of the week or all

24   reported to and left work at the same time. Doc. 174, 3:23-26.   As evidence supporting these

25   claims Defendant attached as an exhibit a sign in sheet and a document Defendant said was

26   Plaintiffs' data extracted for that specific sign in sheet. Doc. 155-2.   In response, Plaintiffs

27   submitted their data for that specific sign in sheet. Doc. 176-3.   After reviewing these exhibits, it

28   appears Defendant's arguments may have based on Plaintiffs' coding sheet template.

Plaintiffs also submitted as part of their reply a sample portion of 42 worker sign in sheets and the data Plaintiffs extracted from those sheets.  In response, Defendant simply reiterates that "Giumarra stands by its assertion that plaintiffs' originally assumed that the employees who reported to work on a given day also worked every single remaining day of that week, and also assumed that all members of the crews reported and left work at the same times each day." Doc. 179, 4:21.  Defendant does not refer to specific entries in this dataset that Defendant claims are erroneous.  Requiring a court, "to search the entire record, even though the adverse party's response does not set out the specific facts or disclose where in the record the evidence for them can be found, is unfair." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

Instead, the court has reviewed the data entries for workers with last names starting with L and V (randomly chosen to be a representative sample) in the exhibits submitted by Plaintiff. Based on this review it does not appear that Plaintiffs assumed employees who reported to work on a given day also worked every single day of that week.  The sign-in sheet ending on August 21, 2005 for crew 48 shows that Lugo reported to work on Monday but was absent the rest of the week. Doc. 176-12, at 5.  Plaintiffs' summary only counts a late lunch for Lugo on Monday and then reflects that no late lunches were counted for the rest of the week. Doc. 176-12, at 2.  The sign-in sheet for September 17, 2006 for crew 6 shows that on Monday, Wednesday, Thursday and Friday work started at 6:30 and lunch was at 11:30 and on Saturday, work started at 7:30 and lunch was at 11:30. Doc. 176-21, at 5.  Plaintiffs' summary does not count late lunches for any worker on Monday, Wednesday, Thursday, Friday, or Saturday. Doc. 176-21, at 2.  It appears that Plaintiffs' data takes into account when workers left early on a particular day or when they were absent certain days of the week. The data is not completely accurate as there appear to be some errors.  The sign-in sheet for Friday June 13, 2008 has 6:30 recorded as the start time and shows that lunch was at 11:30. Doc. 176-32, at 4.  But the data states the start time for Friday June 13 as 6:00 and counts the 11:30 lunch as late. Doc. 176-32, at 2.  There is the exact same problem for the sign-in sheet of Saturday July 12, 2008 and its corresponding data. Doc. 176-43, at 2-3.  In the data for the sign-in sheet for the week ending on September 17, 2006, Plaintiffs include a

"Verdusco R." but that name does not appear on the sign-in sheet. See Doc. 176-21.  Based on review of this small sampling, Plaintiffs' summary generally represents the worker sign in sheets with some errors.  The court expects future challenges to any summary to include more detailed explanation of the specific errors claimed.

**c. Days Where No Lunch Time is Recorded**

Defendant argues the summary does not fairly represent the underlying documents because it includes nearly 50,000 alleged late meal periods where the sign-in sheets do not have a meal period recorded. Doc. 152, 7:20-23.  Plaintiffs have revised their summary and excluded the days when no meal period was recorded from their total of late lunches and advise that they plan to update the summary further. Doc. 174, 5:25-6:6.

Given that the summary is to undergo additional modification, it can not be determined to be accurate at this time.  The current summary is not admissible as evidence.

**D. Plaintiffs' Requested Facts to be Summarily Adjudicated**

**1. Prior to 2006 Defendant Maintained a 12:00 Noon Meal Period Policy**

Jeffrey Giumarra is the person most knowledgeable designated by Defendant to respond to questions concerning "Giumarra's employment, labor, and wage and hour policies and practices (including without limitation the topics of hours worked, payment for hours worked, rest and meal periods, reimbursements, cleaning of bandejas, pre and post-shift duties)....Giumarra's timekeeping procedures, policies or practices (including without limitation the recording procedures set forth in Wage Order 14 for start and stop of work periods and meal periods)." Doc. 147-4, 3:9-18.  At his Rule 30(b)(6) deposition, he was asked about Defendant's meal break policies:

> Q. Can you describe the company policy? I know that the policy is to take lunches, is there a time when the company requires that they be taken by?
>
> A. We're taking lunch no later than five hours after the start of work.
>
> Q. And has that been the case the whole time period in question so going back to end of 2001?

A. I don't know.

Q. Do you know if there's been a change in that policy during the time you've worked there?

A. Yes.

Q. And what was that change?

A. At one time we took lunch at typically noon. And at some stage we changed it to be five hours after the start of the day.

Q. Do you know when that happened?

A. No.

Q. You don't have any general idea of when that was?

A. 2006.

Doc. 44, Jeffrey Giumarra Deposition, 41:10-42:4.  Now, he states that

> 6. ***Giumarra's policy throughout the relevant period was to schedule lunch within five hours after starting times***.  Plaintiffs have mischaracterized my prior deposition testimony when they assert that we have admitted to a 'policy' of taking lunch at noon. (alleged undisputed fact no. 12) Giumarra never had any such policy.
>
> 7. What I previously testified was that '[i]t is company policy to take lunches' (Doc. #44, p. 11), and that '[w]e're taking lunch no later than five hours after the start of work (Id.) When asked if that had been the case since 2001, I stated that I did not know. (Id.) I was not even employed at Giumarra until late 2005. ***The sole statement that plaintiffs rely on to support the contention that Giumarra had a noon lunch policy was my statement that '[a]t one time we took lunch at typically noon.'*** (Id.) But that statement was based on my review of the same sign-up sheets that are at issue on this motion. My review of those records indicated that we typically took a noon lunch break, not that Giumarra had a noon lunch 'policy.' The people who were actually familiar with Giumarra's lunch break practices during the pre-2006 time period were the superintendents, and they have testified to a variety of practices, and have also questioned the accuracy of the sign-up sheets insofar as they record the time at when lunch breaks started.

Doc. 155, Jeffrey Giumarra Declaration, ¶¶ 6-7, emphasis added.  This characterization is inconsistent with the earlier deposition in which Jeffrey Giumarra clearly stated that there was an affirmative change in policy from noon lunch to lunch within five hours of the start time.  "Once a party notices the topics for examination, the corporation must 'not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation.'" Giufu Li v. A Perfect Day Franchise, Inc., 2011 WL 3895118, *2 (N.D. Cal. Aug. 29, 2011), quoting Marker v.

1  <u>Union Fidelity Life Insurance Co.</u>, 125 F.R.D. 121, 126 (M.D.N.C. 1989).  This later, inconsistent

2  declaration without adequate explanation is insufficient to controvert the heavy weight given to

3  Rule 30(b)(6) testimony.  The fact that Jeffrey Giumarra only joined the company in late 2005

4  supports the determination that the old policy was in place, at minimum, through the end of that

5  year.  Prior to 2006, Defendant maintained a 12:00 noon meal period policy.

6

7  **2. Defendant Did Not Provide Premiums for Late-Provided or Missed Meal Periods**

8          Defendant does not dispute Plaintiffs' assertions that:

9          20. There is no indication that employees received from Giumarra premiums for
10             late-provided meal breaks.

11          21. There is no indication that employees received from Giumarra premiums for
             missed meal breaks.

12          22. Giumarra did not pay premiums for late-provided meal breaks.

13          23. Giumarra did not pay premiums for missed meal breaks.

14  Doc. 153, Defendant Statement of Genuine Issues, 6:5-13.[1]  Defendant did not provide premiums

15  for late-provided or missed meal periods.

16

17  **3. Other Requested Facts**

18          As discussed above, the worker sign in sheets are admissible, but the weight they should be

19  given is not definitively adjudicated.  The worker sign in sheets can not be used to exclude from

20  consideration conflicting evidence, such as testimony from class members or forepersons.  For

21  example, though it is adjudicated that Defendant had a noon meal policy prior to 2006, individual

22  worker sign in sheets may show that some meal periods were not taken at noon.  Both the policy

23  and the worker sign in sheets may be considered by the fact finder at trial in determining if there

24  was a meal period violation.  Additionally, the summary of those records is not admissible in the

25  current form.

26          All the other facts depend on these business records and summary.  These facts can not be

27  _____
[1] Defendant does make a limited objection that "No evidence of missed meal breaks [was] provided."  This is a
28  foundational objection and does not controvert central thrust of the declaration that no premiums were paid for any
   meal breaks that might have been missed.

16

summarily adjudicated.

### IV. Order

Plaintiffs' motion for summary adjudication is GRANTED in part and DENIED in part.

It is adjudicated that (1) prior to 2006, Defendant maintained a 12:00 noon meal period policy and (2) Defendant did not provide premiums for late-provided or missed meal periods.

IT IS SO ORDERED.

Dated:   September 11, 2015   

_____

SENIOR DISTRICT JUDGE