# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL MUNOZ, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>GIUMARRA VINEYARDS CORPORATION,<br><br>          Defendant. | Case No.: 1:09-cv-00703 - AWI – JLT<br><br>FINDINGS AND RECOMMENDATIONS DENYING DEFENDANT'S MOTION TO DECERTIFY THE LATE MEAL BREAK CLASS<br><br>(Doc. 189) |

Plaintiffs contend Giumarra Vineyards Corporation is liable for wage and hour violations under California law. Previously, the Court certified two classes in this action: the "Late Meal Break Class" and the "Tool Class," which encompass "all fieldworkers employed by Giumarra from 11/9/2011 to the present." (*See* Doc. 121 at 16) Defendant now seeks decertification of the Late meal Break Class, asserting it is "unsustainable" because individual issues predominate and a trial would be unmanageable. (Doc. 189) Plaintiffs oppose decertification, arguing common issues predominate over the individual questions. (Doc. 195) The Court heard the oral arguments of the parties at a hearing on May 9, 2016.

For the reasons set forth below, the Court finds the Late Meal Break Class continues to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, and recommends Defendant's motion to decertify the class be **DENIED**.

## I.   BACKGROUND

On November 9, 2005, Plaintiffs' counsel initiated an action against table grape growers based in Kern County, including Giumarra Vineyards Corporation. Plaintiffs filed an Amended Complaint against Giumarra Vineyards on September 22, 2009. (Doc. 28) Plaintiffs alleged Defendant was liable for: violations of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, failure to pay wages, failure to pay reporting time wages, failure to reimburse required expenses, failure to provide meal and rest periods, failure to pay wages of terminated or resigned employees, knowing and intentional failure to comply with itemized employee wage statement provisions and record keeping requirements, breach of contract, and violation of unfair competition law. (*Id.* at 1-2) Plaintiffs brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California."[1] (*Id.* at 9) In April 2011, the parties stipulated to amend the operative complaint, "withdrawing Lidia Cruz and Yanet Hernandez as named plaintiffs and class representatives." (Doc. 36)

In November 2011, the parties requested stay in the action pending the resolution of *Brinker Restaurant Corp. v. Sup. Ct.*, 165 Cal. App. 4th 25 (2008). The parties noted, "At issue in *Brinker* is the standard for determining an employer's obligations with respect to California's rest and meal break laws." (Doc. 79 at 2) Because Plaintiffs' amended complaint raised issues pending resolution in *Brinker*, the Court granted the request for a stay. (Doc. 80) On April 12, 2012, the California Supreme Court issued its decision in *Brinker*. Therefore, the Court lifted the stay and heard oral arguments regarding the motion for class certification.

The Court granted Plaintiff's motion for class certification in part, certifying only the "Late Meal Class" and "Tools Class." (Docs. 109, 121) Each class included "all fieldworkers employed by Giumarra from 11/9/2001 to the present." (*See* Doc. 121 at 16) Now before the Court is Defendants filed the motion to decertify the Late Meals Class now pending before the Court on January 15, 2016.

---

[1] Despite this, in support of the motion for class certification, Plaintiffs submitted evidence related only to workers who worked directly on the plants—picking, pruning, tipping, tying, etc.,--and in the cold storage facility. Likewise, they did not submit evidence related to drivers or irrigators. Moreover, none of the named plaintiffs claimed to have been engaged in these jobs and they presented no evidence related to the working conditions of those who did.

(Doc. 189)  Plaintiffs filed their opposition on February 26, 2016 (Doc. 195), to which Defendant filed a reply on March 18, 2016 (Doc. 197).

## II.     CLASS CERTIFICATION

A class action is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In general, these prerequisites are referred to as numerosity, commonality, typicality, and adequacy of representation, and "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 155-56 (1982) (citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980)).

When a proposed class satisfies the prerequisites of Rule 23(a), the Court must determine whether the class is maintainable under Rule 23(b).  *Leyva v. Medline Indus.*, 716 F.3d 510, 512 (9th Cir. 2013); *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).  Previously, the Court determined certification of the Late Meal Class was appropriate under Rule 23(b)(3), which allows for class certification in cases where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

## III.    MOTION FOR CLASS DECERTIFICATION

Pursuant to Rule 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment."  Accordingly, the Ninth Circuit has recognized that Rule 23 "provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2011).  The burden is on a party seeking decertification to establish that Rule 23 is not satisfied.  *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000).  This burden "is relatively heavy," since any "'doubts regarding the propriety of class certification should be resolved in favor of

certification.'" *Slaven*, 190 F.R.D at 651 (quoting *Groover v. Michelin North Am., Inc.*, 187 F.R.D. 662, 670 (M.D. Ala. 1999)).

## IV. DISCUSSION AND ANALYSIS

### A. Burden of Proof

As a preliminary matter, the parties disagree as to who has the burden of proof on this motion. Defendant contends, "[I]n the case of a motion to decertify a class, the Ninth Circuit rule is that the party resisting the motion bears the burden of showing that the motion should not be granted." (Doc. 198 at 12, citing *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 947 (9th Cir. 2011))  However, in *Marlo*, there was not a motion for decertification before the court.  Rather, "[a]fter meeting with the parties on several occasions" and "reviewing the many papers submitted by the parties in th[e] action," the district court "became increasingly concerned that individualized issues may predominate over class-wide issues." *Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476, 479 (2008).  Accordingly, the court ordered briefing from the parties and, on its own motion, set a hearing regarding decertification.  *Id.* The district court placed the burden of proof on the plaintiff for its re-evaluation of the evidence, which the Ninth Circuit determined was appropriate.  *Marlo*, 639 F.3d at 947-48.

In contrast, when the defendant files a motion for decertification, the moving party bears the burden of showing that decertification is appropriate. *In re Apple iPod iTunes Antitrust Litig.*, 2014 U.S. Dist. LEXIS 165254 at *16 (N.D. Cal. Nov. 25, 2014) ("The defendant, in moving for decertification, 'must show that the class no longer meets Rule 23's certification requirements.'"). Consistent with *Marlo*, in the Court's view, this is a burden of production and ultimately, the plaintiff maintains the burden of demonstrating the Rule 23 factors continue to be shown.

Defendant contends the Court should decertify the Late Meal Class following the Court's rulings on the cross-motions for summary adjudication.  (Doc. 189)  Defendant notes that in the course of seeking summary judgment, Plaintiffs included "tractor drivers, truck drivers, irrigators, and maintenance workers" in the class, and the Court observed there was a question as to whether these employees "had discretion to set their own breaks."  (*Id.* at 7)  Accordingly, Defendant argues the class lacks commonality.  (*Id.* at 7, 12)  In addition, Defendant asserts individual issues predominate over class-wide issues, and the class is not maintainable under Rule 23(b)(3).  (*Id.* at 12-18)  Finally,

4

Defendant assets the class should be decertified because Plaintiffs' claim for a late meal break "has become unmanageable as a class action." (*Id.* at 19)  On the other hand, Plaintiffs oppose decertification, arguing the commonality requirement of Rule 23 remains satisfied.  (*See generally* Doc. 195 at 18-28)

        **A.**    **"Fieldworkers" encompassed in the Class**

As an initial matter, the Late Meal Class includes "all fieldworkers employed by Giumarra from 11/9/2001 to the present."  (Doc. 121 at 16)  However, the parties disagree on which workers constitute the "fieldworkers" described in the class definition.

In seeking summary adjudication of several facts, Plaintiffs created a summary of worker sign-in sheets, upon which start times, meal periods, and stop times were recorded.  (*See* Doc. 183 at 7-8)  Defendants asserted that in the summary, Plaintiffs included "numerous crews who do not belong to the class of fieldworkers" including foremen, "tractor drivers, irrigators, and similar kinds of workers who work more autonomously and do not always take breaks at fixed times."  (*Id.* at 11, quoting Doc. 152 at 7)  The Court observed:

> In the motion for class certification, Plaintiffs and Defendant provided declarations from workers holding a variety of position. These workers described themselves as pickers, pruners, counters, packers, benchboys, and general laborers among other terms. See e.g. Docs. 48 and 72-3. However, these employees appear to uniformly state they worked under the supervision of a foreperson (or as a member of a person's crew which the court presumes to mean the same thing). See e.g. Docs. 48 and 72-3. This was the context in which class certification was considered. The court assumed that the class members were told each day by supervisors or forepersons when they could have their meal periods. Insofar as these other positions (forepersons, tractor drivers, irrigators, etc.) had individual discretion to determine when they could take their meal break, Defendant may have a different set of legal defenses with respect to these employees that destroy commonality for Fed. R. Civ. Proc. 23 purposes.

(Doc. 183 at 12)  Accordingly, in seeking decertification, Defendant presents evidence to support a conclusion that those working with "specialized job categories as tractor drivers, irrigators and truck drivers" lack commonality with the other putative class members, because these employees had "substantial discretion to determine the timing of their own meal breaks, and paid no attention to the arbitrary time recordings on the sign-in sheets."  (Doc. 189 at 9)  Specifically, Defendants contend:

> Tractor drivers, for example, typically take a break when they reach a new field. They do not pull over to the side of the road to take lunch breaks just because the clock strikes twelve. (Kuntz decl. ¶3). Similarly, truck drivers take breaks while they are waiting for their trucks to be loaded or unloaded. They do not stop to take breaks when bringing

> crops in from the field, or while they are assisting with loading. (Salazar decl. ¶3) Irrigators also take breaks during convenient points during their work day. (Cazares decl. ¶4, Jimenez decl. ¶4) And maintenance workers are often split into a number of assignments apart from their foremen, so they are not always told when to take breaks. (Kuntz decl. ¶3) Many of these employees were scattered miles apart from one another, so that their supervisors were unable to observe when they took their breaks. (Abarca decl. ¶3)

(*Id.* at 9-10)

Previously, in support of the motion for class certification, Plaintiffs submitted anecdotal evidence from the proposed class representatives and putative class members, as well as time sheets from Giumarra. Plaintiffs Ramon Perales, Trinidad Ruiz, and Santos Valenzuela testified they started work at 6:00 or 6:30 a.m., but the meal break was at 12:00 p.m. (Perales Depo. at 12:18-24, 13:24-14:2; Ruiz Depo. at 41:5-12, 45:16-18; Valenzuela Depo. at 49:4-5, 99:12-14). Similarly, putative class members reported they worked for more than five hours before receiving a meal break. (See, e.g., C. Hernandez Decl. ¶ 11; S. Hernandez Decl. ¶ 1; M. Moreno Decl. ¶¶ 5, 7) Significantly, Plaintiffs evidence made no distinction between meal breaks taken by truck drivers, tractor drivers, or irrigators, and those who performed tasks similar to those of the named plaintiffs: deleafing, debudding, tipping, pruning, tying, and packing. (*Compare, e.g.*, Munoz Depo. 28: 13-15; Ruiz Depo. 7:17-18, 19:19-25; Rios Depo. 20:19-22 *with* Cano Decl. ¶ 1 (explaining he picked grapes during the harvest, and performed tasks such as "de-budding, tipping, de-leafing, planting, pruning, and 'ringing' during the pre-harvest); Carbajal Decl. ¶ 1 (reporting he worked "as a general laborer" and was employed during the pre-harvest for "pruning, tying, deleafing, debudding, tipping," and packing during the harvest).

Arguing the Late Meal Class should not be decertified, Plaintiffs now provide additional declarations regarding the meal breaks authorized for truck drivers and irrigators. For example, Jorge Garcia Valadez reports he has worked "as an irrigator and tractor driver at Giumarra Vineyards from June 2006 to the present." (Doc. 195-10 at 3, Valadez Decl. ¶ 1) According to Mr. Valadez, he and his crew "regularly have to wait more than 5 hours form the start of the shift for [the] 30 minute meal period." (*Id.*, ¶ 2) Significantly, Mr. Valadez also reports, "At times, especially when we are irrigating, the foreman does not let us take our 30 minute lunch break at all because he does not want us to let the water run without our supervision and the irrigation crew is understaffed." (*Id.*) Likewise, Carlos Nino was employed as an irrigator, and reports that sometimes the crew took a 30 minute meal

6

"after 12:00 noon if we were irrigating a field," but when working nights they did not have a meal break given and "could not stop to take a break and eat." (Doc. 195-11 at 3, Nino Decl. ¶2)

Notably, in their motion for class certification, Plaintiffs attempted to certify a subclass that included those who worked in Defendant's cold storage facility and were required to sign a meal break waiver.[2] (Doc. 46 at 11)  The Court refused to certify this class, finding that the class representatives lacked standing because they had different job assignments and were not required to sign a meal break waiver form. (Doc. 109 at 44)

As with the cold storage workers, none of the class representatives worked as a driver or an irrigator.  Moreover, as the Court previously observed, none of the named class representatives were required to take an on-duty meal break, or were completely denied a meal period. (Doc. 109 at 45) Instead, they claimed only that Defendant did not provide a timely meal break.  The Supreme Court determined, "a class representative must be a part of the class and possess the same interest *and suffer the same injury as the class members*." *Falcon*, 457 U.S. at 156).  The Court explained: "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (internal quotation marks and citation omitted). When a class is divided into subclasses, it is "[o]f particular importance . . . that the court be certain that each subclass is adequately represented." *Betts*, 659 F.2d at 1005.

The named plaintiffs do not claim they were denied meal breaks, that they were required to eat their meal while on-duty, that they were provided discretion as when they could take their meal breaks or that they were required to sign an agreement for an on-duty meal break.  Likewise, unlike the irrigators and drivers whose meal breaks were paid (Doc. 189-1 at 1; Doc. 189-5 at 2; Doc. 189-8 at 2), Plaintiffs and those working in the same jobs, took meal breaks that were unpaid.  Because Plaintiffs

---

[2] Given this, the Court is at a loss why Plaintiffs never mentioned workers who were occupied with efforts to irrigate the fields or driving the trucks or provide any evidence related to any of the Rule 23 factors related to these groups. The Court surmises this is because the complaint never raised any factual allegations that supported that class members were denied meal breaks; rather, they claimed only that their meal breaks were delayed.  Notably, at no time did Plaintiffs mention that they believed the "fieldworkers" including anyone other than those who actively worked on the plants.

suffered a different injury than those employed as irrigators and drivers, they lack standing to represent this class. *See Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) ("A named plaintiff cannot represent a class alleging . . . claims that the named plaintiff does not have standing to raise").

Moreover, the typicality requirement demands the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (typicality is satisfied when named plaintiffs have the same claims as other members of the class and are not subject to unique defenses).  In *Hanon*, the Ninth Circuit continued, "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985).

Because there was no evidence related to whether the policy of delaying the meal break until noon applied to irrigators and drivers—and this policy was a key driving force for certifying the late meal class—the Court cannot assume this policy also applied to irrigators and drivers.  To the contrary, counsel did not question Defendant's Fed.R.Civ.P. 30(b) witness, Jeff Giumarra, about personnel who engaged in irrigation or truck driving work. Instead, the questions surrounded the circumstances of those who conducted "preharvest" and "harvest" work and neither of these groups included irrigators or drivers.  (Doc. 44)  Indeed, the declarations of the two irrigators—Jorge Garcia and Carlos Nino—presented by Plaintiffs now support an inference that break times were determined by the foremen[3] in their discretion, in response to the status of the work rather than in response to any corporate policy.  Moreover, contrary to these declarations, Mr. Giumarra testified that the corporate policy *required* workers to take lunches.  (Doc. 44 at 11)

---

[3] Which is why foremen also are not included in the class.

8

Because the irrigators and drivers did not receive meal breaks in addition to suffering delayed lunch breaks, their injury is not the same as the class representatives.[4]  Consequently, the Court finds the "fieldworkers" encompassed in the class definition do not include irrigators and drivers.  Rather, the fieldworkers included in the class are only those employees, exclusive of foremen, assigned to crews that performed tasks similar to those of the named Plaintiffs: tying, pruning, picking, and packing.

### B.     Common Questions Predominate

Defendant argues that although the Court determined Giumarra maintained a noon lunch policy prior to 2006 (Doc. 183 at 17), "that finding does not help resolve any individual claims, much less resolve the entire class claim at one stroke." (Doc. 189 at 12)  According to Defendant, "At this point in the case, plaintiffs cannot identify any common contentions that would resolve their late meal claims in one stroke." (*Id.*, emphasis in original)  Defendant argues "even during the period when the noon break policy prevailed, [Plaintiffs] still must show the extent to which individual class members were affected by that policy." (*Id.* at 12-13)  Thus, Defendant contends the Late Meal Class is no longer sustainable under Rule 23(b)(3), which requires a finding that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*; *see also Wal-Mart Stores*, 131 S. Ct. at 2559 ("(b)(3) requires the judge to make findings about predominance and superiority").

The predominance inquiry focuses on "the relationship between the common and individual issues" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods.*, 521 U.S. at 623).  The Ninth Circuit explained, "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser*, 253 F.3d at 1189).  Significantly, as Defendant observes,

---

[4] The Court agrees that if the class included drivers and irrigators, there is great doubt as to whether the class could be maintained.  The claim of a denial of meal breaks or the requirement of taking on-duty meal breaks carries with them different defenses that those associated with a delayed meal break.  Thus, these claims would result in different common questions than those raised at this time.

9

the Court has determined Giumarra "maintained a 12:00 noon meal period policy" prior to 2006. (Doc. 183 at 16)  As a result, the only question for workers employed by Giumarra prior to the policy change is the amount of damages, which may be established for workers either through the use of the time sheets or testimonial evidence regarding the meal periods provided to the crews.

However, as discussed at length at the hearing, plaintiffs intend to present the time records and the summary prepared by their expert to demonstrate those who received meal breaks greater than five hours after their start times.  Thus, the time records presented will *only* concern members of the class. In this way, truly from the plaintiff's perspective, the question becomes *only* one of damages.[5]  Thus, the Court finds that common questions are capable of being answered on a class-wide basis.[6]

---

[5] Defendant does not dispute in its motion to decertify the class that individualized damage assessments do not defeat class certification. In any event, the Ninth Circuit reiterated in *Levya v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013) that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." On appeal, the Ninth Circuit examined whether the plaintiffs' motion for class certification was defeated by individual questions of damages that predominated over common questions of liability. *Id.* at 514.  The Court explained the damages determination did not defeat the plaintiffs' motion:

> **[D]amages determinations are individual in nearly all wage-and-hour class actions.** *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 139 Cal.Rptr.3d 315, 273 P.3d 513, 546 (2012) ("In almost every class action, factual determinations of damages to individual class members must be made. Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution. Indeed, to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.") (internal citation and quotation marks omitted). Thus, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975); *see also Yokoyama*, 594 F.3d at 1089 ("The potential existence of individualized damage assessments ... does not detract from the action's suitability for class certification.").

*Id*. at 513-14, emphasis added.  The Court explained that if the defendant's liability was proven, "damages will be calculated based on the wages each employee lost due to [the defendant's] unlawful practices." *Id.* at 514.

Since *Levya*, district courts throughout California determined class certification is not defeated where damaged will be calculated on an individualized basis, to the extent each class member suffered from the defendant's unlawful practices. *See, e.g., In re High-Tech Employee Antitrust Litig.*, 298 F.R.D. 555, 582 (N.D. Cal. 2013) (plaintiffs are not required to show damages are measurable on a class-wide basis or by using common evidence, but rather bear the burden to tie damages to a theory of liability); *Schulein v. Petroleum Dev. Corp.*, 2014 U.S. Dist. LEXIS 4154 at *17, 2014 WL 114520 at *7 (C.D. Cal. Jan. 6, 2014) ("individualized inquiries into damages" do not render a class action unviable); *Dalton v. Lee Publications, Inc.*, 2013 U.S. Dist. LEXIS 156586 at *6-7, 2013 WL at 5887872 at *2 (S.D. Cal. Oct. 31, 2013) ("damages for [an] unreimbursed expenses claim may be ascertained on a class-wide basis" because individual calculation of damages did not defeat class certification).

Similarly, here, Plaintiffs have established a common theory of liability. If they establish liability, damages will be calculated based upon the number of days where the meal period was not provided timely.  The extent to which class members were affected does not defeat class certification because the amount of damages "is invariably an individual question." *Levya*, 716 F.3d at 514; *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment.")

[6] Defendant contends that this evidence, assuming it is accepted by the Court as reliable and admissible would not answer any common question identified by Plaintiffs because whether any member of the class was actually deprived of a

### V.     FINDINGS AND RECOMMENDATIONS

As set forth above, Defendant fails to demonstrate the Late Meal Class no longer satisfies the requirements of Rule 23, or that individualized inquiries will predominate. Accordingly, **IT IS HEREBY RECOMMENDED** that Defendant's motion for decertification be **DENIED**.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **May 12, 2016**                    **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE

---

timely meal break is any individualized analysis. Toward this end, at the hearing, counsel pointed out that the defendant would introduce hundreds of witnesses who would testify that they, indeed, received timely meal breaks. However, Defendant has evidence to counter that submitted by Plaintiffs is a different issue altogether. Defendant seems to take the position that, though it has not presented evidence that timely meal breaks were provided since 2006 (See the Court's discussion of Defendant's evidence in its Findings and Recommendation to certify the class (Doc. 109 at 26-27), it can and will present such evidence and because it can and will, the Court should decertify the class. However, the Court may evaluate only the evidence actually submitted, not that which has not been submitted.