# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL MUNOZ, LIDIA CRUZ, YANET HERNANDEZ, SANTOS R. VALENZUELA, TRINIDAD RUIZ, MARTA A. RINCON de DIAZ, RAMON CERVANTES PERALES, and HUGO PEREZ RIOS, on behalf of themselves, and all current and former employees, and on behalf of a class of similarly situated employees,<br><br>**Plaintiffs**<br><br>v.<br><br>**GIUMARRA VINEYARDS CORPORATION; and DOES 1-20**<br><br>**Defendant** | **CASE NO. 1:09-CV-0703 AWI JLT**<br><br>**ORDER ADOPTING FINDINGS AND RECOMMENDATIONS** |

## I. Background

This case has a complex history but traces back to a suit filed by the Plaintiffs on behalf of themselves and a class of others similarly situated against Defendant Giumarra Vineyards Corporation on December 16, 2005. Plaintiffs allege that Defendant has violated a number of federal and California laws governing employee wages and working conditions. Ultimately, class certification was granted for two classes of employees who were allegedly provided late meal breaks and required to purchase their own tools.

Defendant now moves to decertify the late meal break class. Doc. 189. Plaintiffs opposed the motion. Doc. 195. Magistrate Judge Jennifer L. Thurston held a hearing on the matter. Doc. 199. Judge Thurston issued Findings and Recommendations that the motion be denied. Doc. 202.

Defendant has filed objections. Doc. 204.  Plaintiffs have responded to the objections. Doc. 206.

## II. Legal Standard

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

## III. Discussion

In the prior motion for class certification, Plaintiffs showed that the four Fed. Rule Civ. Proc. 23(a) elements and Fed. Rule Civ. Proc. 23(b)(3) were met. Doc. 109, F&R, 25:10-29:6 and 48:23-51:19; Doc. 121, Order, 9:19-12:8.  Rule Civ. Fed. Proc. 23(b)(3) requires "the court [to] find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Plaintiffs moved to have several facts summarily adjudicated to be true: (1) Defendant's sign-in sheets show the identity of workers who worked more than six hours and did not receive meal period within five hours of their recorded start time, (2) the sign-in sheets are the best evidence of worker start and stop times, (3) the sign-in sheets are the best evidence of worker meal period times, (4) prior to 2006, Defendant maintained a 12:00 noon meal period policy, (5) Plaintiffs' summary of the sign-in sheets show the number of late meal periods for the class prior to 2006, (6) Plaintiffs' summary shows the number of late meal periods for the class from 2006 to present, (7) Plaintiffs' summary shows the number of unrecorded meal periods from 2006 to present, and (8) Defendant did not provide premiums for late or missed meal periods. See Doc. 147-2, Brief, ii:10-23.  Summary adjudication was only granted as to facts (4) and (8). Doc. 183, Order, 17:5-6.  The other requested adjudications were denied, largely based on issues surrounding the sign-in sheets and the summary: "the worker sign in sheets are admissible, but the weight they should be given is not definitively adjudicated. The worker sign in sheets can not be used to exclude from consideration conflicting evidence, such as

2

testimony from class members or forepersons.  For example, though it is adjudicated that Defendant had a noon meal policy prior to 2006, individual worker sign in sheets may show that some meal periods were not taken at noon. Both the policy and the worker sign in sheets may be considered by the fact finder at trial in determining if there was a meal period violation. Additionally, the summary of those records is not admissible in the current form." Doc. 183, Order, 16:18-25.

Now, Defendant argues that as a result of the summary judgment order, "individualized inquiries would inevitably predominate over class-wide inquiries, and that trial of the late meal claims on a class-wide basis would be unmanageable at best, and impossible at worst." Doc. 189, Brief, 6:17-19.  "[P]redominance is a comparative concept that calls for measuring the relative balance of common issues to individual ones." Marlo v. UPS, 251 F.R.D. 476, 483 (C.D. Cal. 2008).  The moving party bears the burden of showing that decertification is appropriate. See In re Apple iPod iTunes Antitrust Litig., 2014 U.S. Dist. LEXIS 165254, *17 (N.D. Cal. Nov. 25, 2014); but see Marlo v. UPS, Inc., 639 F.3d 942, 947 (9th Cir. 2011) (party seeking continued certification of class bears the burden when a trial court sua sponte considers decertification).

Defendant argues that "The 'late meal' class claims in this case hang by a very thin thread. The legal basis for such claims is tenuous, as Brinker's 'five hour' rule depends on the specific provisions of Labor Code § 512, which does not apply to agricultural workers." Doc. 204, Objections, 2:15-17.  Defendant posits that for agricultural workers, "the 5-hour benchmark defines the threshold point at which an employee becomes eligible for a meal period.  According to the plain language of section 11, the 5-hour marker relates to the overall length of the 'work period,' not to the timing of the 30-minute meal break." Doc. 204, Objections, 7:21-23.  These statements suggest that Defendant is still seeking to challenge the legal applicability of the current understanding of the late meal break theory to agricultural workers.  Defendant also appears to want to argue that there is a legal category of late meal breaks that constitute "a little de minimis violation, you know.  That doesn't count." Doc. 205, Transcript, 42:16-17.  Also, Defendant wishes to have a legal ruling to determine whether agricultural employers are required to record when meal breaks take place during a work day and whether the sign-in sheet information creates

a rebuttable presumption regarding when any meal break was taken. Doc. 205, Transcript, 20:24-21:20. Defendant's posture emphasizes the conclusion that Plaintiffs as class share significant questions of law which add to the weight of common issues as compared to the individual ones.

Defendant quotes U.S. Supreme Court precedent, which denied class certification to a group claiming employment discrimination, for the proposition that "claims must depend upon a common contention --for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011); see Doc. 204, Objections, 9:3-8. To be clear, the case law does not require a common determination that would completely resolve the claim in one stroke, but rather that the common determination would resolve a central issue that goes to the validity of the claim. In this case, that central issue is Defendant's meal break policy. The U.S. Supreme Court found the proposed class wanting because this central element was missing: "respondents wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 352 (2011), emphasis in the original. Here, the equivalent question would be "why was I provided a late meal period" to which the answer might very well be "because of the company's policy." Indeed, it is the fact that there was a policy which strongly distinguishes this case from Wal-Mart where the court found that "The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's 'policy' of allowing discretion by local supervisors over employment matters." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 355 (2011). The significance of policy, or at least evidence of such policy, is a continuing thread through the case law on class actions. See, e.g., Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 159 n.15 (1982) ("Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices

in the same general fashion, such as through entirely subjective decisionmaking processes").

Defendant next cites to Ninth Circuit precedent for the proposition that some policies are insufficient to support certification if "an individual inquiry is still needed to determine whether each employee falls within" the policy's application. Doc. 204, Objections, 9:10-15; Mevorah v. Wells Fargo Home Mortg., 571 F.3d 953, 959 (9th Cir. 2009). In that case, the policy was a blanket designation of all employees as exempt from overtime requirements; the law instead requires analysis of employees' duties and responsibilities to determine whether they fall into one of several exempt categories. The court found that the blanket policy was not sufficient to meet the predominance requirement, reasoning that the policy (designating all employees as exempt) was largely irrelevant to whether there was a violation of law (the question of whether the employees should be exempt). To explain the distinction, the Ninth Circuit provided a hypothetical policy which would meet the requirement:

> In contrast to centralized work policies, the blanket exemption policy does nothing to facilitate common proof on the otherwise individualized issues.
>
> To illustrate, consider the federal outside salesperson exemption. This exemption applies where, among other things, the employee is 'customarily and regularly away from the employer's place of…business….' 29 C.F.R. § 541.500(a). Often, this exemption will militate against certification because, as the district court noted, it requires 'a fact-intensive inquiry into each potential plaintiff's employment situation….' E.R. 11. A centralized policy requiring employees to be at their desks for 80% of their workday would change this individual issue into a common one. Therefore, such a corporate policy would be highly relevant to the predominance analysis. A uniform exemption policy, however, has no such transformative power.

Mevorah v. Wells Fargo Home Mortg., 571 F.3d 953, 959 (9th Cir. 2009). In this case, Defendant's meal break timing policies fall squarely within the contours of the Ninth Circuit's hypothetical; they are directly relevant to the question of whether Plaintiffs were provided late meal breaks.

Much of Defendant's argument centers around the assertion that there is evidence that may be specific to individual Plaintiffs or work crews. It is acknowledged by both sides that different crews had different start times (often depending upon the season) and that meal breaks were not uniformly taken at the same time. However, the fact that there may have been exceptions to a general policy does not defeat certification. Based on the information provided thus far (and

assuming a summary of the sign-in sheets that is of an admissible form), Plaintiffs have presented sufficient evidence for a reasonable jury to find in their favor on the issue of late meals for at least part of the relevant time period in question. That Defendant has countervailing evidence in the form of witness testimony that may challenge the reliability of the company policy and sign-in sheets means that summary judgment may be denied to Plaintiffs on this issue, not that the class should be decertified. In a case dealing with certification of a late meal break class, predominance was established where "Plaintiffs largely point to written policies that purport to apply to the class as a whole; it is defendants who allege unwritten exceptions that may detract from those policies." Delagarza v. Tesoro Ref. & Mktg. Co., 2011 U.S. Dist. LEXIS 101127, *47 (N.D. Cal. Sept. 8, 2011). Similarly, predominance was established where the employer had a policy of "erroneously providing for a half-hour's worth of pay for meal premiums when it should have been a full hour's worth of pay" notwithstanding the fact that "the time records may be inaccurate and include employees who actually received timely meal breaks even though the time records suggest otherwise." Medlock v. Taco Bell Corp., 2015 U.S. Dist. LEXIS 167132, *27-28 (E.D. Cal. Dec. 11, 2015). The summary judgment order has not changed the class certification analysis. The factual and legal issues in common to the class predominate over issues specific to individual plaintiffs.

Regarding manageability, the existence of time records weighs heavily. If there were no sign-in sheets, then manageability would be a significantly more serious problem. See In re Autozone, Inc., 2016 U.S. Dist. LEXIS 105746, *45-47 (N.D. Cal. Aug. 10, 2016) (decertification granted for rest break class because anticipated time records were not found, rendering the class umanageable). The fact that these records exist and the fact that Defendant seeks to rebut their weight as a whole (in light of countervailing evidence of unreliability) renders this a situation where class treatment is superior.

### IV. Order

The Findings and Recommendation filed May 12, 2016 is ADOPTED in full.

Defendant's motion for decertification of the late meal break class is DENIED.

As clarification, the "fieldworkers" encompassed in the class definition do not include irrigators and drivers.

IT IS SO ORDERED.

Dated: September 30, 2016

_____
SENIOR DISTRICT JUDGE