# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL MUNOZ, et al., | Case No.: 1:09-cv-00703-AWI-JLT |
| Plaintiffs, | ORDER GRANTING THE PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT |
| v. | |
| GIUMARRA VINEYARDS CORP., | (Doc. 217) |
| Defendant. | |

Rafael Munoz, Lidia Cruz, Yanet Hernandez, Santos R. Valenzula, Trindad Ruis, Marta Rincon de Diaz, Ramon Cervantes Perals and Hugo Perez Rios (collectively, "Plaintiffs") and Defendant Giumarra Vineyards Corporation seek preliminary approval of a class settlement reached in this action. (Doc. 217) Previously, the Court granted class certification as to two classes in this action, identified as the "Late Meal Break Class" and the "Tool Class." The parties now request (1) preliminary approval of the settlement, (2) approval of the proposed class notice and related materials; (3) appointment of Rust Consulting as the Claims Administrator; (4) approval of the Settlement distribution plan; and (5) scheduling for final approval of the settlement. (*See* Doc. 220)

The Court has considered the proposed settlement between the parties, and the proposed Notice and related forms. For the following reasons, the joint motion for preliminary approval of class settlement is **GRANTED**.

///

1

**FACTUAL AND PROCEDURAL HISTORY**

On November 9, 2005, Plaintiffs' counsel initiated an action against table grape growers based in Kern County, including Giumarra Vineyards Corporation; Marko Zaninovich, Inc.; Sunview Vineyards of California, Inc.; Castlerock; D.M. Camp & Sons; Sunview Vineyards of California; El Rancho Farms; Stevco, Inc; and FAL, Inc.[1] (*See* Doc. 46 at 12, n.17); *see also Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008). At the time the action was initiated, the plaintiffs were unnamed former and current employees of the defendants. *Id.* at 1156. The Court acknowledged the *Doe* matter was related to several other cases initiated against grape growers. *Id.*

On December 16, 2005, Santos R. Valenzuela, Trinidad Ruiz, Marta Ricon de Diaz, Ramon Cervantes Perales, and Hugo Perez Rios filed a complaint against Giumarra Vineyards, initiating Case No. 1:05-cv-1600-AWI-SMS. The plaintiffs alleged violations of the Migrant and Seasonal Agricultural Worker Protection Act, common law breach of contract, failure to pay wages and/or overtime, failure to reimburse expenses in violation of California Labor Code § 2802, failure to allow for meal and rest breaks pursuant to California Labor Code § 226.7, failure to keep accurate records, and violations of California Business and Professions Code § 17200. (*Valenzuela*, Doc. 1 at 1-2)

Defendants in *Doe* action, including Giumarra Vineyards, filed motions to dismiss the operative complaint. The Court granted the motions to dismiss and to sever the action and ordered the plaintiffs to file amended pleadings against each defendant. (*Doe*, Doc. 168) On May 29, 2008, Rafael Munoz, Lidia Cruz, and Yanet Hernandez were identified as plaintiffs in the Third Amended Complaint against Giumarra Vineyards. (*Doe*, Doc. 172) On March 31, 2009, the Court ordered Plaintiffs to re-file their suit in a new action within twenty days to finalize the severance. (*Doe*, Doc. 238)

On April 20, 2009, plaintiffs Rafael Munoz, Lidia Cruz, and Yanet Hernandez filed a complaint against Giumarra Vineyards. (Doc. 1) The plaintiffs filed a notice of related cases, including *Valenzuela*. (Doc. 6) The Court directed the parties to file briefs regarding consolidation (Doc. 8), and

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The record of a state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), *aff'd* 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236m 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980). Therefore, judicial notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, Case No. 1:05-cv-01417-AWI-SMS, and *Valenzuela v. Giumarra Vineyards Corp.*, Case No. 1:05-cv-01600-AWI-SMS.

on August 20, 2009, the Court ordered the cases be consolidated. (Doc. 26)

In compliance with the Court's order consolidating *Valenzuela* with *Munoz*, Plaintiffs filed an Amended Complaint against Giumarra Vineyards on September 22, 2009. (Doc. 28) Plaintiffs alleged Defendant was liable for: violations of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, failure to pay wages, failure to pay reporting time wages, failure to reimburse required expenses, failure to provide meal and rest periods, failure to pay wages of terminated or resigned employees, knowing and intentional failure to comply with itemized employee wage statement provisions and record keeping requirements, breach of contract, and violation of unfair competition law. (*Id.* at 1-2) Plaintiffs brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California." (*Id.* at 9) In April 2011, the parties stipulated to amend the operative complaint, "withdrawing Lidia Cruz and Yanet Hernandez as named plaintiffs and class representatives." (Doc. 36)

In November 2011, the parties requested stay in the action pending the resolution of *Brinker Restaurant Corp. v. Sup. Ct.*, 165 Cal. App. 4th 25 (2008). The parties noted, "At issue in *Brinker* is the standard for determining an employer's obligations with respect to California's rest and meal break laws." (Doc. 79 at 2) Because Plaintiffs' amended complaint raised issues pending resolution in *Brinker*, the Court granted the request for a stay. (Doc. 80) On April 12, 2012, the California Supreme Court issued its decision in *Brinker*. Therefore, the Court lifted the stay and heard oral arguments regarding the motion for class certification.

The Court granted Plaintiff's motion for class certification in part, certifying the "Late Meal Class" and "Tools Class" on June 13, 2013. (Docs. 109, 121) Each class included "all fieldworkers employed by Giumarra from 11/9/2001 to the present." (*See* Doc. 121 at 16) Plaintiffs' proposed Class Notice—which included "the nature of the action, the class definitions approve by the Court, the claims and issues to be resolved, how a class member may enter appear through an attorney or chose to be excluded from the class, the time and method to opt-out of the class, and the binding effect of a class judgment"—was approved by the Court on December 11, 2013. (Doc. 137 at 1)

Following the Court's rulings on the parties' cross-motions for summary judgment, Defendant

filed a motion to decertify the Late Meals Class (Doc. 189), which was denied by the Court on September 30, 2016.  (*See* Docs. 202, 210)

The parties engaged in mediation with Steven Vartabedian, a retired justice of California's Fifth District Court of Appeal.  (Doc. 218 at 8)  On November 29, 2016, Plaintiffs notified the Court that the parties had "come to an agreement in principle to resolve the matter entirely," and began "the process of formally documenting the timers of the proposed settlement."  (Doc. 213 at 3)  By January 6, 2017, the parties reported the terms had been finalized "and the settlement agreement [was being] circulated for signatures."  (Doc. 215 at 3)  The parties filed the joint motion for approval of the settlement now pending before the Court on February 24, 2017.  (Doc. 217)

## THE PROPOSED SETTLEMENT

Pursuant to the proposed settlement ("the Settlement"), the parties agree to a "Gross Settlement Amount" totaling $6,100,000.00, plus interest.  (Doc. 219-1 at 4, Settlement § I.S)  Defendant Giumarra agrees to fund the Settlement for the following classes:

> The Tools Class: all fieldworkers employed by Giumarra from 11/9/2001 to the present who were required to purchase necessary tools.
>
> The Late Meal Break Class: all field workers by Giumarra from 11/9/2001 to the present who were not provided a timely meal period.

(*Id.*, Settlement § I.D) These classes include only "employees, exclusive of foremen, assigned to crews that performed tasks similar to those of the named Plaintiffs: tying, pruning, pickling and packing." (*Id.*) Thus, the classes do not include irrigators and drivers. (*Id.*) The parties report that for purposes of settlement, the Settlement Class "consists of the combined Tool and Late Meal Break Class." (*Id.*)

Giumarra agrees to pay $2,100,000 of the Gross Settlement Amount by June 1, 2017; another $2,000,000 plus 5% interest on December 1, 2017; and a final payment of $2,000,000 plus 5% interest on November 1, 2018.  (Doc. 219-1 at 11-12, Settlement §III.F.7)  If any of the payments are made after these deadlines, the interest rate will rise to 10%.  (*Id.* at 13; Doc. 218 at 8)

**I.     Payment Terms**

The settlement fund will cover payments to class members with additional compensation to the Class Representatives.  (Doc. 219-1 at 6-7, Settlement § III.B)  In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and expenses, to the Settlement Administrator, and the

4

California Labor & Workforce Development Agency. (*Id.*) Specifically, the settlement provides for the following payments from the gross settlement amount:

- The named Class Representatives will receive up to $7,500 each;
- Plaintiffs who withdrew from the action will receive up to $3,500 each;
- Class counsel will receive no more than 33 1/3% of the gross settlement amount for fees, and up to $175,000 for expenses;
- The Claims Administrator will receive up to $75,000 for fees and expenses.[2]

(Doc. 219-1 at 6-7, Settlement § III.B; Doc. 218-7 at 17) After these payments have been made, the remaining money ("Net Settlement Amount") will be distributed as settlement shares to Class Members. (Doc. 219-1 at 4, Settlement §§ I.V, III.D)

Class members must submit a claim form to receive a share from the Net Settlement Amount. (Doc. 219-1 at 7, Settlement § III.D) Settlement shares for each class member will be based upon:

> (a) that Claimant's total number of Months of Employment during the Class Period (b) divided by the aggregate number of Months of Employment of all Participating Class Members during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Amount. Months of employment during the time period 2001 through 2008 will be weighted four times higher than those subsequent to 2008 because of Defendants' changes in practices.

(*Id.*, Settlement § III.D.1) Therefore, the formula acknowledges Defendants' contention that the practices employed by the company changed in 2008. In addition, the exact amount each individual will receive depends upon how many class members submit timely and valid claim forms and the period of time Giumarra employed each class member.

## II. Releases

The Settlement provides that Plaintiffs and Class Members, other than those who elect to participate in the Settlement, shall release Giumarra from the claims arising in the class period at the time final judgment is entered. Specifically, the release for class members states:

> As of the date of the Judgment, all Participating Class Members hereby fully and finally release Defendant, and its shareholders, parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, directors, officers, agents, attorneys,

---

[2] Rust Consulting estimated the fees and costs for claim administration to be $50,000. (Doc. 218-1 at 17) For purposes of approval of the Settlement and notice to the class members, Plaintiffs' counsel increased the estimate to $75,000. (*Id.*)

> stockholders, fiduciaries, other service providers, and assigns, from any and all claims, known and unknown, for or related to all claims provided for in the certified class, namely meal period violations and reimbursement claims for tools for the time period of November 9, 2001 to December 1, 2016.

(Doc. 219-1 at 14, Settlement § III.G)  The release for Plaintiffs encompasses more claims than the release of Class Members, which releases any claims related to improper compensation.  (*Id.*; *see also* Doc. 218-1 at 10)  Specifically, Plaintiffs' release provides:

> As of the date of the Judgment, Plaintiffs and their Counsel hereby fully and finally release Defendant, and its shareholders, parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, directors, officers, agents, attorneys, fiduciaries, other service providers, and assigns, <u>from claims based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law</u> (the "Class's Released Claims"). The Class's Released Claims include all such claims for alleged unpaid wages, including overtime compensation, missed meal-period and rest-break wages or penalties, and interest; related penalties, including, but not limited to, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and costs and attorneys' fees and expenses, and reimbursements for tools purchased.

(*Id.*, emphasis added).  Plaintiffs' claims are intended to "include all claims, whether known or unknown" at this time.  (Doc. 219-1 at 15, Settlement § III.G.4)

Defendant also agrees to "fully and finally release Plaintiffs and each of their parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims." (Doc. 219-1 at 15)  This release covers all claims "known and unknown, including but not limited to claims arising from or related to Defendant's employment of Plaintiffs and Participating Class Members, including any issues under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law."  (*Id.*)

### III.    Objections and Opt-Out Procedure

Any class member who wishes may file objections or elect not to participate in the Settlement. (*See* Doc. 219-1 at 11-12, Settlement §III.F)  The proposed Notice of Class Action Settlement ("the Notice") explains the procedures to claim a share of the settlement, object to the settlement, or elect not to participate in the Settlement.  (Doc. 219-2 at 6-7, 9)  In addition, the Notice explains the claims that are released as part of the Settlement.  (*Id*. at 7)

///

**PRELIMINARY APPROVAL OF A CLASS SETTLEMENT**

When parties settle the action prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

## I.     Class Certification

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23 are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156. If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

Previously, the Court certified the "Late Meal Class" and "Tools Class" in this action (Docs. 109 and 121), and the proposed Settlement encompasses both classes. Because the Court previously determined the Rule 23 requirements were satisfied by these classes, and there has not been any change in circumstances, the Court need not re-evaluate the Rule 23 requirements, and simply affirms

its prior orders. *See Adoma v. University of Phoenix, Inc.,* 913 F. Supp.2d 964, 974 (E.D. Cal. 2012) (explaining that the Court had previously certified classes and "need not find anew that the settlement class meets the certification requirements"); *In re Apollo Grp. Inc. Sec. Litig.,* 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class").

## II. Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure settlement is consistent with Plaintiffs' fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit has set forth several factors to determine whether a settlement agreement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). Reviewing the settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291(internal quotation marks and citation omitted).

### A. Strength of Plaintiffs' Case

In this action, there are several disputed claims the fact-finder would be required to determine. Plaintiffs assert that "[b]oth parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case." (Doc. 218 at 12) Accordingly, this factor weights in favor of preliminary approval of the Settlement.

### B. Risks, Expenses, Complexity, and Likely Duration of Further Litigation

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If

the settlement were to be rejected, the parties would have to engage in further litigation. The time and expense of continued litigation could outweigh any additional recovery. Plaintiffs assert:

> Counsel for Plaintiffs carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, the lengthy process of establishing specific damages, the difficulty in fully analyzing and utilizing the evidence at issue in this case, potential new legal decisions affecting pivotal issues in the case, potential class decertification issues, and other various possible risks and delays. [Citation.] Plaintiffs' counsel realizes that no matter how good the facts and law, every trial retains inherent risk while the proposed settlement provides a certain recovery for Class Members.

(Doc. 218 at 6-7, citation omitted) On the other hand, the proposed settlement provides for immediate recovery for the class, which includes individuals who may have been excluded from the classes previously certified by the Court. Given the uncertainties faced by Plaintiffs, this factor weighs in favor of approval of the Settlement.

### C. Amount Offered in Settlement

The Ninth Circuit observed "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.*, 688 F.2d at 625, 628.

Here, the proposed Gross Settlement Amount totals $6,100,000.00, plus interest. (Doc. 219-1 at 4, Settlement § I.S) Given the time expended by parties in mediation prior to reaching this agreement, it appears the parties agree that the gross settlement amount reflects a compromise as to all of Plaintiffs' allegations. (*See* Doc. 219-1 at 17, Settlement § III.I.9) Accordingly, the Court finds the amount offered supports approval of the Settlement.

### D. Extent of Discovery Completed and Stage of the Proceedings

Defendant Giumarra has been litigating the claims presented in this action since 2005. Santos R. Valenzuela, Trinidad Ruiz, Marta Ricon de Diaz, Ramon Cervantes Perales, and Hugo Perez Rios were named as Plaintiffs in an action filed in 2005; while Rafael Munoz, Lidia Cruz, and Yanet Hernandez were named plaintiffs in 2008. In the course of litigation, "Plaintiffs' counsel interviewed

numerous witnesses, and thoroughly reviewed a database of timekeeping information and thousands of pages of timekeeping and payroll documents produced by Defendant." (Doc. 218 at 13) Given the amount of discovery conducted by the parties and the number of years that have passed since the complaints were filed against Giumarra in Case Nos. 1:05-cv-01417-AWI-SMS and 1:05-cv-01660-AWI-SMS, it appears that the parties made informed decisions regarding the merits of their claims and defenses. Consequently, this factor supports preliminary approval of the Settlement.

### E. Experience and Views of Counsel

The appointed Class Counsel are experienced in class action litigation. Based upon discovery conducted in the matter, Mr. Mallison believes, "the Settlement is reasonable, fair and adequate, as it provides compensation to class members in proportion to the relative value of their claims." (Doc. 219 at 15, Mallison Decl. ¶ 35) Defendants agree that the Settlement "reflects a fair, reasonable, and adequate settlement of the Action." (*See* Doc. 219-1 at 17, Settlement § III.I.9) These opinions are entitled to significant weight, and support approval of the settlement agreement. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

### F. Reaction of Class Members to the Proposed Settlement

Plaintiffs have agreed to the terms of Settlement Agreement. However, this factor shall be revisited prior to final approval of the Settlement because Class Members have not yet received notice of the Settlement terms.

### G. Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. Plaintiffs assert: "The Settlement was reached after informed, arm's length negotiations between the parties. Both parties conducted extensive investigation and discovery allowing them to assess the strengths and weaknesses of the case." (Doc. 218 at 12) The parties utilized an impartial mediator, and engaged in two mediation sessions to complete settlement negotiations. (*See id.* at 6) Thus, it appears the agreement is the product of non-collusive conduct, and this factor weighs in favor of preliminary approval of the Settlement.

### H. Attorneys' Fees

Class counsel may request attorneys' fees that total "no[] more than 33 1/3% of the Gross Settlement Amount." (Doc. 219 at 6, Settlement § III.B.2) The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

In general, the party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.,* 214 F.3d 1115, 1119 (9th 2000). Therefore, a fee applicant **must provide time records documenting the tasks completed and the amount of time spent on the action**. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Because the percentage of the gross fund is within the accepted range outlined by the Ninth Circuit, this amount is approved preliminarily. The Court will determine the exact amount of the fee award upon application by Class Counsel for approval of fees.

### I. Class Representative Enhancement

The Settlement provides that Plaintiffs may apply to the District Court for a class representative enhancement up to $7,500 to each Plaintiff, to be paid from the gross settlement amount. (Doc. 219-1 at 6, Settlement § III.B.1.) Incentive awards, or enhancements, for class representatives are not to be given routinely by the Court. In *Staton*, 327 F.3d at 975, the Ninth Circuit explained:

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

In fact, "'excessive payments to named class members can be an indication that the agreement was reached through fraud or collusion.'" *Id.* (citation omitted). In evaluating the enhancement award to a class representative, a court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977.

1    Plaintiffs seek enhancement up to $7,500 for the individuals who were appointed as class

2 representatives, and $3,500 for the individuals who have withdrawn from representation. (Doc. 219-1

3 at 6) However, there is no evidence related to the actual number of hours Plaintiffs spent working with

4 Class Counsel on this action, or even an estimate of the number of meetings Plaintiffs had with Class

5 Counsel. In addition, at this time, Plaintiffs have not identified any authority for awarding individuals

6 who were not formally appointed class representatives – and in fact withdrew their representation of

7 the class (Doc. 36)—with an enhancement. Nevertheless, given the flexibility for an award *up to*

8 $7,500 to the individuals, preliminary approval of a class representative enhancement is appropriate.

## APPROVAL OF CLASS NOTICE

10   A class notice must satisfy the requirements of the Federal Rules of Civil Procedure, which

11 provides the notice "must clearly and concisely state in plain, easily understood language" the

12 following information:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

16 Fed. R. Civ. P. 23(c)(2)(B). A class notice must be "reasonably calculated, under all circumstances, to

17 apprise interested parties of the pendency of the action and afford them an opportunity to present their

18 objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

19 **I.     Content of the Notice**

20   The parties have submitted the proposed Notice, Claim Form, and Exclusion Request Form

21 (collectively "Notice Packet"). Upon review of the terms in the Notice Packet, the Court finds the

22 content is adequate. Plaintiffs provide information regarding the background of the action and claims

23 asserted. (Doc. 219-2 at 3-5) The Notice explains the terms and provisions of the Settlement,

24 including the payments from the Gross Settlement Amount. (*See generally id.* at 7-8) In addition, the

25 Notice explains the rights and procedures to claim a share of the Settlement, object to the Settlement,

26 or elect not to participate in the Settlement, and will include the applicable deadlines. (*Id*. at 2, 7, 9-

27 10) Finally, the Notice Packet explains the effect of the judgment and settlement, including the release

28 of claims. (Docs. 219-2 at 7)

## II. Method and Administration of Notice Packet

Following the entry of this Order, Defendant will give the appointed Settlement Administrator the data it possesses for each class member, including: "the Class Member's name; and last known mailing address and telephone number; the Class Member's Social Security number; the Class Member's Giumarra employee identification number; and for the Class Period the Class Member's Months of Employment in a Covered Position." (Doc. 219-1 at 3, Settlement § I.G; Doc. 218 at 17) Within ten days of receiving this data, the Settlement Administrator will mail the Notice Packets to all Class Members. (*Id.* at 9, Settlement § III.F.2.b) For any Notice Packet returned due to an incorrect address, the Settlement Administrator will search for a more current address and re-mail the Notice Packet. (*Id.* at 9-10, Settlement § III.F.2.c)

Class members who elect not to participate in the settlement will have 30 days to complete the Exclusion Request Form. (Doc. 219-1 at 12, Settlement § III.F.4.b) Similarly, Class Members who wish to comment on or object to the Settlement have 30 days to file and serve a statement "setting forth the grounds for the comment or objection." (*Id.* at 11, Settlement § III.F.4.a) The written statement must indicate whether the Class Member intends to appear at hearing. (*Id.*) Class Members will not be permitted to make objections at the Final Approval and Fairness Hearing unless they have submitted a timely written objection and notice of intention to appear. (*Id.*)

Prior to the hearing for final approval of the Settlement, the Claims Administrator will serve the parties and the Court with "a declaration due diligence setting forth its compliance with its obligations under th[e] Agreement." (Doc. 219-1 at 10, Settlement § III.F.2.f) The declaration shall include the number of Class Members to whom Notices were sent and the number of Class Members to whom the Notices were delivered.

## III. Required Revisions to the Notice Packet

The Notice Packet must be modified to include information in this Order, including the date of the hearing for Final Approval of Class Settlement, and deadlines filing changes to the Claim Forms, Exclusion Request Forms, and any opposition to the Settlement. Likewise, the documents must be modified to include the relevant information, including the address and phone numbers of the Settlement Administrator. If Plaintiffs intend to issue a Spanish language translation of the Notice,

they are reminded that this Court requires a declaration that the Notice was translated by a certified court interpreter, asserting the translation is an accurate translation of the Court-approved English version of the Notice.

## APPOINTMENT OF CLAIMS ADMINISTRATOR

The parties propose that the Court appoint Rust Consulting to serve as the Settlement Administrator. (Doc. 218 at 17) The Settlement explains:

> The Settlement Administrator's duties will include preparing, printing, and mailing the Class Notice Packet to all Class Members; conducting a National Change of Address search on any Class Notice Packet returned by the U.S. Postal Service as non-deliverable, and re-mailing the Class Notice Packet to the Class Member's new address; receiving and reviewing for validity completed Claim Forms and Elections Not to Participate in Settlement; providing the Parties with weekly status reports about the delivery of Class Notice Packets and receipt of completed Claim Forms and Elections Not to Participate in Settlement; providing the parties with the received Claim Forms; calculating Settlement Shares; issuing the checks to effectuate the payments due under the Settlement; issuing the tax reports required under this Settlement; distributing any Cy Pres award; and otherwise administering the Settlement pursuant to [the] Agreement.

(Doc. 219-1 at 8, Settlement § III.E) In addition, the Settlement Administrator will have the final authority to result disputes regarding the calculation of a class member's settlement share. (*Id.*)

For fees and expenses related to these responsibilities, Rust Consulting will receive up to $75,000 from the Gross Settlement Amount. (Doc. 218 at 17) Based upon the recommendation and request of the parties, Rust Consulting is appointed as the Settlement Administrator.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (quoting *Manual for Complex Litigation*, Second § 30.44 (1985)). Here, the proposed settlement agreement satisfies this test.

///

Accordingly, the Court **ORDERS**:

1. Approval of the Settlement Class is **GRANTED**, and the class is defined as a combination of the previously-certified Tools Class and Late Meal Break Class:

   > The "Tool Class" means all fieldworkers employed by Giumarra from November 9, 2001 through and including December 1, 2016 who were "required to purchase necessary tools. The "Late Meal Break Class" consists of all field workers employed by Giumarra from 11/9/2001 November 9, 2001 through and including December 1, 2016 who were not provided a timely meal period.

   > The "Class" for purposes of settling both claims consists of the combined Tool and Late Meal Break Class. The Class does not include irrigators and drivers; only employees, exclusive of foremen, assigned to crews that performed tasks similar to those of the named Plaintiffs: tying, pruning, picking and packing.

2. Preliminary approval of the parties' proposed settlement agreement, as modified by this order, is **GRANTED**;

3. The proposed notice plan, as set forth above, is **APPROVED**;

4. Rafael Munoz, Santos Valenzuela, Trinidad Ruiz, Marta R. Rincon de Diaz, Ramon Perales, and Hugo Perez Rios are **APPOINTED** the Class Representatives;

5. The law firm of Mallison & Martinez remains appointed as Class Counsel;

6. Rust Consulting is **APPOINTED** as the Settlement Administrator, with responsibilities pursuant to the terms set forth in the Settlement Agreement;

7. Class Representative enhancement requests are **GRANTED** preliminarily up to the amount of $7,500, subject to a petition and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

8. Class Counsel's requests for fees of not to exceed 33 1/3% of the gross settlement amount and expenses up to $175,000 are **GRANTED** preliminarily, subject to counsel's petition for fees and review at the Final Approval and Fairness Hearing. Class Members and their counsel may support or oppose this request, if they so desire, at the Final Approval and Fairness Hearing;

9. The petition for attorneys' fees and for class representative enhancement fee **SHALL**

be filed no later than **May 30, 2017**;

10. Costs of settlement administration shall not exceed $70,000;

11. The proposed Notice Packet is preliminarily **APPROVED**, and the parties **SHALL** file a finalized Notice Packet with the required revisions for the Court's approval no later than **March 31, 2017**;

12. The parties **SHALL** provide the Settlement Administrator with the Class Data no later than **April 7, 2017**;

13. The Settlement Administrator **SHALL** mail the approved Class Notice Packet within ten days of receiving the Class Data, or no later than **April 17, 2017**;

14. Class Member may submit any corrections to the Claim Form within thirty days, or no later than **May 15, 2017**;

15. A class member who wishes to be excluded from settlement shall postmark the Exclusion Request Form within thirty days, or no later than **May 15, 2017**;

16. Any objections to or comments on the Settlement Agreement must be filed with the Court and mailed to Class Counsel no later than **May 15, 2017**;

17. A Final Approval and Fairness Hearing is SET for **June 20, 2017**, at 9:00 a.m. at the United States Courthouse located at 510 19th Street, Bakersfield, California. At this hearing, the Court shall determine whether the Settlement should be granted final approval as fair, reasonable, and adequate as to the class members. The Court shall hear all evidence and argument necessary to evaluate the Settlement and other motions and requests, including the class representative enhancement request and motion for attorneys' fees;

18. Class Members may appear at the hearing on **June 20, 2017**, in person or through his or her own attorney, to show cause why this Court should not approve the Settlement Agreement, or to object to the motion for attorneys' fees or class member representative enhancement award. For comments or objections to be considered at the hearing, the Class Member must file comments with the Clerk of this Court indicating briefly the nature of the Class Member's comments, support, or objection.

19. The Court reserves the right to vacate the Final Approval and Fairness Hearing if no comments or objections are filed with this Court on or before **May 15, 2017**;
20. The Court reserves the right to continue the date of the Final Approval and Fairness Hearing without further notice to class members; and
21. The Court retains jurisdiction to consider all further applications arising from or related to the Settlement Agreement.

IT IS SO ORDERED.

Dated:  **March 24, 2017**                         **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE