1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAFAEL MUNOZ, et al., | ) Case No.: 1:09-cv-00703 - AWI- JLT |
| Plaintiffs, | ) |
| | ) FINDINGS AND RECOMMENDATIONS |
| v. | ) GRANTING FINAL APPROVAL OF THE CLASS |
| | ) SETTLEMENT AND GRANTING IN PART THE |
| GIUMARRA VINEYARDS CORP., | ) REQUESTS FOR CLASS REPRESENTATIVE |
| | ) FEES, ATTORNEYS FEES AND COSTS |
| Defendant. | ) |
| | ) (Doc. 227) |
| | ) |

Rafael Munoz, Santos Valenzula, Trindad Ruiz, Marta Rincon de Diaz, Ramon Cervantes Perales and Hugo Perez Rios (collectively, "Plaintiffs") seek final approval of a class settlement reached in this action with Defendant Giumarra Vineyards Corporation. In addition, Plaintiffs seek an award of attorneys' fees and costs from the settlement fund, fees for claims administration, and class representative enhancement payments. (Doc. 227)

Because Plaintiffs carry their burden to demonstrate certification the settlement terms are fair, reasonable, and adequate, the Court recommends Plaintiffs' request for final approval of the Settlement be **GRANTED**. In addition, the Court recommends the request for attorney fees be **GRANTED** in the modified amount of $1,525,000; costs be awarded in the modified amount of $175,000.00; enhancement payments be **GRANTED in PART** for Rafael Munoz, Santos Valenzuela, Ramon Perales, Hugo Perez, Trinidad Ruiz, and Marta Rincon de Diaz; and enhancement payments be **DENIED** for Lidia Cruz, and Yanet Hernandez.

## BACKGROUND

On March 5, 2004, Arnaldo Lara, Mario Laveaga, Mirna Diaz, Paula Leon, and Raul Diaz, individually and acting for the interests of the general public, ("Lara Plaintiffs") initiated an action in the Kern County Superior Court against Rogelio Casimiro, doing business as Golden Grain Farm Labor.[1] On September 12, 2005, the Lara Plaintiffs filed a second amended complaint and identified other employers of agricultural farm workers as defendants, including El Rancho Farms; Stevco, Inc.; Lucich Family Farms; and Castlerock Farming and Transport, Inc. The Lara Plaintiffs never identified Giumarra as a defendant in the state court action.

On November 9, 2005, Plaintiffs' counsel initiated an action against table grape growers based in Kern County, including Giumarra Vineyards Corporation; Marko Zaninovich, Inc.; Sunview Vineyards of California, Inc.; Castlerock; D.M. Camp & Sons; Sunview Vineyards of California; El Rancho Farms; Stevco, Inc; and FAL, Inc.[2] (*See* Doc. 46 at 12, n.17; *see also Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153 (E.D. Cal. 2008). At the time the action was initiated, the plaintiffs were unnamed former and current employees of the defendants. *Id.* at 1156. The Court acknowledged the *Doe* matter was related to several other cases initiated against grape growers. *Id.*

On December 16, 2005, Santos R. Valenzuela, Trinidad Ruiz, Marta Ricon de Diaz, Ramon Cervantes Perales, and Hugo Perez Rios filed a complaint against Giumarra Vineyards, initiating Case No. 1:05-cv-1600-AWI-SMS. The plaintiffs alleged violations of the Migrant and Seasonal Agricultural Worker Protection Act, common law breach of contract, failure to pay wages and/or overtime, failure to reimburse expenses in violation of California Labor Code § 2802, failure to allow for meal and rest breaks pursuant to California Labor Code § 226.7, failure to keep accurate records, and violations of California Business and Professions Code § 17200. (*Valenzuela*, Doc. 1 at 1-2)

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The record of a court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), *aff'd* 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236m 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980). Therefore, judicial notice is taken of the original Complaint and the Second Amended Complaint filed in *Lara v. Casimiro*, case number S-1500-CV-252445-SPC. In addition, judicial notice is taken of the state court's docket of the *Lara* action, available at http://www.kern.courts.ca/gov.

[2] For the reasons set forth above, judicial notice is taken of the Court's docket in *Doe v. D.M. Camp & Sons*, Case No. 1:05-cv-01417-AWI-SMS, and *Valenzuela v. Giumarra Vineyards Corp.*, Case No. 1:05-cv-01600-AWI-SMS.

Defendants in *Doe* action, including Giumarra Vineyards, filed motions to dismiss the operative complaint. The Court granted the motions to dismiss and to sever the action and ordered the plaintiffs to file amended pleadings against each defendant. (*Doe*, Doc. 168) On May 29, 2008, Rafael Munoz, Lidia Cruz, and Yanet Hernandez were identified as plaintiffs in the Third Amended Complaint against Giumarra Vineyards. (*Doe*, Doc. 172) On March 31, 2009, the Court ordered Plaintiffs to re-file their suit in a new action within twenty days to finalize the severance. (*Doe*, Doc. 238)

On April 20, 2009, plaintiffs Rafael Munoz, Lidia Cruz, and Yanet Hernandez filed a complaint against Giumarra Vineyards. (Doc. 1) The plaintiffs filed a notice of related cases, including *Valenzuela*. (Doc. 6) The Court directed the parties to file briefs regarding consolidation (Doc. 8), and on August 20, 2009, the Court ordered the cases be consolidated. (Doc. 27)

On May 4, 2009, the Court observed the plaintiffs in *Munoz* and *Valenzuela* were "suing Giumarra on largely the same legal grounds" (Doc. 8 at 1) and were represented by "two groups of allied attorneys." (Doc. 20 at 1) The *Munoz* plaintiffs were represented by Mallison & Martinez; Weinberg, Roger & Rosenfeld; and Milberg LLP; while the *Valenzuela* plaintiffs were represented by McNicholas & McNicholas; Kingsley & Kingsley; Bush, Gottlieb, Singer, Lopez, Kohanski, Adelstein & Dickinson; and the Law Offices of Marcos Camacho. (*See* Doc. 20 at 1) The Court consolidated *Munoz* and *Valenzuela,* and Court arranged class counsel as follows:

1. Co-Lead Counsel[3]
   - Mallison & Martinez
   - McNicholas & McNicholas, LLP

2. Members of the Executive Committee[4]
   - Bush, Gottlieb, Singer, Lopez, Kohanski, Adelstein, Dickinson
   - Kingsley & Kingsley, APC
   - Law Offices of Marcos Camacho
   - Milberg, LLP
   - Weinberg, Roger & Rosenfeld

(Doc. 27 at 1-2) Thus, each of the law firms remained designated as Plaintiffs' counsel in the action.

[3] The Court explained the Co-Lead Counsel had "day-to-day responsibility for the conduct of the consolidated litigation; shall determine how to prosecute the case and shall initiate, coordinate and supervise the efforts of plaintiffs' counsel in the consolidated action in the areas of discovery, briefing, trial and settlement." (Doc. 27 at 2)

[4] The law firms of Kingsley & Kingsley and Milberg, LLP were appointed Co-Chairs of the Executive Committee. (Doc. 27 at 2) Members of the Executive Committee were obligated to "execute the orders of the Court concerning the conduct of the litigation; formulate and draft material for plaintiffs in the Consolidated Actions, including interrogatories, document requests, pleadings, briefs and motion papers; and perform such other tasks as are delegated by Co-Lead Counsel, including, for example, the taking of depositions upon oral examination." (*Id.*)

On September 22, 2009, the plaintiffs filed the "consolidated complaint" that identified all named plaintiffs in the action: Rafael Munoz, Lidia Cruz, Yanet Hernandez, Santos R. Valenzula, Trinidad Ruis, Marta Rincon de Diaz, Ramon Cervantes Perales and Hugo Perez Rios. (Doc. 28) Plaintiffs alleged Giumarra was liable for: violations of the Agricultural Workers Protection Act, 29 U.S.C. § 1801, failure to pay wages, failure to pay reporting time wages, failure to reimburse required expenses, failure to provide meal and rest periods, failure to pay wages of terminated or resigned employees, knowing and intentional failure to comply with itemized employee wage statement provisions and record keeping requirements, breach of contract, and violation of unfair competition law. (*Id.* at 1-2) Plaintiffs brought the action "on behalf of Plaintiffs and members of the Plaintiff Class comprising all non-exempt agricultural, packing shed, and storage cooler employees employed, or formerly employed, by each of the Defendants within the State of California." (*Id.* at 9) In April 2011, the parties stipulated to amend the operative complaint, "withdrawing Lidia Cruz and Yanet Hernandez as named plaintiffs and class representatives." (Doc. 36)

In November 2011, the parties requested a stay in the action pending the resolution of *Brinker Restaurant Corp. v. Sup. Ct.*, 165 Cal. App. 4th 25 (2008). The parties noted, "At issue in *Brinker* is the standard for determining an employer's obligations with respect to California's rest and meal break laws." (Doc. 79 at 2) Because Plaintiffs' amended complaint raised issues pending resolution in *Brinker*, the Court granted the request for a stay. (Doc. 80) On April 12, 2012, the California Supreme Court issued its decision in *Brinker*. Therefore, the Court lifted the stay and heard oral arguments regarding the motion for class certification.

The Court granted Plaintiff's motion for class certification in part, certifying the "Late Meal Class" and "Tools Class" on June 13, 2013. (Docs. 109, 121) Each class included "all fieldworkers employed by Giumarra from 11/9/2001 to the present." (*See* Doc. 121 at 16) Plaintiffs' proposed Class Notice—which included "the nature of the action, the class definitions approve by the Court, the claims and issues to be resolved, how a class member may enter appear through an attorney or chose to be excluded from the class, the time and method to opt-out of the class, and the binding effect of a class judgment"—was approved by the Court on December 11, 2013. (Doc. 137 at 1)

Following the Court's rulings on the parties' cross-motions for summary judgment, Defendant

filed a motion to decertify the Late Meals Class (Doc. 189), which was denied by the Court on September 30, 2016. (*See* Docs. 202, 210)

The parties engaged in mediation with Steven Vartabedian, a retired justice of California's Fifth District Court of Appeal. (Doc. 218 at 8) On November 29, 2016, Plaintiffs notified the Court that the parties had "come to an agreement in principle to resolve the matter entirely," and began "the process of formally documenting the timers of the proposed settlement." (Doc. 213 at 3) By January 6, 2017, the parties reported the terms had been finalized "and the settlement agreement [was being] circulated for signatures." (Doc. 215 at 3)

The Court granted preliminary approval of the proposed settlement agreement on March 27, 2017. (Docs. 223) The Court granted conditional certification of the Settlement Class, which was defined as a combination of the previously-certified Tools Class and Late Meal Break Class, stating:

> The "Tool Class" means all fieldworkers employed by Giumarra from November 9, 2001 through and including December 1, 2016 who were "required to purchase necessary tools. The "Late Meal Break Class" consists of all field workers employed by Giumarra from 11/9/2001 November 9, 2001 through and including December 1, 2016 who were not provided a timely meal period.

> The "Class" for purposes of settling both claims consists of the combined Tool and Late Meal Break Class. The Class does not include irrigators and drivers; only employees, exclusive of foremen, assigned to crews that performed tasks similar to those of the named Plaintiffs: tying, pruning, picking and packing.

(*Id.* at 15; Doc. 219-1 at 4, Settlement § I.D) In addition, Rafael Munoz, Santos Valenzuela, Trinidad Ruiz, Marta R. Rincon de Diaz, Ramon Perales, and Hugo Perez Rios were appointed as the Settlement Class Representatives, and authorized to seek enhancement payments up to $7,500 for their representation of the class. (Doc. 223 at 15) The law firm of Mallison & Martinez remained appointed as the Class counsel, and authorized to seek fees that did not "exceed 33 1/3% of the gross settlement amount" and costs up to $175,000. (*Id.*) Finally, Rust Consulting ("Rust") was appointed the Settlement Administrator. (*Id.*) On April 3, 2017, the Court approved the Class Notice Packet that conveyed this information to class members. (Doc. 225)

On April 17, 2017, the Settlement Administrator mailed the Class Notice Packet to 13,449 class members. (Doc. 227-6 at 3, Schwartz Decl. ¶ 11) In total, the Settlement Administrator received 3,809 Claim Forms, of which 3,385 were considered complete. (Doc. 227-6 at 4, Schwartz Decl. ¶ 15)

However, per the instructions of the parties, the Settlement Administrator will consider claim forms received prior to June 20, 2017 to be valid. (*Id.*) In addition, the Settlement Administrator received 143 Exclusion Forms, but "113 Class Members sent both a Claim Form and Exclusion Form." (*Id.*, ¶¶ 17-18) Therefore, the Settlement Administrator sent the 113 individuals letters inquiring as to what action the class member intended, and stating "if that if a Class Member does not respond to the letter of intention, the Claim Form shall take precedence." (*Id.*, ¶ 18)

No written objections to the proposed settlement terms were received by the Settlement Administrator. (Doc. 227-6 at 3, Schwartz Decl. ¶ 19) Similarly, the Court did not receive any objections from class members.

Plaintiffs filed the motion for final approval of the class settlement terms, as well as approval of payments from the settlement fund, on May 30, 2015. (Doc. 227)

**SETTLEMENT TERMS**

Pursuant to the proposed settlement ("the Settlement"), the parties agreed to a gross settlement amount totaling $6,100,000.00, plus interest. (Doc. 227-3 at 3, Settlement § I.S) Giumarra agreed to fund the Settlement for the following classes:

> The Tools Class: all fieldworkers employed by Giumarra from 11/9/2001 to the present who were required to purchase necessary tools.
>
> The Late Meal Break Class: all field workers by Giumarra from 11/9/2001 to the present who were not provided a timely meal period.

(*Id.* at 1, Settlement § I.D) These classes include only "employees, exclusive of foremen, assigned to crews that performed tasks similar to those of the named Plaintiffs: tying, pruning, pickling and packing." (*Id.*) Thus, the classes do not include irrigators and drivers. (*Id.*) For purposes of settlement, the Settlement Class "consists of the combined Tool and Late Meal Break Class." (*Id.*)

Giumarra agreed to pay $2,100,000 of the Gross Settlement Amount by June 1, 2017; another $2,000,000 plus 5% interest on December 1, 2017; and a final payment of $2,000,000 plus 5% interest on November 1, 2018. (Doc. 227-3 at 11-12, Settlement §III.F.7) If any of the payments are made after these deadlines, the interest rate will rise to 10%. (*Id.* at 12)

I.      **Payment Terms**

The settlement fund will cover payments to class members with additional compensation to the

Class Representatives.  (Doc. 227-3 at 5-6, Settlement § III.B)  In addition, the Settlement provides for payments to Class Counsel for attorneys' fees and expenses, to the Settlement Administrator, and the California Labor & Workforce Development Agency.  (*Id.*)  Specifically, the settlement provides for the following payments from the gross settlement amount:

- The named Class Representatives will receive up to $7,500 each;

- Plaintiffs who withdrew from the action will receive up to $3,500 each;

- Class counsel will receive no more than 33 1/3% of the gross settlement amount for fees, and up to $175,000 for expenses;

- The Claims Administrator will receive up to $75,000 for fees and expenses.[5]

(Doc. 227-3 at 5-7, Settlement § III.B; Doc. 218-7 at 17)  After these payments have been made, the remaining money ("Net Settlement Amount") will be distributed as settlement shares to Class Members.  (Doc. 227-3 at 3, Settlement §§ I.V, III.D)

Class members must have submitted the Claim Form to receive a share from the Net Settlement Amount.  (Doc. 227-3 at 6, Settlement § III.D)  Shares for each class member will be based upon:

(a) that Claimant's total number of Months of Employment during the Class Period (b) divided by the aggregate number of Months of Employment of all Participating Class Members during the Class Period (with the division rounded to four decimal places) (c) multiplied by the value of the Net Settlement Amount. Months of employment during the time period 2001 through 2008 will be weighted four times higher than those subsequent to 2008 because of Defendants' changes in practices.

(*Id.*, Settlement § III.D.1)  Therefore, the formula acknowledges Defendant's contention that the practices employed by the company changed in 2008.  In addition, the exact amount each individual will receive depends upon how many individuals submitted timely and valid claim forms and the period of time Giumarra employed each class member.

## II.  Releases

The Settlement provides that Plaintiffs and Class Members, other than those who elect to participate in the Settlement, shall release Giumarra from the claims arising in the class period at the

---

[5] Rust Consulting estimated the fees and costs for claim administration to be $50,000.  (Doc. 218-1 at 17)  For purposes of preliminary approval of the Settlement and notice to the class members, Plaintiffs' counsel increased the estimate to $75,000.  (*Id.*)

time final judgment is entered. Specifically, the release for the class members states:

> As of the date of the Judgment, all Participating Class Members hereby fully and finally release Defendant, and its shareholders, parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, directors, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims, known and unknown, for or related to all claims provided for in the certified class, namely meal period violations and reimbursement claims for tools for the time period of November 9, 2001 to December 1, 2016.

(Doc. 227-3 at 13-14, Settlement § III.G) The release for Plaintiffs encompasses more claims than the release of Class Members, which releases any claims related to improper compensation. (*Id.* at 13; *see also* Doc. 218-1 at 10) Specifically, Plaintiffs' release provides:

> As of the date of the Judgment, Plaintiffs and their Counsel hereby fully and finally release Defendant, and its shareholders, parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, directors, officers, agents, attorneys, fiduciaries, other service providers, and assigns, <u>from claims based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law</u> (the "Class's Released Claims"). The Class's Released Claims include all such claims for alleged unpaid wages, including overtime compensation, missed meal-period and rest-break wages or penalties, and interest; related penalties, including, but not limited to, recordkeeping penalties, pay-stub penalties, minimum-wage penalties, missed meal-period and rest-break penalties, and waiting-time penalties; and costs and attorneys' fees and expenses, and reimbursements for tools purchased.

(*Id.*, emphasis added). Plaintiffs' claims are intended to "include all claims, whether known or unknown" at this time. (Doc. 227-3 at 14, Settlement § III.G.4)

Defendant also agreed to "fully and finally release Plaintiffs and each of their parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims." (Doc. 227-3 at 14, Settlement § III.G.3) This release covers all claims "known and unknown, including but not limited to claims arising from or related to Defendant's employment of Plaintiffs and Participating Class Members, including any issues under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law." (*Id.*)

## III.     Objections and Opt-Out Procedure

Any class member who wished had an opportunity to object or elect not to participate in the Settlement. The Class Notice Packet explained the procedures for class members to make objections to Settlement terms, or elect not to be excluded from the Settlement Class. (*See* Docs. 224, 225). In addition, the Class Notice Packet explained claims that were to be released by Class Members as part

of the Settlement.  (*Id.*)

**IV.     Service of the Notice Packets and Responses Received**

On March 24, 2017, the Court ordered the Settlement Administrator, Rust Consulting, to mail the Class Notice Packet to class members no later than April 17, 2017.  (Doc. 223 at 16-17)  Rust Consulting served the Class Notice Packet to the extent possible.  (*See generally*, Doc. 227-6)

According to Abigail Schwartz, a program manager for Rust Consulting, the Class Notice Packets were mailed via the United States Postal Service to 13,449 the class members identified by Defendant on April 17, 2017.  (Doc. 227-6 at 3, Schwartz Decl. ¶¶ 6-8)  The Postal Service returned 3,135 of the packets to the Rust Consulting as undeliverable.  (*Id.*, ¶ 13)  The Settlement Administrator performed address traces and located new addresses, but 2,275 Class Notice Packets remained undeliverable. (*Id.*)  On May 3, 2017, a postcard reminder was mailed to the class members who had not submitted a Claim Form or Exclusion Form, reminding them of the May 17, 2017 submission deadline.  (*Id.*, ¶ 12)

Ms. Schwartz reports that in total, Rust Consulting received 3,809 Claim Forms, of which 3,385 were considered complete.  (Doc. 227-6 at 4, Schwartz Decl. ¶ 15)  However, per the instructions of the parties, the Settlement Administrator will consider claim forms received prior to June 20, 2017 to be valid.  (*Id.*)  The Settlement Administrator received 55 forms disputing the employment information provided by Giumarra, and has resolved 50 of the disputes at this time.  (*Id.*, ¶16)  In addition, the Settlement Administrator received 143 Exclusion Forms, but "113 Class Members sent both a Claim Form and Exclusion Form."  (*Id.*, ¶¶ 17-18)  Therefore, the Settlement Administrator sent the 113 individuals letters inquiring as to what action the class member intended, and stating "if that if a Class Member does not respond to the letter of intention, the Claim Form shall take precedence."  (*Id.*, ¶ 18)

According to Ms. Schwartz, with the 3,809 Claim Forms—including the 113 class members who sent in both the Claim Form and Exclusion Form—the average settlement share is estimated to be $990.82.  (Doc. 227-6 at 4-5, Schwartz Decl. ¶ 20)  She reports the smallest share is estimated to be $3.19, while the highest is $5,341.00.  (*Id.* at 5, ¶ 20)  No objections to the Settlement were mailed to Rust Consulting or filed with the Court.

*///*

9

When parties reach a settlement agreement prior to class certification, the Court has an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2998)). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

## I.       Class Certification

Parties seeking class certification bear the burden of demonstrating the elements of Rule 23 are satisfied, and "must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Doninger v. Pacific Northwest Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977). The prerequisites of Rule 23(a) "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155-56 (1982). Certification of a class is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. *Falcon*, 457 U.S. at 156. If an action meets the prerequisites of Rule 23(a), the Court must consider whether the class is maintainable under one or more of the three alternatives set forth in Rule 23(b). *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

Previously, the Court certified the "Late Meal Class" and "Tools Class" in this action (Docs. 109 and 121), and the proposed Settlement encompasses both classes. Because the Court determined the Rule 23 requirements were satisfied by these classes, and there has not been any change in circumstances, the Court need not re-evaluate the Rule 23 requirements, and simply affirms its prior

orders. *See Adoma v. University of Phoenix, Inc.,* 913 F. Supp.2d 964, 974 (E.D. Cal. 2012) (explaining that the Court had previously certified classes and "need not find anew that the settlement class meets the certification requirements"); *In re Apollo Grp. Inc. Sec. Litig.,* 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class").

## II.     Evaluation of the Settlement Terms

Settlement of a class action requires approval of the Court, which may be granted "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval is required to ensure the settlement is consistent with Plaintiffs' fiduciary obligations to the class. *See Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (9th Cir. 1985). The Ninth Circuit identified several of factors to evaluate whether a settlement meets these standards, including:

> the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[6] and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959 (citation omitted). Further, a court should consider whether settlement is "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)). In reviewing settlement terms, "[t]he court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Class Plaintiffs*, 955 F.2d at 1291(internal quotations and citation omitted).

### A.     Strength of Plaintiffs' Case

When evaluating the strength of a case, the Court should "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 720 F.Supp 1379, 1388 (D. Az. 1989)).

In this action, there are several disputed claims the fact-finder would be required to determine

---

[6] This factor does not weigh in the Court's analysis because the government is not a party in this action.

related to the alleged failure to provide meal periods and tools for Giumarra fieldworkers. In addition, Plaintiffs acknowledge that "there are clear uncertainties surrounding Plaintiffs' ability to prove their claims given the unpredictability of a lengthy and complex jury trial." (Doc. 227-1 at 14) Because the parties have conducted thorough investigations and discovery allowing them to assess the strengths and weaknesses of the case, this factor weighs in favor of final approval of the Settlement.

**B.     Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). If the settlement were to be rejected, the parties would have to engage in further litigation, including re-certification of a class and discovery on the issue of damages. Previously, Plaintiffs asserted:

> Counsel for Plaintiffs carefully considered the risks of trial and other normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, the lengthy process of establishing specific damages, the difficulty in fully analyzing and utilizing the evidence at issue in this case, potential new legal decisions affecting pivotal issues in the case, potential class decertification issues, and other various possible risks and delays. [Citation.] Plaintiffs' counsel realizes that no matter how good the facts and law, every trial retains inherent risk while the proposed settlement provides a certain recovery for Class Members.

(Doc. 218 at 6-7, citation omitted) Further, Plaintiffs observe the "case has been pending in one form or another for 12 years," which "is a long time for any class member to wait." (Doc. 227-1 at 17) On the other hand, the Settlement provides for the immediate recovery for the class, with the average payment estimated to be $990.82. (Doc. 227-1 at 22, citing Schwartz Decl. ¶ 20) Given the risks and uncertainties faced by Plaintiffs, this factor weighs in favor of approval of the Settlement.

**C.     Maintenance of Class Status throughout the Trial**

Plaintiffs contend that there is a "risk that the case may not survive a contested decertification proceeding." (Doc. 227-1 at 15, citing Mallison Decl. ¶ 51) Notably, Defendant filed motion to decertify the late meal break class, which was denied. (*See* Docs. 189, 202, 210) However, if the classes were decertified by the Court, the class members would not recover any awards. Thus, this factor supports final approval of the Settlement.

**D.     Amount offered in Settlement**

The Ninth Circuit observed that "the very essence of a settlement is compromise, 'a yielding of

absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Commission*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when analyzing the amount offered in settlement, the Court should examine "the complete package taken as a whole," and the amount is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625, 628.

In this case, the proposed gross settlement amount is $6,100,000.00, plus interest. (Doc. 227-3 at 3, Settlement § I.S) Plaintiffs report the action settled "for nearly the entire trial value of the certified claims." (Doc. 227-1 at 16, citing Doc. 227-2 at 28, Mallison Decl. ¶ 66). Plaintiffs explain that Class Counsel "conservatively estimates the value of the late meal period claims to be approximately $3 million for the narrowed class, excluding interest and attorneys fees," and that when interest is included, "the value of the late meal period claim is approximately $6.4 million." (*Id.*) Based upon the parties' agreement that this amount provides adequate compensation for the wage and hour claims against Giumarra, the Court finds the amount offered supports final approval of the Settlement.

### E. Extent of Discovery Completed and Stage of the Proceedings

The Court is "more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Adoma*, 913 F. Supp. 2d at 977 (quoting *DIRECTV, Inc.,* 221 F.R.D. at 528). Here, Plaintiffs report:

> Plaintiffs conducted substantial discovery spanning a 12-year period including propounding and responding to many sets of special interrogatories and document requests, taking and defending twenty-one (21) depositions. Perhaps most impressive is the fact that Plaintiffs' counsel and their database expert scanned and copied approximately 36,000 crewsheets reflecting late meal periods, comprehensively reviewed them, and created a FRE 1006 evidence summary compiling the 1.2 million work shifts in the 36,000 crewsheets into an electronic format by a crew of 44 analysts. [Citation.]
> Further, Plaintiffs' counsel and their staff conducted hundreds of interviews of witnesses and class members. [Citation.] For example, in support of their Motion for Class Certification, Plaintiffs submitted in-depth declaration from seventy-seven (77) fieldworkers. Id. Plaintiffs' litigation and mediation of this case were informed by a thorough review of Defendant's document production, astute expert and non-expert review and analysis of vast amounts of electronic data, interviews with hundreds of witnesses and twenty-one (21) depositions. [Citation.]

(Doc. 227-1 at 16-17, citations omitted) Given the amount of discovery performed by the parties, it appears that the parties made informed decisions, which lead to resolution of the matter with the

assistance of a mediator. Consequently, the settlement agreement "is presumed fair," and this factor supports final approval of the Settlement. *See Adoma*, 913 F. Supp.2d at 977.

## F. Experience and Views of Counsel

As the Court previously observed, Class Counsel "are experienced wage and hour attorneys with class action experience." (Doc. 109 at 29) The Class Counsel believe the Settlement "is fair and reasonable given the circumstances of these cases and the strength and weaknesses of the various claims." (Doc. 227-2 at 17, Mallison Decl. ¶ 39) Defendants agree that the Settlement "reflects a fair, reasonable, and adequate settlement of the Action." (Doc. 227-3 at 16, Settlement § III.I.9.) Given counsels' experience and familiarity with the facts, their recommendation that the Settlement be approved is entitled to significant weight. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"); *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.") Thus, the views of counsel support final approval of the Settlement.

## G. Reaction of Class Members to Settlement

Significantly, no objections were filed by Class Members following service of the Class Notice Packet. The Class Representatives have indicated they "are strongly in support of the settlement." (Doc. 227-1 at 19, citing Munoz Decl. ¶6; Valenzuela Decl. ¶6; Perales Decl. ¶9; Rios Decl. ¶6) Although 11,174 class members received the Class Notice Packet[7], only 143 Exclusion Request Forms were returned to the Settlement Administrator. (Doc. 227-6 at 4, Schwartz Decl. ¶ 17)

Significantly, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms.*, 221 F.R.D. at 529. Because no class members objected to the Settlement and the requests for exclusion are vastly outweighed by the number of class members who have indicated their consent to the terms of settlement, this factor weighs in favor of final approval

---

[7] Ms. Schwartz reported that Rust Consulting sent the Class Notice Packet to 13,449 class members, but 2,275 remained undeliverable. (Doc. 227-6 at 3-4, Schwartz Decl. ¶¶ 9, 13)

14

of the Settlement.

### H. Collusion between Negotiating Parties

The inquiry of collusion addresses the possibility that the settlement agreement is the result of either "overt misconduct by the negotiators" or improper incentives of class members at the expense of others. *Staton*, 327 F.3d at 960. The parties utilized an impartial mediator, and settlement negotiations took several sessions. (*See* Doc. 227-1 at 19) Given the duration of the negotiations, it appears the agreement is the product of non-collusive conduct.

## IV. Conclusion

The factors set forth by the Ninth Circuit weigh in favor of final approval of the Settlement, which appears to be is fair, reasonable, and adequate as required by Rule 23. Therefore, the Court recommends final approval of the Settlement Agreement be **GRANTED**.

**REQUEST FOR ATTORNEYS' FEES AND COSTS**

Attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties" may be awarded pursuant to Rule 23(h). Under the Settlement, Class Counsel may request attorneys' fees that total "no[] more than 33 1/3 % of the Gross Settlement Amount with interest." (Doc. 227-3 at 5, Settlement § III.B.2.) Class Counsel are also authorized under the Settlement to seek litigation expenses in "an amount to be determined." (*Id.*) Here, Class Counsel request the maximum of 33 1/3% of the gross settlement fund in fees totaling $2,125,654.00 and expenses in the amount of $28,467.28. (Doc. 227-1 at 10) In support of these requests, a representative from each law firm has filed a declaration setting forth the hours worked and hourly rates, as well as the firms expenses. (Docs. 227-2, 227-7, 227-11, 227-19, and 227-20)

Under the "common fund" doctrine, attorneys who create a common fund for a class may be awarded their fees and costs from the fund. *Hanlon*, 150 F.3d at 1029; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). An award from the common fund "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense," and as such application of the doctrine is appropriate "when each member of a certified class has an undisputed and

15

mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing Co.*, 444 U.S. at 478. Here, the Settlement applies formulas to determine the amount paid to class members who submitted a valid claim, and application of the common fund doctrine is appropriate.

## I.      Legal Standards

"[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement" to determine whether it is "'fundamentally fair, adequate, and reasonable' Fed.R.Civ.P. 23(e)." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003)). To do so, the Court must "carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.*

The Court must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. *See Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1079 (C.D. Cal. 2002); *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (noting a court may not adopt representations regarding the reasonableness of time expended without independently reviewing the record); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action for a thorough inquiry on the fee request where "the district court engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party wholesale" and explaining a court should not "accept[] uncritically [the] representations concerning the time expended").

The party seeking fees bears the burden of establishing that the fees and costs were reasonably necessary to achieve the results obtained. *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Therefore, a fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). "Where the documentation of hours in inadequate, the district court may reduce hours accordingly." *Hensley*, 461 U.S. at 433.

Significantly, when fees are to be paid from a common fund, as here, the relationship between the class members and class counsel is "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). The Ninth Circuit observed:

> [A]t the fee-setting stage, plaintiff's counsel, otherwise a fiduciary for the class, has become a claimant against the fund created for the benefit of the class. It is obligatory, therefore, for the trial judge to act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.

16

*Id.* at 1302 (internal quotation marks, citation omitted). As a result the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) ("when fees are to come out of the settlement fund, the district court has a fiduciary role for the class").

The Ninth Circuit determined both a lodestar and percentage of the common fund calculation "have [a] place in determining what would be reasonable compensation for creating a common fund." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Whether the Court applies the lodestar or percentage method, the Ninth Circuit requires "fee awards in common fund cases be reasonable under the circumstances." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also Staton*, 327 F.3d at 964 (fees must be "fundamentally fair, adequate, and reasonable").

### A.      Lodestar Method

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida*, 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). Next, the court may adjust the lodestar upward or downward using a "multiplier" considering the following factors adopted by the Ninth Circuit in a determination of the reasonable fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). However, the Court has since determined that the fixed or continent nature of a fee and the "desirability" of a case are no longer relevant factors. *Resurrection Bay Conservation Alliance v. City of Seward*, 640 F.3d 1087, 1095, n.5 (9th Cir. 2011) (citing *Davis v. City of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992)).

## B.    Percentage from the common fund

As the name suggests, under this method, attorneys who create a common fund for a class may be awarded a percentage of fees from the fund. *Hanlon*, 150 F.3d at 1029; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). An award from the common fund "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense," and as such application of the doctrine is appropriate "when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Boeing Co.*, 444 U.S. at 478.

In the Ninth Circuit, the typical range of acceptable attorneys' fees is 20% to 30% of the total settlement value, with 25% considered the benchmark. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon*, 150 F.3d at 1029 (observing "[t]his circuit has established 25 % of the common fund as a benchmark award for attorney fees"); *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases"). The percentage may be adjusted below or above the benchmark, but the Court's reasons for adjustment must be clear. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including "(1) the results obtained for the class; (2) the risk undertaken by counsel; (3) the complexity of the legal and factual issues; (4) the length of the professional relationship with the client; (5) the market rate; and (6) awards in similar cases." *Romero v. Produces Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, at *8-9 (E.D. Cal. Nov. 14, 2007) (citing *Vizcaino*, 290 F.3d at 1048-1050; *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

## II.    Evaluation of the fees requested

"The district court has discretion to use the lodestar method or the percentage of the fund method in common fund cases." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir.

1997)). Notably, the Court must consider similar factors under either method. *See Kerr*, 526 F.2d at 70; *Vizcaino*, 290 F.3d at 1048-1050. Further, the Court may "appl[y] the lodestar method as a crosscheck" to determine whether the amount requested is reasonable. *Vizcaino*, 290 F.3d at 1050, n.5.

### A.   Results obtained for the class

Courts have recognized consistently that the result achieved is a major factor to be considered with a fee award. *Hensley*, 461 U.S. at 436; *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994). Here, Class Counsel assert they "recovered a maximum of $6,376,961.81 on behalf of the class, that the class members would likely not have recovered independent of this action." (Doc. 227-1 at 26-27) According to Ms. Schwartz, the recovery for class members ranges from $3.19 to $5,341.00, with an average award of $990.82. (Doc. 227-6 at 5, Jenkins Decl. ¶ 20) Though these are fair results, they are not exceptional and do not support an increase above the benchmark.

### B.   Risk undertaken by counsel

The risk of costly litigation and trial is an important factor in determining the fee award. *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299-1301 (9th Cir. 1994). The Supreme Court explained, "the risk of loss in a particular case is a product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). As a result, the Ninth Circuit approved an award slightly above the benchmark in *Vizcaino* where the case was "extremely risky for class counsel" and the "plaintiffs lost in the district court – once on the merits, once on the class definition – and twice counsel succeeded in reviving their case on appeal." *Id.*, 290 F.3d at 1048.

Here, Class Counsel asserts, "Given the risks . . . involved in class action contingency work, [they] believe a request of 33 1/3%  – even though it is above the standard benchmark – is therefore justified." (Doc. 227-1 at 26) In addition, Class Counsel assert "there are clear uncertainties surrounding Plaintiffs' ability to prove their claims given the unpredictability associated with lengthy and complex jury trials and the possibility of decertification" (*Id.*)

Significantly, the risks identified by counsel are not unique to this action, but rather apply to any class action litigation. Mr. Mallison even reports that "100% of Mallison & Martinez's legal practice involves legal work that is on a contingency fee basis." (Doc. 227-2 at 24, Mallison Decl. ¶ 60)

Further, the Ninth Circuit has suggested that the distinction between a contingency arrangement and a fixed fee arrangement alone does not merit an enhancement from the benchmark. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 n.7. (9th Cir. 2011) (observing "whether the fee was fixed or contingent" is "no longer valid" as a factor in evaluating reasonable fees); *but see In re Online DVD-Rental Antitrust Litigation*, 779 F.3d at 954-55 (finding the contingent nature of litigation remains a relevant factor to evaluate a request from the common fund). Although Mr. Mallison asserts his firm "would not have agreed to represent plaintiffs in this case other than on a contingency fee basis unless it would have been confident that it would be awarded a contingency fee approximately 1/3 of the potential recovery if we were successful in our efforts," he admits also that, rather than plaintiffs seeking out the firm's assistance, "[t]he firm chose the proposed class representatives" in this action. (Doc. 227-2, Mallison Decl. ¶¶ 21, 60)

Despite the fact that this case was taken on a contingency basis, Class Counsel do not identify any evidence that demonstrates they bore more than an atypical risk. For example, Plaintiffs succeeded in overcoming Defendant's motion to dismiss, succeeded on their motion for class certification, and prevailed on the motion to decertify one of the classes. *Compare with Vizcaino*, 290 F.3d at 1048-1049. Therefore, this factor does not weigh in favor of the request for a higher award.

### C.  Complexity of issues and skill required

The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award. *See, e.g., Lopez v. Youngblood*, 2011 U.S. Dist. LEXIS 99289, at *14-15 (E.D. Cal. Sept. 2, 2011) (in determining whether to award the requested fees totaling 28% of the class fund, the Court observed the case involved "complex issues of constitutional law in an area where considerable deference is given to jail officials," and the action "encompassed two categories of class members"); *see also In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005) ("Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award").

Class Counsel assert their skills and "the quality of work" support an award greater than the benchmark in this action. (Doc. 227-1 at 27, emphasis omitted.) According to Class Counsel, they "showed great skill, thoroughness, and conscientiousness in investigating and developing the claims,

liability theories, and estimated possible recoveries in the Litigation." (*Id.*)  Specifically, they report:

> Plaintiffs' counsel and their staff interviewed hundreds of witnesses and reviewed tens of thousands of pages of documents and/or data from employees. From these interviews, Plaintiffs' counsel and their staff collected seventy-seven (77) declarations from Giumarra fieldworkers in support of the Motion for Class Certification. [Citation.] Plaintiffs' counsel also took or defended twenty-one (21) depositions in this case, including class member declarants, named Plaintiffs, Defendant's managers and persons most knowledgeable. [Citation.]  Plaintiffs' counsel and their expert scanned and copied approximately 36,000 crewsheets reflecting late meal periods, reviewed these documents, and used them to create a FRE 1006 evidence summary compiling the 1.2 million work shifts in the 36,000 crewsheets into an electronic format by a crew of 44 analysts. [Citation.]

(Doc. 227-1 at 27-28, citations omitted)  Class Counsel contend their "experience and reputation assisted them" with their representation of the class members, "without causing unnecessary delay or creating unnecessary work."  (*Id.* at 28)

Notably, when this action was initiated in 2005, many of the lead attorneys— such as Stan Mallison, Hector Martinez, and Eric Kingsley— had been in practice for less than 10 years.  A review of the time sheets indicates a great deal of the time expended was due to conferences among counsel. Because the matter did not require exceptional skills, and Class Counsel displayed skills that were consistent with those of attorneys with comparable experience, this factor supports an award equal to the Ninth Circuit benchmark.

### D.      Length of professional relationship

Class Counsel do not address the length of the professional relationships. Santos R. Valenzuela, Trinidad Ruiz, Marta Ricon de Diaz, Ramon Cervantes Perales, and Hugo Perez Rios filed their complaint against Giummara on December 16, 2005.  (*Valenzuela*, Doc. 1) Rafael Munoz, Lidia Cruz, and Yanet Hernandez were identified as plaintiffs in the Third Amended Complaint against Giumarra on May 29, 2008.  (*Doe*, Doc. 172)  Though counsel have spent many years on this action, this factor does not weigh in favor of departure from the benchmark. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (finding "the 25 percent standard award" was appropriate although "the litigation lasted more than 13 years").

### E.      Awards in similar cases

Notably, as discussed above, 25% of a common fund is "benchmark award for attorney fees" in the Ninth Circuit.  *Hanlon*, 150 F.3d at 1029; *see also Vizcaino,* 290 F.3d at  1047 (9th Cir. 2002).

Previously, this Court observed that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013). Thus, the amount requested by Class Counsel is at the highest range of percentages from the common fund. *See id.*

Class Counsel acknowledge that "courts in the Eastern District have awarded Class Counsel attorneys' fees of 30% of the net settlements in recent class action cases on behalf of fieldworkers employed in the tablegrape industry." (Doc. 227-2 at 29, citing *Rodriguez v. D.M. Camp & Sons*, Case No. 1:09-cv-00700 and *Morales v. Stevco*, Case No. 1:09-cv-00704). However, Class Counsel argue *Rodriguez* and *Morales* "are distinguishable in a number of ways" that support a higher fee award. (*Id.*) Class Counsel report that "the amount of discovery in this case was substantially greater than in [the] *Rodriguez* and *Morales* matters," including the number of documents reviewed, interviews performed by Counsel, and 21 depositions. (*Id.*)

On the other hand, the results obtained in the *Rodriguez* and *Morales* settlements were much more beneficial to the class members than the estimated awards for class members in this action. In *Morales,* the average award for class members was "over $4,300" for each class member. *Morales*, 2013 WL 1222058 at *2 (E.D. Cal. Mar. 25, 2013). The Court found this was "a significant recovery" that weighed in favor of a higher award. *Id.* Similarly, in *Rodriguez*, the average award was approximately $2,200 award per worker, and "the highest award [was] estimated to be approximately $17,300." *Rodriguez*, 2013 WL 2146927 at *13 (E.D. Cal. May 15, 2013). The Court determined such results were significant and weighed in favor of an award higher than the benchmark. *See Morales*, 2013 WL 1222058 at *2; *Rodriguez*, 2013 WL 2146927 at *13. In contrast, here, the average award for class members $990.82 (Doc. 227-6 at 4-5, Schwartz Decl. ¶20) Given the disparity in the awards, the Court does not find the prior awards in *Morales* and *Rodriguez* support an award above the benchmark.

### F.    Lodestar Crosscheck and Market Rate

Class Counsel provided a list of each legal professional who worked on this action and report they worked at total of 4,661.52 hours, which resulted in a lodestar calculation of $2,535,424.76 . (*See* Doc. 227-2 at 24-26, Mallison Decl. ¶ 62) In general, when the lodestar is used as a cross-check for a fee award, the Court is not required to perform an "exhaustive cataloguing and review of counsel's

hours." *See Schiller*, 2012 WL 2117001 at *20 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir.2005); *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166 (S.D.Cal. 2007)). However, because a review of the records indicated a number of entries for tasks that did not relate to the claims against Giumarra, the Court has performed a detailed review of the records, which reveals that Class Counsel's lodestar calculation is flawed.

### 1. Hourly rate

As an initial matter, the hourly rates sought by counsel and the professional staff are not in accord with the market rate for this community. The Supreme Court explained that attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895-96 and n.11 (1984). In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho*, 523 F.3d at 979. Thus, when a case is filed in the Fresno Division of the Eastern District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate . . ." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

The fee applicant bears a burden to establish that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. The applicant meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11; *see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate.") However, "rates, other than those of the forum, may be employed if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

### a. Attorneys[8]

Here, the hourly rates sought by counsel range from $250 to $850 per hour. (*See* Doc. 227-2 at 23-26, Martinez Decl. ¶ 62)  In support of these rates, the attorneys refer the Court to rates billed or awarded in other district courts.  For example, Mr. Kingsley provided the Court with a survey conducted by the *National Law Journal*, which indicates five California law firms "regularly charged in excess of $500 [per hour] for their partners," and "four of these firms charge as high as $600, $620, $650 and up to $850 per hour." (Doc. 227-11 at 3, Kingsley Decl. ¶ 9)  In addition, Mr. Kingsley filed an article from the *Wall Street Journal* entitled "Lawyers Gear Up Grand New Fees," which "states that hourly fees are expected to rise following the trend that began in New York where the top lawyers are now billing hourly at upwards of $1,000.00." (*Id.* at 5, ¶ 15)  Mr. Kingsley also provides an article from *The Daily Journal* entitled "*Associate billing rates start climbing again,*" which indicates hourly rates in Los Angeles, San Diego, and San Francisco ranged in average from $394 to $550 for associates and from $598 to $797 for partners. (Doc. 227-14 at 2)  However, this information is not helpful toward the Court's analysis regarding fees in the Fresno Division of the Eastern District.[9]

Significantly, this Court has declined to calculate a lodestar with the hourly rate of $650 requested by Stan Mallison and Hector Martinez in *Ontiveros v. Zamora*, 303 F.R.D. 356, 373-74 (E.D. Cal. 2014).  The Court noted that the hourly rates were "high for even the most experienced attorneys in the Eastern District."  *Id.* at 374 (citing *Johnson v. Allied Trailer Supply*,, 2014 WL 1334006, at *5 (E.D. Cal. Apr. 3, 2014); *Joe Hand Promotions, Inc. v. Albright*, 2013 WL 4094403, at *2 (E.D. Cal. Aug. 13, 2013).  Consequently, the Court calculated the lodestar using $400 as the hourly rate for the partners at Mallison & Martinez and $175 as the rate for associates.  *Id.*  Although *Ontiveros* was filed

---

[8] Class Counsel failed to provide any information regarding the admission dates or the level of experience of the following attorneys: Jessica Juarez, Matthew Gauger, Alan Crowley, Manuel Boigues, Ira Gottlieb, David Adelstein, Erica Deutsh, Kirk Prestegard, Jonathan Cohen, Marissa Nuncio, Michelle Furukawa, Ramon Gonzalez, Benjamin Valero, Catherine Burke Schmidt, Erin M. Smith, Mitra Torabi, Matthew McNicholas, and Robert Wargo. However the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014). Accordingly, the Court takes judicial notice of the admission dates of each of these attorneys as represented on the website of the State Bar of California.  *See id.;* Fed. R. Evid. 201(b).

The Court was unable to locate any information for Antranik Patanian, Reuben A. Guttman, and MJ Quinn indicating they are members of the California State Bar.  However, the Court was able to determine that Reuben A. Guttman was admitted to practice in Washington D.C., and MJ Quinn was admitted to practice in the state of New York. The Court takes judicial notice of the admission dates for these attorneys as recorded on the websites of the Washington, D.C. Bar and the NY Office of Court Administration.

[9] The law firms identified in the *National Law Journal* survey are located in Los Angeles, California (Doc. 227-12), which lies within the Central District. In addition, San Diego lies within the Southern District, and San Francisco lies within the Northern District.

in the Sacramento Division of the Eastern District, these hourly rates demonstrate that the hourly rates requested herein are not aligned with hourly rates in the Eastern District.

Rather, the Court determined "hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014); *see also Trujillo v. Singh*, 2017 WL 1831941 (E.D. Cal. May 8, 2017) (awarding an hourly rate of $300 per hour to counsel with 15 years of experience, finding this amount was appropriate for the Fresno area); *Miller v. Schmitz*, 2014 WL 642729 at *3 (E.D. Cal. Feb. 18, 2014) (the "prevailing hourly rate in this district is in the $400/hour range for experienced attorneys," and awarding $350 per hour for an attorney with 20 years of experience). For attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Silvester*, 2014 WL 7239371 at *4 (citing *Willis v. City of Fresno*, 2014 WL 3563310 (E.D. Cal. July 17, 2014); *Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June 19, 2014)). With these parameters in mind, the hourly rates for counsel must be adjusted to calculate the lodestar.[10]

Hours for each of the attorneys who have been admitted to practice for 20 years or more—including Stan Mallison, Hector Martinez, Eric Kingsley, Thomas Lynch, Marcos Camacho, David Rosenfeld, William Sokol, Christian Raisner, Theodore Franklin, Emily Rich, Alan Crowley, Mary Suzanne Murphy, Ira Gottlieb, David Adelstein, Sabrina Kim, Jeff Westerman, Elizabeth Lin, Matthew McNicholas, Robert P. Wargo, and Reuben Guttman—will be calculated at the rate of $400 per hour. For attorneys in practice between 15 and 20 years—including Darren Cohen, Mario Martinez, Alan Crowley, Manjari Chawla, Erica Deutsch, Nicole Dukett, Benjamin Valerio, Catherine Burke Schmidt and MJ Quinn—the hourly rate is adjusted to $350 per hour. Further, for attorneys in practice between 10 and 15 years—including Marco Palau, Steve Hernandez, Deanna Engles, Elana Levine, Jonathan

---

[10] Although rates for outside of the relevant forum may be employed if local counsel is unavailable, Plaintiffs' counsel do not assert that local counsel was unavailable. Thus, they fail to meet their burden to show that hourly rates other than those of the Fresno Division should be sued for purposes of calculating the lodestar. *See Camacho, 523 F.3d at 979; Barjon v. Dalton*, 132 F.3d 496, 500-02 (9th Cir. 1997) (affirming the district court's decision to decline an award of out-of-district billing rates where the fee applicants failed "to prove the unavailability of local counsel," and instead reduced the award to the hourly rates in the relevant community).

Cohen, Marissa Nuncio, Michelle Furukawa, Erin Smith, and Mitra Torabi—the rate is adjusted to $300 per hour. The hours worked by attorneys with experience ranging between 5 and 10 years— including Joseph Sutton, Jessica Juarez, Kelsey Szamet, Liane Katzenstein, Edgar Auilasocho, Manuel Boigues, Linelle Mogado, and Kerianne Steele—the lodestar will be calculated at a rate of $225 per hour. For attorneys who have been in practice for less than five years—including Eric Sebastian Trabucco, David Winston, Arthur Four, and Kirk Prestegard, the rate is adjusted to $175 per hour.

Based upon the prior survey of the attorney fees in the Fresno Division and the Court's own knowledge, these hourly rates are reasonable. *See Silvester,* 2014 WL 7239371 at *4; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

### b. Non-attorney staff

Class Counsel calculated their lodestar using hourly rates ranging from $75 to $325 for non-attorney support staff. (*See* Doc. 227-2 at 23-26) Generally, paralegal rates within the Fresno Division of the Eastern District range between $75 to approximately $150.00. *See Moreau v. Daily Independent*, 2013 WL 796621 at *3 (E.D. Cal. Mar. 1, 2013) (observing that "$75 for paralegals [is] reasonable for litigation performed in this district"); *Spence v. Wells Fargo Bank, N.A.*, 2012 WL 844713 at *5 (E.D. Cal., Mar. 12, 2012) (approving "paralegal or other support rates" ranging from $125 to $155).

Class Counsel request hourly rates of $75 per hour for Beverly Yahata and Christopher Papaleo, and $95 per hour for Joel Salas. (*See* Doc. 227-2 at 23, 26) Because these rates are within the range generally awarded in the Fresno Division, no adjustment is required. In addition, a higher hourly rate is appropriate for Judy Castillo, Eleanor Natwick, Teresa Oviedo Rojas, and Aaron Nathan, who all have extensive experience as paralegals. (*See* Doc. 227-20 at 88-11, Rich Decl. ¶¶17-20) Accordingly, the rate for these paralegals will be adjusted to $150. *See Spence*, 2012 WL 844713 at *5.

On the other hand, Class Counsel offer support for why rates higher rates per hour are appropriate for Hector Hernandez, Jan Spring, Staci Schoff, Paula Sotelo, Paulino Cruz, Aida Sotelo, David Rodriguez, Brenda Rizo, Martin Vasquez, Bonita Rivera, Michelle Grisat, Cecille Chaffins,

Sharon Chang, Dana Powers, Jeremy Turner, Aaron Welo, and Antranik Patanian[11]. Given the lack of information regarding their experience, the Court adjusts their hourly rates to $100 per hour. *See Willis*, 2014 WL 3563310 at *14 (setting the hourly rate for a paralegal at $100 where the plaintiffs did "not offer[] any reason" to support a rate "set at the highest level in this district").

Finally, Class Counsel apply an hourly rate of $150 per hour for a law clerk who worked on this action. (Doc. 227-2 at 23) However, the Court has determined that an appropriate rate for law clerks is $100. *See Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 460-61 (E.D. Cal. 2013) (awarding the rate of $100 per hour to law clerks, upon finding the rates of "$100-$110 per hour are 'in line with those rates prevailing in the community.'") Therefore, the rate for David Eckfeld is adjusted to $100 per hour for purposes of the lodestar calculation.

### 2. Hours expended

Representatives from the law firms designated as Plaintiffs' counsel have provided a declaration including the hours worked in support of the request for attorney fees. Accordingly, the Court has reviewed the hours reported by each firm to determine whether they are reasonable.

### a. Mallison & Martinez

Stan Mallison reports that his law firm worked 1,708.89 hours in the course of this action since 2005. (Doc. 227-2 at 23) For actions taken before *Doe* was severed into six separate actions, the firm seeks 1/6 of the recorded time, unless the task clearly related only to the claims against Giumarra.

### i. Time expended by counsel

The tasks expended by counsel include, as discussed above, not only drafting pleadings but interviewing a significant number of witnesses, taking more than twenty depositions, and reviewing discovery. Although there are a significant number of entries related to interoffice conferences and meetings with co-counsel, which may not be compensable[12], the Ninth Circuit has observed that a

---

[11] As noted above, the Court was unable to determine whether Antranik Patanian was a member of the Bar. At the hearing, the Court noted the lack of information regarding Antranik Patanian, and counsel did not identify Antranik Patanian as an attorney.

[12] The Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)). Generally, two attorneys cannot bill for attending the same meeting or communicating with each other, as such time is unnecessary. *In re Mullins*, 84 F.3d 459, 467, 318 U.S. App. D.C. 19 (D.C. Cir. 1996); Robinson v. Plourde, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010).

"lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306. The Court's review of the time sheets does not reveal any further issues, such as overbilling or inflated hours by counsel.

### ii. Time expended by support staff

Review of the time sheets reveals several tasks by support staff are purely clerical and should be excluded from the lodestar calculation. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989). Specifically, Paula Sotelo recorded 7.4 hours for calendaring deadlines and locating, printing, downloading, and circulating documents. (*See* Doc. 227-4 at 45-47)

Courts have discounted paralegal billing entries for "clerical tasks" such as "filing, transcript, and document organization time." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.*, 132 F.3d 978, 985 (4th Cir. 1997) (approving the court's elimination of hours spent on secretarial tasks from the lodestar calculation); *Jones v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying"). Accordingly, 7.4 hours will be deducted from the lodestar for Ms. Sotelo.

### b. Kingsley & Kingsley, APC

According to Eric Kingsley, his law firm worked a total of 722.9 hours on this action. (Doc. 227-11 at 12, Kingsley Decl. ¶ 30) He reports that attorneys at Kingsley & Kingsley, APC spent time conducting discovery in this action including: "reviewing documents produced in discovery (payroll records, policies, etc.)"; "drafting and responding to discovery, both requests to produce and interrogatories;" and investigating "job functions, duties, compensation, policies, and procedures." (*Id.*) Mr. Kingsley also asserts his firm was responsible for drafting pleadings including "Complaints, Motions to Compel discovery responses, Opposition to Motion for Summary Adjudication, Opposition to Motion to Decertify, Motion for Preliminary Approval, various documents related to Preliminary Approval, Motion for Final Approval, [and] Class Notice document." (*Id.*, ¶30(g)) Finally, Kingsley

---

On the other hand, many courts have recognized that staffing multiple attorneys on a single task may improve the chance of success in litigation. *See, e.g., PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010) ("division of responsibility may make it necessary for more than one attorney to attend activities such as depositions and hearings. Multiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law." (citation and internal quotation marks omitted)); *United States v. City & County of San Francisco*, 748 F. Supp. 1416, 1421 (N.D. Cal. 1990) (observing that "the presence of several attorneys at strategy sessions…may be crucial to the case").

& Kingsley assisted with mediation preparation, "negotiating the terms of the Settlement;" "reviewing and making changes to the Settlement Agreement;" and "coordinating and overseeing all aspects of the administration of the Settlement (review documentation, approv[ing] form and content, etc.)." (*Id.* at 12-13, ¶30(s)-(w).)

Review of the timesheets does not reveal any overbilling or inflated hours. Further, clerical tasks have not been included in the lodestar calculation. Because the time expended by the law firm on the tasks above appears reasonable, no deductions are required from the hours expended by Kingsley & Kingsley, APC.[13]

### d. McNicholas & McNicholas, LLP

Mr. Kingsley provided time sheets from the law firm of McNicholas & McNicholas, reporting the attorneys there spent 357.5 hours on the claims against Giumarra. (Doc. 227-11 at 14-15, Kingsley Decl. ¶ 39; *see also* Doc. 227-18)

#### i. Time expended by counsel

Notably, the minimum time recorded was 0.25 hours, which is a practice that has been criticized because it inflates time spent on the matter. *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (affirming a reduction after finding the billing practice inflated the time recorded); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100-01 (D. Haw. 2010) (applying a 20% reduction for billing in quarter-hour increments); *Prudential Ins. Co. v. Am. v. Remington*, 2014 U.S. Dist. LEXIS 9209 at *9 (E.D. Cal. Jan. 24, 2014) (also applying a 20% reduction where counsel billed in 15 minute-increments).

In *Welch*, the district court "imposed a 20 percent across-the-board reduction on [the] requested hours" because the law firm "billed in quarter-hour increments." *Id.*, 480 F.3d at 948. The district concluded the "practice of billing by the quarter-hour resulted in a request for excessive hours . . . because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time." *Id.* The Ninth Circuit also reviewed the time sheets, and noted: "Our own review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for the

---

[13] A significant number of hours related to emails or conferences with co-counsel. However, Kingsley & Kingsley was appointed as a co-chair of the Executive Committee and charged with the responsibility of formulating and drafting materials, documents, and motions. (*See* Doc. 27 at 2). In light of these obligations, the hours related to keeping other attorneys apprised of the actions taken and litigation planning do not appear unreasonable.

drafting of letters, telephone calls and intraoffice conferences." *Id.* Therefore, the reduction for quarter-hour billing was affirmed. *Id.*

Counsel billed 15 minutes on several occasions for reading minute orders from the Court, emailing to confirm a meeting, and reviewing the calendar regarding the scheduling conference. (*See* Doc. 227-18 at 8-17) In *Remington*, this Court noted that "15-minute billing for reading the three-sentence Minute Order, which should have been read in 30 seconds or less time, obviously inflated the time spent performing that task, and causes concern that other unverifiable tasks likely took a fraction of the time billed to complete." *Prudential Ins. Co. v. Am. v. Remington*, 2014 U.S. Dist. LEXIS 9209 at *9. Similarly, billing for reading brief orders issued on September 5, 2006; March 16, 2007; and January 15, 2008 suggests that the reported time was inflated by the quarter-hour billing minimum on other tasks such as reviewing emails, leaving a telephone message, and conferences with co-counsel. *See id; Welch*, 480 F.3d at 948-49. Consequently, the time reported by the attorneys at McNicholas & McNicholas is reduced by 20% for purposes of the lodestar calculation.

ii.     *Time expended by support staff*

The time sheets include entries for clerical tasks by Beverly Yahata, including formatting documents for electronic filing, filing documents, and calendaring deadlines. (*See* Doc. 227-18 at 3-5) Because all the entries by Ms. Yahata—totaling 12.75 hours—are for clerical tasks, the time will be deducted from the lodestar calculation. *See Jones*, 845 F. Supp. 2d at 1027.

d.     Bush, Gottlieb, Singer, Lopez, Kohanski, Adelstein, Dickinson

Mr. Kingsley also provided time sheets from the law firm of Bush, Gottlieb in support of the fees request, reporting the firm expended 344.9 hours on the litigation. (Doc. 227-11 at 13-14, Kingsley Decl. ¶¶ 35-36) However, the time sheets include several tasks that relate to the claims against other grape growers, such as El Rancho Farms, DM Camp, and Sunview. For example, Ira Gottlieb billed 1.5 hours on November 17, 2005, for drafting an analysis of Kovacevich, who was a supervisor of El Rancho Farms. (*See* Doc. 227-11 at 3) Mr. Gottlieb also billed 0.4 hours for researching DM Camp on November 29, 2005. (*Id.*) Similarly, Jonathan Cohen billed 8.0 hours on December 5, 2005 for traveling to Delano to interview Sunview workers. (*Id.* at 4) Because these tasks clearly did not relate to the claims against Giumarra, the time will be reduced from the lodestar

calculation. *See Gauchat-Hargis v. Forest River, Inc.*, 2013 U.S. Dist. LEXIS 128508 at *11 (E.D. Cal. Sept. 9, 2013) ("Time spent on tasks that are not relevant to the case at issue should be eliminated from the lodestar analysis.")

The Court finds the remaining time expended by the law firm—for tasks including meeting with potential class members, opposing motions to dismiss, and working on the motion for class certification and related motion to strike evidence—appears reasonable. (*See* Doc. 227-17 at 2-8) Accordingly, no further deductions are required.

### e.      Marcos Camacho, A Law Corp.

Mario Martinez, who "was previously employed as an attorney with Marcos Camacho, A Law Corp.," filed a declaration on behalf of the law firm, explaining that after Mr. Camacho became a judge in the Superior Court of Kern County, Mario Martinez and two partners formed Martinez Aguilascocho & Lynch APLC. (Doc. 227-19 at 2, Martinez Decl. ¶ 1) Mr. Martinez reports that the Law Offices of Marcos Camacho spent 974.85 hours on this action, including 734.79 hours by attorneys and 239.75 hours by paralegals. (*Id.* at 6, ¶ 10)

Although the time sheets for the law firm were, apparently, inadvertently omitted, Mr. Martinez has provided a detailed summary of the actions undertaken by the attorneys in this action. According to Mr. Martinez, he was "the primary attorney coordinating the fact gathering and interviewing of class members in preparation for drafting the complaint in this matter," as well as "for gathering, preparation and signing of class member declarations by our office and co-counsel to be used in support of Plaintiffs' Motion for Class Certification, and Opposing Defendants' Motion to Decertify the Class." (Doc. 227-19 at 6, ¶ 10) Mr. Martinez reports:

> I spent approximately over 260 hours investigating the claims, interviewing class members, identifying class issues, and drafting and reviewing draft declarations from class members in support of Plaintiffs' Motion for Class Certification and also in Opposition to Defendants' Motion to Decertify the Class; I spent another approximate 58.5 hours researching, reviewing and providing input into the Motion for Class Certification; approximately 35 hours on legal research and writing on Plaintiffs' Reply to Defendants' Opposition to Class Certification, including Objections to Declarations, and Motion to Strike Declarations; approximately 12 hours and 20 minutes on legal research and writing regarding both Plaintiffs' and Defendants' Objections to Findings and Recommendations on Order on Class Certification; I spent approximately 40 hours on mediation briefs and settlement mediations. The remainder of my time I spent in conferences or calls with co-counsel regarding various aspects of the litigation including various filings in support of class certification; drafting and responding to discovery; conducting formal discovery; reviewing documents produced in discovery

31

(payroll records, time records, policies, etc.); briefing and appearing for hearings and motions; discussing issues related to damages; post-class certification motions; meeting with named plaintiffs and other class members to provide updates on the status of the case; communicating with named plaintiffs and class members regarding preparation for depositions; discussing settlement with co-counsel, and on various law and motion issues, teleconferences, and filings throughout the 10 plus year course of this case.

(*Id.* at 6-7)  Given the number of class member declarations prepared, the extent to which the motion for class certification was challenged, and the amount of discovery produced in the action, the time expended by Mr. Martinez appears reasonable.

In addition, the time expended by Thomas Lynch, Marcos Camacho, and Edgar Aguilasocho appears reasonable.  Specifically, Mr. Lynch spent 31.58 hours on the action, and Mr. Martinez reports "the bulk" of this time was spent "preparing named plaintiffs' and/or class members for depositions and defending depositions."  (Doc. 227-19 at 7, ¶ 11)  Mr. Camacho "spent more than 50 hours interviewing class members and drafting class member declarations in support of Plaintiffs' Motion for Class Certification."  (*Id.*, ¶ 12)  Further, Mr. Martinez reports that the time expended by Edgar Aguilasoho, a total of 22.1 hours, was for the purpose of researching post-certification issues.  (*Id.*)  Given the tasks undertaken by counsel, the time does not appear unreasonable.

Finally, Mr. Martinez reports that the paralegal time expended in this action "was spent organizing meetings with class members, interviewing class members and drafting class member declarations in support of Plaintiffs' Motion for Class Certification or Plaintiffs' Opposition to the Motion to Decertify, responding to class representative and class member inquiries about the case, and setting up meetings with class representative and class members regarding the progression of the case, as well as sitting in on deposition preparation and depositions of class members and representatives."  (Doc. 227-19 at 8)  Given the number of interviews that occurred in this action and the significant number of declarations filed in support of the motion for class certification, the Court finds the time expended by the paralegals of the law firm was reasonable.

### f.      Weinberg, Roger & Rosenfeld

Emily Rich, a shareholder with the law firm of Weinberg, Roger & Rosenfeld, reports that "the firm expended 1557.23 hours in attorney and paralegal time" prior to the severance of *Doe* in March 2008, and seeks 1/6 of this time, or 259.54 hours.  (Doc. 227-20 at 10, Rich Decl. ¶ 22)  In addition,

Ms. Rich reports they spent 126.40 hours on the claims against Giumarra after the *Doe* action was severed into six separate actions.  (*Id.* at 11, ¶ 24)

*i.     Work related to other grape growers*

Importantly, it is clear that many tasks reported relate to the claims of individuals who were not employed by Giumarra, but instead related to claims raised against other defendants in *Doe*.  For example, Christian Raisner bills for conferences related to other defendants, while Linelle Moago's time entries include travel to Bakersfield to interview former employees of DM Camp and Sunview. Specifically, the following tasks billed by counsel relate to employers other than Giumarra:

| DATE | ATTORNEY | TASK | TIME |
|---|---|---|---|
| 11/27/2005 | Raisner | Review of court dockets and related case against bankrupt farm labor contractor Casimiro; telephone conference with co-counsel Martinez; research facts. | 3.70 |
| 12/13/2005 | Raisner | Preparation and filing of notice of related case re removed case in bankruptcy court; email with co-counsel Martinez re Rosenfeld meeting. | 3.30 |
| 1/4/2006 | Raisner | Telephone calls) from and telephone cail(s) to Amy Johnson Barks re service date and extension request for El Rancho Farms; review of possible stipulation. | 1.00 |
| 1/5/2006 | Raisner | Telephone conference with David Dixon, attorney for Defendants Stevco, FAL, Inc dba Lucich Farms. re case management and re stipulation for dismissal without prejudice from related Lara vs. Casimiro case. | 0.25 |
| 1/5/2006 | Raisner | Telephone calls) from Ron Barsamian re extension of time for defendant DM Camp to respond to first amended complaint. | 0.25 |
| 1/5/2006 | Raisner | Telephone conference with Amy Barks re stipulations for dismissal without prejudice in related Lara vs. Casimiro case; review of stipulation. | 0.25 |
| 1/6/2006 | Raisner | Telephone conference with Ronald H Barsamian (attorney for defendant DM Camp &Sons); execute stipulation for extension and fax to Barsamian with message; review of stipulation and rules. | 1.00 |
| 1/12/2006 | Raisner | Review of stipulation for Zaninovich and Sunview to extension to answer or respond to First Amended Complaint; fax with message to Brendan Dolan. | 0.50 |
| 1/23/2006 | Raisner | Three letters to Victoria Bradshaw (Workforce Development Agency) re section 2699 of Labor Code re DM Camp &Sons, Marko Zaninovich, Inc.; and Sunview Vineyards of California, Inc.; fact research re same. | 1.25 |
| 3/4/2006 | Mogado | Travel to Bakersfield with co-counsel H. Martinez, S. Mallison, and C. Raisner to meet clients and witnesses. | 8.00 |
| 3/5/2006 | Mogado | Interview former workers for DM Camp. | 3.00 |
| 3/5/2006 | Mogado | Interview former Sunview worker. | 2.00 |
| 4/9/2006 | Mogado | Meet with litigation team re DM Camp motion to dismiss; review motion; discuss organization of response. | 2.00 |
| 5/30/2006 | Raisner | Review of reply on Motion to Dismiss by D.M. Camp. | 1.25 |
| 9/11/2007 | Raisner | Arrangements and preparation for telephone conference | 2.00 |

| | | meeting of counsel; telephone conference with William Alexander (EI Rancho counsel) re same; email to all counsel; email from Dolan (Sunview) re same. | |
|---|---|---|---|
| 9/12/2007 | Mogado | Rule 26(f) conference by telephone with Bill Alexander (El Rancho). Confer with C. Raisner and E. Rich. Telephone call with defense counsel and plaintiffs' counsel. | 5.00 |
| 10/4/2007 | Raisner | Preparation draft separate joint scheduling conference report with D.M. Camp only; email with R. Barsamian. | 3.00 |
| 10/5/2007 | Raisner | Email exchanges with R. Barsamian and M. Quesenbery; review of draft from R. Barsamian re defendant D.M. Camp. | 3.00 |

(*See* Doc. 227-23 at 3-30)

In total, the attorneys at Weinberg, Roger & Rosenfeld worked 40.75 hours on actions that clearly did not relate to claims of individuals who were not employed by Giumarra. As such, even 1/6 the time for these tasks should not be included in the lodestar calculation. *See Gauchat-Hargis*, 2013 U.S. Dist. LEXIS 128508 at *11 ("Time spent on tasks that are not relevant to the case at issue should be eliminated from the lodestar analysis.") This results in a deduction of 6.79 hours from the lodestar.[14]

### ii. Clerical tasks

Class Counsel's lodestar calculation included time for clerical tasks performed by attorneys Linelle Mogado and Emily Rich. For example, Ms. Rich included 3.0 hours spent dealing with "filing issues" and filing documents in the log. (*Id.* at 23-24) In addition, Ms. Mogado's time included learning data software, doing data entry, training temporary support staff employee on the software, and consulting with the firm's IT department. (*See e.g.*, Doc. 227-23 at 16, 26)

In addition, the lodestar calculation included clerical tasks by paralegals Eleanor Natwick, Judy Castillo, and Aaron Nathan. For example, Ms. Natwick's time entries include 31.25 hours for tasks such as filing; "[d]ocument organization;" downloading, printing, and saving documents from PACER; and determining deadlines.[15] (*See, e.g.,* Doc. 227-23 at 22-23, 25-27; Doc. 227-24 at 6-8) Judy Castillo and Aaron Nathan spent 3.75 hours and 0.75 hours respectively reviewing documents for deadlines after the severance of the action. (*See* Doc. 227-24 at 7-9)

Given the clerical nature of these tasks, the time expended should be deducted from the lodestar calculation. *See Missouri*, 491 U.S. at 288 n. 10; *Nadarajah,* 569 F.3d at 921. Because Class Counsel

---

[14] This includes 3.46 hours for Mr. Raisner and 3.33 hours for Ms. Mogado.
[15] This includes 26.75 hours prior to the severance of the action and 4.5 hours after the severance.

34

seeks 1/6 of the time prior to the severance, this results in a deduction of 0.5 hours for Emily Rich, 2.5 hours for Linelle Mogado, 8.96 hours for Eleanor Natwick, 3.75 hours for Judy Castillo, and 0.75 hours for Aaron Nathan.

### g. Milberg, LLP

David Azar submitted a declaration on behalf of Milberg LLP, reporting: "The total number of hours expended on this litigation by [the] firm is 110.46 hours. The total lodestar for [the] firm is $90,576.00, consisting of $70,901.5 for attorneys' time and $19,684.50 for professional time." (Doc. 298 at 2, ¶ 6.) Importantly, however, numerous hours were billed that related to the other defendants in *Doe* and for clerical tasks.

#### i. *Tasks related to other defendants*

Like Mallison & Martinez, Milberg LLP represented the *Doe* plaintiffs in the action initiated in November 2005. Therefore, the law firm also seeks an award of 1/6 of the time related to the litigation related to *Doe*. However, the time sheets include several tasks that did not relate to Giumarra following the severance of *Doe*. For example, Sabrina Kim noted that she prepared for a hearing and appeared at a "Mandatory Scheduling Conference in El Rancho and DM Camp" in July 2009. (Doc. 227-8 at 20) Nicole Duckett indicated she assisted with the "discovery exchange for D.M. Camp and El Rancho." (*Id.* at 22) Ms. Duckett, Ms. Kim, and Jeff Westerman also worked on settlement of the claims against Castlerock. (*Id.* at 24-25) Similarly, Ms. Kim included time spent related to mediation for D.M. Camp. (*Id.* at 22) Counsel spent a total of 18.25 hours on claims that clearly do not relate to Giumarra, which should be omitted from the lodestar.[16] *See Gauchat-Hargis,* 2013 U.S. Dist. LEXIS 128508 at *11 ("tasks that are not relevant to the case at issue should be eliminated from the lodestar analysis").

#### ii. *Clerical tasks*

The lodestar calculation by Mr. Azar includes work by document clerks, such as Lindbergh Cox, Jessica Ortiz and Ray Velazquez. (Doc. 227-7 at 4) The document clerks were responsible for docketing documents, copying, printing and "monitoring" the case. (*See, e.g.* Doc. 227-8 at 15-17) Given the clerical nature of these tasks, the time attributed to a "document clerk" should not be

---

[16] This includes deductions of 7.25 hours for Ms. Kim, 10.75 hours for Ms. Duckett, and 0.25 hours for Mr. Westerman.

included in the lodestar calculation.  *See Missouri*, 491 U.S. at 288 n. 10; *Nadarajah,* 569 F.3d at 921.

This results in the deduction of 39.50 hours.

### 3.    Lodestar Calculation

With the hourly rates and time adjustments set forth above, the lodestar for the time expended in this action is $**1,507,918.25**:

| LAW FIRM | LEGAL PROFESSIONAL | ADJUSTED HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Mallison & Martinez ($536,303.00)** | Stan Mallison | 502.89 | $400 | 201,156.00 |
| | Hector Martinez | 233.37 | $400 | 93,348.00 |
| | Marco Palau | 521.23 | $300 | 156,369.00 |
| | Jessica Juarez | 4.50 | $225 | 1,012.50 |
| | Joseph Sutton | 304.60 | $225 | 68,535.00 |
| | Eric Trabucco | 32.10 | $175 | 5,617.50 |
| | Hector Hernandez | 0.82 | $100 | 82.00 |
| | Jan Spring | 2.08 | $100 | 208.00 |
| | Paula Sotelo | 3.90 | $100 | 390.00 |
| | Paulino Cruz | 78.00 | $100 | 7,800.00 |
| | Staci Schoff | 15.00 | $100 | 1,500.00 |
| | Joel Salas | 3.00 | $95 | 285.00 |
| | | | | |
| **Kingsley & Kingsley ($236,458.00)** | Eric Kingsley | 372.20 | $400 | 148,880.00 |
| | Darren Cohen | 23.70 | $350 | 8,295.00 |
| | Kelsey Szamet | 71.90 | $225 | 16,177.50 |
| | Liane Katzenstein | 10.70 | $225 | 2,407.50 |
| | David Winston | 73.00 | $175 | 12,848.00 |
| | Steve Hernandez | 139.50 | $300 | 41,850.00 |
| | Deanna Engles | 2.00 | $300 | 600.00 |
| | Elana Levine | 7.10 | $300 | 2,130.00 |
| | Arthur Four | 13.20 | $175 | 2,310.00 |
| | David Eckfeld | 9.60 | $100 | 960.00 |
| | | | | |
| **Marcos Camacho, A Law Corp. ($361,534.00)** | Mario Martinez | 584.11 | $350 | 204,438.50 |
| | Thomas Lynch | 31.58 | $400 | 93,348.00 |
| | Marcos Camacho | 87.00 | $400 | 34,800.00 |
| | Edgar Auilasocho | 22.10 | $225 | 4,972.50 |
| | Aida Sotelo | 70.00 | $100 | 7,000.00 |
| | David Rodriguez | 31.75 | $100 | 3,175.00 |
| | Brenda Rizo | 12.50 | $100 | 1,250.00 |
| | Martin Vasquez | 58.00 | $100 | 5,800.00 |
| | Bonita Rivera | 67.50 | $100 | 6,750.00 |
| | | | | |
| **Weinburg, Roger & Rosenfeld ($124,007.00)** | David Rosenfeld | 3.28 | $400 | 1,312.00 |
| | Bill Sokol | 4.04 | $400 | 1,616.00 |
| | Chris Raisner | 91.53 | $400 | 36,612.00 |

|  | | | | |
|---|---|---|---|---|
|  | Theodore Franklin | 3.50 | $400 | 1,400.00 |
|  | Emily Rich | 123.18 | $400 | 49,272.00 |
|  | Matthew Gauger | 0.25 | $400 | 100.00 |
|  | Alan Crowley | 24.60 | $350 | 8,610.00 |
|  | Manuel Boigues | 5.90 | $225 | 1,327.50 |
|  | Linelle Mogado | 70.25 | $225 | 15,806.25 |
|  | Manjari Chawla | 5.17 | $350 | 1,809.50 |
|  | Kerianne Steele | 18.21 | $225 | 4,097.25 |
|  | Mary Murphy | 1.75 | $400 | 700.00 |
|  | Michelle Grisat | 6.38 | $100 | 638.00 |
|  | Eleanor Natwick | 1.33 | $150 | 199.50 |
|  | Teresa Oviedo Rojas | 2.88 | $150 | 432.00 |
|  | Judy Castillo | 0.50 | $150 | 75.00 |
|  | Aaron Nathan | 0.00 | n/a | 0.00 |
|  | | | | |
| **Bush Gottlieb ($119,202.50)** | Ira Gottlieb | 162.10 | $400 | 64,840.00 |
|  | David Adelstein | 20.10 | $400 | 8,040.00 |
|  | Erica Deutsch | 98.80 | $350 | 34,580.00 |
|  | Kirk Prestegard | 11.10 | $175 | 1,942.50 |
|  | Jonathan Cohen | 17.00 | $300 | 5,100.00 |
|  | Marissa Nuncio | 14.90 | $300 | 4,470.00 |
|  | Anatranik Patanian | 2.30 | $100 | 230.00 |
|  | | | | |
| **Milberg LLP ($37,347.50)** | Sabrina Kim | 28.46 | $400 | 11,384.00 |
|  | Jeff Westerman | 3.54 | $400 | 1,416.00 |
|  | Nicole Duckett | 37.88 | $350 | 13,258.00 |
|  | Elizabeth Lin | 15.96 | $400 | 6,384.00 |
|  | Michelle Furukawa | 0.46 | $300 | 138.00 |
|  | Ramon Gonzalez | 5.08 | $300 | 1,524.00 |
|  | Reuben Guttman | 0.33 | $400 | 132.00 |
|  | MJ Quinn | 0.71 | $350 | 248.50 |
|  | "Paralegals" | 28.63 | $100 | 2,863.00 |
|  | "Document Clerks" | 0.00 | n/a | 0.00 |
|  | | | | |
| **McNicholas & McNicholas ($93,066.25)** | Matthew McNicholas | 74.40 | $400 | 29,760.00 |
|  | Robert Wargo | 7.40 | $400 | 2,960.00 |
|  | Catherine Burke-Schmidt | 84.40 | $350 | 29,540.00 |
|  | Benjamin Valerio | 0.60 | $350 | 210.00 |
|  | Erin M. Smith | 94.40 | $300 | 28,320.00 |
|  | Mitra Torabi | 4.40 | $300 | 1,320.00 |
|  | Christopher Papaleo | 12.75 | $75 | 956.25 |
|  | Beverly Yahata | 0.00 | n/a | 0.00 |
|  | | | | |
| **TOTAL** | | | | **$1,507,918.25** |

Significantly, there is a strong presumption that the lodestar is a reasonable fee. *Gonzalez*, 729 F.3d at 1202; *Camacho*, 523 F.3d at 978. The benchmark award of 25% of the common fund of

37

1  $6,100,000.00 amounts to $1,525,000.00—which exceeds the lodestar calculation. Thus, the lodestar

2  crosscheck supports an award equal to the benchmark, and does not support an increase to a third of

3  the common fund. *See Six Mexican Workers*, 904 F.2d at 1311 (awarding "the 25 percent standard

4  award" where "the litigation lasted more than 13 years, obtained substantial success, and involved

5  complicated legal and factual issues"). Accordingly, Class Counsel's request for attorney fees is

6  **GRANTED** in the modified amount of 25% of the gross settlement fund, or $1,525,000.00.

## REQUESTS FOR COSTS

### I.      Litigation Expenses

9          Reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Federal Rule of Civil

10  Procedure 54. Attorneys may recover reasonable expenses that would typically be billed to paying

11  clients in non-contingency matters. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

12  Previously, this Court noted costs "including filing fees, mediator fees . . . , ground transportation,

13  copy charges, computer research, and database expert fees . . . are routinely reimbursed in these types

14  of cases." *Alvarado v. Nederend*, 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17, 2011).

### A.      Copying

16          As an initial matter, "The costs of making copies of any materials where the copies are

17  necessarily obtained for use in the case" may be taxed pursuant to 28 U.S.C. §1290. As a result,

18  "[c]opying costs for documents produced to opposing parties in discovery, submitted to the court for

19  consideration of motions, and used as exhibits at trial are recoverable." *McCarthy v. R.J. Reynolds*

20  *Tobacco Co.*, 2011 WL 4928623 at *6 (E.D. Cal. Oct. 17, 2011) (citation omitted). On the other hand,

21  "recoverable copying costs do not include extra copies of filed papers, correspondence, and copies of

22  cases since these are prepared for the convenience of the attorneys." *Id.*; *see also Rodriguez v. General*

23  *Dynamics Armament & Tech. Prods.*, 775 F.Supp.2d 1217, 1219 (D. Haw. 2011) (declining to award

24  costs totaling $20,750.52 for copying where "counsel state[d] only that they copies for trial exhibits and

25  list[ed] the per item cost," but "the vast majority of those documents were never used or even referred

26  to at trial").

27          Class Counsel seek $9,260.40 for costs related to copying. This total includes $5,501.80 from

28  Mallison & Martinez (Doc. 227-5 at 1); $918.40 for Kinsley & Kingsley (Doc. 227-16 at 4); $1,058.05

for Milberg LLP (Doc. 227-5 at 5); $1,980.75 for McNicholas & McNicholas (Doc. 227-18 at 17-20); and $277.20 for the law firm of Weinberg, Roger & Rosenfeld (Doc. 227-25 at 2).  Significantly, the law firms fail to explain the purpose of the copies such that the Court may determine the copies were necessary for the course of the litigation, and were not, in fact, merely copies for their convenience. *See McCarthy*, 2011 WL 4928623 at *6; *Rodriguez,* 775 F.Supp.2d at 1219.  This results in a deduction of $9,260.40 from Class Counsels' costs.

### B.    Exceeding the Amount in the Settlement

Significantly, the Settlement provides that Class Counsel will receive "not more than $175,000 as their Class Counsel Litigation Expenses."  (Doc. 227-3 at 5, Settlement § III.B.2)  The Court preliminarily approved "expenses up to $175,000."  (Doc. 223-15)  In addition, the Class Notice Packet approved by the Court informed the class members that $175,000 was the "maximum" of the litigation costs to be awarded.  (*See* Doc. 224 at 7; Doc. 225)  Despite this, Class Counsel now seek a total reimbursement of $228,467.28 for costs incurred in the course of this action.  (*See* Doc. 227-2 at 28)

However, Class Counsel fail to explain how an award exceeding the amount provided for in the Settlement and the amount for which the class members received notice is appropriate.  Indeed, now seeking an award greater than the amount for which notice was given deprives the class members of their opportunity to make any objections to the increase of more than $50,000.00 in the fees request.  Accordingly, the Court recommends the costs be **GRANTED** in the modified amount of $175,000.00.

## II.    Costs of Settlement Administration

The Settlement authorizes "reasonable fees and expenses as approved by the District Court" for the Settlement Administrator.  (Doc. 277-3 at 6, Settlement § III.B.3)  Although Rust Consulting estimated the costs for administration to be approximately $50,000, the class members were notified that "Class Counsel believe[d] that this amount could rise to as much as $75,000."  (Doc. 224 at 7) Ms. Schwartz now reports: "The total cost for the administration of this Settlement, including fees incurred and future costs for completion of the administration is estimated to be $75,000.00."  (Doc. 227-6 at 5, Schwartz Decl. ¶ 22)  The Settlement Administrator's responsibilities will continue with the calculation of the settlement checks, issuance and mailing of those settlement checks and to do the

necessary tax reporting on such payments.

This Court has awarded $ 25,000 for settlement administration in a wage and hour case involving approximately 170 potential class members. *See Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 483-84 (E.D. Cal. 2010). Given that this class involves more than seventy times the number of class members in *Vasquez*, the Court finds the administrative expenses are reasonable, and recommends the request of $75,000.00 for the Claims Administrator be **GRANTED**.

## PLAINTIFFS' REQUEST FOR AN INCENTIVE AWARDS

The Settlement provides that Plaintiffs may apply to the District Court for a class representative enhancement up to $7,500 to each Plaintiff, to be paid from the gross settlement amount. (Doc. 227-3, Settlement § III.B.1) Plaintiffs seek now seek enhancement up to $7,500 for the individuals who were appointed as class representatives, and $3,500 for the individuals who have withdrawn from representation. (Doc. 227-1 at 32-33)

In the Ninth Circuit, a court has discretion to award a class representative a reasonable incentive payment. *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463. Incentive payments for class representatives are not to be given routinely. In *Staton*, the Ninth Circuit observed,

> Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").

*Id.* at 975. In evaluating a request for an enhanced award to a class representative, the Court should consider all "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation." *Id.* at 977. Further, incentive awards may recognize a plaintiff's "willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

### A.    Payments for Lidia Cruz and Yanet Hernandez

In April 2011, the parties stipulated to the withdrawal of Lidia Cruz and Yanet Hernandez "as named plaintiffs and class representatives" in this action. (Doc. 36 at 2; *see also* Doc. 227-1 at 32, n.4)

However, Plaintiffs seek an award of $3,750 for Lidia Cruz and Yanet Hernandez "for their duties prior to their withdrawal from the case." (Doc. 227-1 at 33)

Previously, the Court observed that Plaintiffs did not "identify[y] any authority for awarding individuals who were not formally appointed class representatives – and in fact withdrew their representation of the class…–with an enhancement." (Doc. 223 at 12) Again, Plaintiffs have offered no legal authority to support this request. Moreover, the factors set forth before the Ninth Circuit weigh against the award of any enhancement payments for Ms. Cruz and Ms. Hernandez.

There is no evidence regarding actions taken by Ms. Cruz and Ms. Hernandez that benefitted the class, such as assisting with discovery, identifying witnesses, submitting to depositions, or assisting with the mediation—or the time that may have been expended on such tasks. Further, there is no evidence that Ms. Cruz and Ms. Hernandez feared workplace retaliation. Accordingly, the Court finds enhancement payments for the individuals who withdrew their representation of the class is not appropriate, and recommends the request be **DENIED**.

### B.    Payments for Trinidad Ruiz and Marta Rincon

Plaintiffs request that Trinidad Ruiz and Marta Rincon be awarded "$7,500 for their duties as Class Representatives." (Doc. 227-1 at 33) Class Counsel report they have "not been able to reach" Mr. Ruiz or Ms. Rincon, although they continue to attempt to do so. (*Id.*)

Importantly, Plaintiffs have not identified any actions taken by Mr. Ruiz or Ms. Rincon to support the award of enhancements payments, despite the fact they were appointed class representatives. In fact, Plaintiffs refer to the others—Rafael Munoz, Santos Valenzuela, Ramon Cervantes Perales, and Hugo Perez Rios—as "the four active Plaintiffs," which strongly suggests the actions, if any, by Mr. Ruiz and Ms. Rincon were limited. (*See* Doc. 227-1 at 33) Given the lack of evidence regarding actions taken by these individuals to protect the interests of the class and the amount of time expended in doing so, the requested enhancement payment is not appropriate. *Staton*, 327 F.3d at 977. Nevertheless, the Court acknowledges these individuals were named as plaintiffs and took on the responsibilities of being representatives for the Tools Class and Late Meal Break Class. Therefore, the Court finds a *de minimis* award is appropriate, and recommends the incentive payments for named Plaintiffs Trinidad Ruiz and Marta Rincon be **GRANTED** in the amount of $250.00 each.

**C.** **Payments for Rafael Munoz, Santos Valenzuela, Ramon Cervantes Perales, and Hugo Perez Rios**

### 1. Actions taken to benefit the class

Rafael Munoz, Santos Valenzuela, Ramon Cervantes Perales, and Hugo Perez Rios report they assisted counsel by reviewing their records, providing feedback regarding the allegations in the complaint, "[r]eviewing and responding to discovery requests," and having their depositions taken. (*See* Doc. 228 at 2, Munoz Decl. ¶ 4; Doc. 227-28 at 2, Rios Decl. ¶ 4; Doc. 227-29 at 2, Perales Decl. ¶4; Doc. 227-30 at 2, Valenzuela Decl. ¶ 4) In addition, Mr. Munoz reports he traveled from New Mexico to attend the private mediation session in Fresno, California. (Doc. 228 at 2, ¶ 4) Notably, Plaintiffs would have likely submitted to depositions and assisted with discovery whether or not the action was brought on behalf of the class. On the other hand, by reviewing documents and assisting with discovery, their actions undoubtedly benefitted the class such that they weigh in favor of class representative incentive payments.

### 2. Time expended

The class representatives estimate that in the past twelve years, they each spent between 92 hours and 266 hours related to this action. (*See* Doc. 228 at 2, Munoz Decl. ¶ 4; Doc. 227-28 at 2, Rios Decl. ¶ 4; Doc. 227-29 at 2, Perales Decl. ¶4; Doc. 227-30 at 2, Valenzuela Decl. ¶ 4) Mr. Munoz explains that his hours exceed those of the other representatives because he traveled from New Mexico both to have his deposition taken and to attend the private mediation, and he experienced significant travel delays returning from the mediation session. Therefore, this factor weighs in favor of incentive payments to the plaintiffs.

### 3. Fears of workplace retaliation

The plaintiffs do not contend they feared retaliation for their connections to this action, and each is a *former* employee of Defendant. Thus, this factor does not support incentive payments.

### 4. Reasonableness of the request

Considering the actions taken by Plaintiff and the time expended, an incentive award is appropriate. In determining the amount to be awarded, the Court may consider the time expended by the class representative, the fairness of the hourly rate, and how large the incentive award is compared

to the average award class members expect to receive.  *See, e.g., Ontiveros,* 303 F.R.D. at 373-74 (E.D. Cal. 2014) (evaluating the hourly rate the named plaintiff would receive to determine whether the incentive award was appropriate); *Rankin v. Am. Greetings, Inc.*, 2011 U.S. Dist. LEXIS 72250, at *5 (E.D. Cal. July 6, 2011) (noting the incentive award requested was "reasonably close to the average per class member amount to be received); *Alvarado*, 2011 WL 1883188 at *10-11 (considering the time and financial risk undertaken by the plaintiff).

<u>a.</u>      <u>Time expended</u>

In *Alvarado*, the Court noted the class representatives "(1) travelled from Bakersfield to Sacramento for mediation sessions (2) assisted Counsel in investigating and substantiating the claims alleged in this action; (3) assisted in the preparation of the complaint in this action; (4) produced evidentiary documents to Counsel; and (5) assisted in the settlement of this litigation." *Id.*, 2011 WL 1883188 at *11.  Further, the Court noted the plaintiffs "undertook the financial risk that, in the event of a judgment in favor of Defendant in this action, they could have been personally responsible for the costs awarded in favor of the Defendant." *Id.*  In light of these facts, the Court found an award of $7,500 for each plaintiff was appropriate for the time, efforts, and risks undertaken.

Likewise, in *Bond*, the Court found incentive payments of $7,500 were appropriate for the two named plaintiffs who: "(1) provided significant assistance to Class Counsel; (2) endured lengthy interviews; (3) provided written declarations; (4) searched for and produced relevant documents; (5) and prepared and evaluated the case for mediation, which was a full day session requiring very careful consideration, evaluation and approval of the terms of the Settlement Agreement on behalf of the Class." *Bond*, 2011 WL 2648879, at *15.  Similarly, the Northern District determined that class representatives failed to justify incentive awards of $10,000 although the plaintiffs reported "they were involved with the case by interacting with counsel, participating in conferences, reviewing documents, and attending the day-long mediation that resulted in the settlement." *Wade v. Minatta Transport Co.*, 2012 U.S. Dist. LEXIS 12057, at *3 (N.D. Cal. Feb. 1, 2012).

The plaintiffs seek an award equal to the incentive awards approved in *Alvarado* and *Bond.* Because the actions taken by Rafael Munoz, Santos Valenzuela, Ramon Cervantes Perales, and Hugo Perez Rios are similar to those by the plaintiffs in *Alvarado* and *Bond*, this factor supports the requested

43

incentive payment.

b.      Fairness of the hourly rate

Previously, this Court criticized a requested award of $20,000 where the plaintiff estimated "he spent 271 hours on his duties as class representative over a period of six years," because the award would have compensated the class representative "at a rate of $73.80 per hour." *Ontiveros*, 303 F.R.D. at 366. The Court explained that "[i]ncentive awards should be sufficient to compensate class representatives to make up for financial risk . . . for example, for time they could have spent at their jobs." *Id.* (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). The Court found an award of "$50 per hour fairly compensate[] the named plaintiff for his time and incorporates an extra incentive to participate in litigation," considering that the plaintiff's hourly flat rate while employed by the defendant was $15 per hour. *Id.*; n.3. Nevertheless, the Court increased the award from $13,550 (calculated with $50 per hour for the 271 hours) to $15,000 because "Mr. Ontiveros relinquished the opportunity to bring several of his own claims." *Id.*

Plaintiffs estimate they spent between 92 hours and 266 hours on this action. Thus, the requested award of $7,500 would compensate the plaintiffs at rates ranging from $28.19 to $81.52 per hour. Because the higher rates are excessive, this factor supports an award lower than that requested by the class representatives. *See Ontiveros*, 303 F.R.D. at 366.

c.      Comparison of the award to those of the Class Members

*In Rankin*, the Court approved an incentive award of $5,000, where the "[p]laintiff retained counsel, assisted in the litigation, and was an active participant in the full-day mediation." *Id.*, 2011 U.S. Dist. LEXIS 72250, at *5. The Court found the amount reasonable, in part because "the sum is reasonably close to the average per class member amount to be received." *Id.*

The recovery for class members ranges from $3.19 to $5,341.00, with the average share estimated to be $990.82. (Doc. 227-6 at 4-5, Schwartz Decl. ¶ 20) Thus, Plaintiffs request enhancement payments that are more than seven times the average award, and this factor weighs in favor of a lower incentive payment to the class representatives

5.      Amount to be awarded

In light of the time and efforts expended, the average award expected to be received by the

class members, the Court finds $5,000 is an appropriate incentive award for Hugo Perez Rios, Santos Valenzuela, and Ramon Cervantes Perales. However, in light of the additional efforts by Rafael Munoz—who is the only plaintiff who attended the mediation, and traveled from New Mexico to represent the class—the Court finds the requested rate of $7,500 is appropriate.

## FINDINGS AND RECOMMENDATIONS

Based upon the foregoing, the Court **RECOMMENDS**:

1. Plaintiff's motion for final approval of the Settlement Agreement be **GRANTED**;

2. Approval of the Settlement Class be **GRANTED** and defined a combination of the previously-certified Tools Class and Late Meal Break Class:

> The "Tool Class" means all fieldworkers employed by Giumarra from November 9, 2001 through and including December 1, 2016 who were "required to purchase necessary tools. The "Late Meal Break Class" consists of all field workers employed by Giumarra from 11/9/2001 November 9, 2001 through and including December 1, 2016 who were not provided a timely meal period.

> The "Class" for purposes of settling both claims consists of the combined Tool and Late Meal Break Class. The Class does not include irrigators and drivers; only employees, exclusive of foremen, assigned to crews that performed tasks similar to those of the named Plaintiffs: tying, pruning, picking and packing.

3. Plaintiffs' request for incentive payments be **DENIED** as to Lidia Cruz, and Yanet Hernandez;

4. Plaintiffs' request for class representative incentive payments be **GRANTED** in the amount of $250.00 each for Trinidad Ruitz and Marta Rincon de Diaz; $5,000 each for Santos Valenzuela, Hugo Perez Rios, and Ramon Cervantes; and in the amount of $7,500 for Rafael Munoz;

5. Class Counsel's motion for attorneys' fees be **GRANTED** in the modified amount of $1,525,000, which is 25% of the gross settlement amount;

6. Class Counsel's request for costs **GRANTED** in the modified amount of $175,000;

7. The request for fees for the Settlement Administrator, Rust Consulting, be **GRANTED** in the amount of $75,000;

8. The action be dismissed with prejudice, with each side to bear its own costs and

attorneys' fees except as otherwise provided by the Settlement and ordered by the Court; and

9.     The Court retain jurisdiction to consider any further applications arising out of or in connection win the Settlement.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   __**June 20, 2017**__                    _____**/s/ Jennifer L. Thurston**_____
                                                              UNITED STATES MAGISTRATE JUDGE